HONORABLE SALVADOR MENDOZA, JR.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

JAN RENFROE,

Plaintiff,

v.

QUALITY LOAN SERVICE CORP. OF
WASHINGTON; et. al,

Defendants.

No.: 2:17-cv-00194

VERIFICATION OF STATE COURT
RECORDS

Order
Page -1-
MH #WA-17-772775-CV

McCarthy & Holthus LLP
108 1st Ave S, Ste 300
Seattle, WA 98104

E-Filed

FILED

2017 APR 03 PM 03:26

CHARLEEN GROOMES

OKANOGAN COUNTY CLERK

## CASE TYPE 2
### OKANOGAN COUNTY SUPERIOR COURT
CASE INFORMATION COVER SHEET

**Case Number** 17-2-00156-4 **Case Title:** Jan M. Renfroe v. Quality Loan Service Corp of WA. et al.

**Attorney Name:** Robert K. Hunter, JR.  **Bar Membership Number** 28909

Please check one category that best describes this case for indexing purposes.  Accurate case indexing not only saves time in docketing new cases, but helps in forecasting needed judicial resources.  Cause of action definitions are listed on the back of this form.  Thank you for your cooperation.

**APPEAL/REVIEW**
___ Administrative Law Review  (ALR 2)
___ Appeal of a Department of Licensing Revocation (DOL 2)
___ Civil, Non-Traffic  (LCA 2)
___ Civil, Traffic  (LCI 2)

**CONTRACT/COMMERCIAL**
___ Breach of Contract  (COM 2)
___ Commercial Contract  (COM 2)
___ Commercial Non-Contract  (COL 2)
___ Third Party Collection  (COL 2)

**MERETRICIOUS RELATIONSHIP**
___ Meretricious Relationship  (MER 2)

**DOMESTIC VIOLENCE/ANTIHARASSMENT**
___ Civil Harassment  (HAR 2)
___ Domestic Violence  (DVP 2)
___ Foreign Protection Order  (FPO 2)
___ Vulnerable Adult Protection  (VAP 2)

**JUDGMENT**
___ Abstract Only  (ABJ 2)
___ Foreign Judgment  (FJU 2)
___ Judgment, Another County  (ABJ 2)
___ Judgment, Another State  (FJU 2)
___ Tax Warrant  (TAX 2)
___ Transcript of Judgment  (TRJ 2)

**OTHER COMPLAINT/PETITION**
___ Action to Compel/Confirm Private Binding Arbitration (MSC 2)
___ Change of Name  (CHN 2)
___ Deposit of Surplus Funds  (MSC 2)
___ Emancipation of Minor  (EOM 2)
_X_ Injunction  (INJ 2)
___ Interpleader  (MSC 2)
___ Malicious Harassment  (MHA 2)
___ Minor Settlement (No guardianship) (MST 2)
___ Petition for Civil Commitment (Sexual Predator)(PCC 2)
___ Seizure of Property from Commission of Crime (SPC 2)

___ Seizure of Property Resulting from a Crime  (SPR 2)
___ Subpoenas  (MSC 2)

**PROPERTY RIGHTS**
___ Condemnation  (CON 2)
___ Foreclosure  (FOR 2)
___ Land Use Petition  (LUP 2)
___ Property Fairness  (PFA 2)
___ Quiet Title  (QTI 2)
___ Unlawful Detainer  (UND 2)

**TORT, MEDICAL MALPRACTICE**
___ Hospital  (MED 2)
___ Medical Doctor  (MED 2)
___ Other Health Care Professional  (MED 2)

**TORT, MOTOR VEHICLE**
___ Death  (TMV 2)
___ Non-Death Injuries  (TMV 2)
___ Property Damage Only  (TMV 2)
___ Victims of Motor Vehicle Theft (VVT 2)

**TORT, NON-MOTOR VEHICLE**
___ Asbestos  (PIN 2)
___ Other Malpractice  (MAL 2)
___ Personal Injury  (PIN 2)
___ Products Liability  (TTO 2)
___ Property Damage  (PRP 2)
___ Wrongful Death  (WDE 2)

**WRIT**
___ Habeas Corpus  (WHC 2)
___ Mandamus  (WRM 2)
___ Restitution  (WRR 2)
___ Review  (WRV 2)
___ Miscellaneous Writs (WMW 2)

**IF YOU CANNOT DETERMINE THE APPROPRIATE CATEGORY, PLEASE DESCRIBE THE CAUSE OF ACTION BELOW.**
_____
_____

E-Filed

FILED

2017 APR 03 PM 03:35

CHARLEEN GROOMES

OKANOGAN COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF OKANOGAN

JAN M. RENFROE,

              Plaintiff,

v.

QUALITY LOAN SERVICE CORP. OF
WASHINGTON; BANK OF AMERICA, N.A.,
successor by merger to BAC Home Loans
Servicing, LP, f/k/a Countrywide Home Loans
Servicing, LP; CITIBANK, N.A. as trustee of NRZ
PASS-THROUGH TRUST VI; and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,

              Defendants.

THE BANK OF NEW YORK MELLON as trustee on
behalf of the CERTIFICATEHOLDERS OF THE
CWHEQ, INC., CWHEQ Revolving Home Equity
Loan Trust, Series 2006-C,

              Nominal Defendants.

No.   17-2-00156-4

SUMMONS

TO:       QUALITY LOAN SERVICE CORP. OF WASHINGTON; BANK OF AMERICA, N.A.,
successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home
Loans Servicing, LP; CITIBANK, N.A. as trustee of NRZ PASS-THROUGH TRUST VI;
and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; THE BANK OF
NEW YORK MELLON as trustee on behalf of the CERTIFICATEHOLDERS OF THE
CWHEQ, INC., CWHEQ Revolving Home Equity Loan Trust, Series 2006-C

      A lawsuit has been started against you in the above-entitled court by the above-named

SUMMONS

Page 1

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

plaintiff.  Plaintiff's claims are stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and serve a copy upon the person signing this summons within:

- ○   20 days after the service of this summons, excluding the day of service, or

- ○   60 days after service of this summons, excluding the day of service, if you are served out of the State of Washington.

Otherwise a Default Judgment may be entered against you without notice.  A Default Judgment entitles plaintiffs to what they ask for because you have not responded.  If you serve a Notice Of Appearance on the undersigned attorney, you are entitled to notice before a Default Judgment may be entered.

You may demand that the plaintiff file this lawsuit with the court.  If you do so, the Demand must be in writing and must be served upon the person signing this Summons. Within (14) fourteen days after you serve the Demand, the plaintiff must file this lawsuit with the court, or the service eon you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

The Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this _____3_____ day of April, 2017.    By: _____

Robert K. Hunter, Jr., WSBA #28909
THE HUNTER LAW FIRM, PLLC.
Attorneys for Plaintiff

**SUMMONS**

Page 2

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

E-Filed

FILED

2017 APR 03 PM 03:28

CHARLEEN GROOMES

OKANOGAN COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF OKANOGAN

JAN M. RENFROE,

              Plaintiff,

v.

QUALITY LOAN SERVICE CORP. OF
WASHINGTON; BANK OF AMERICA, N.A.,
successor by merger to BAC Home Loans
Servicing, LP, f/k/a Countrywide Home Loans
Servicing, LP; CITIBANK, N.A. as trustee of NRZ
PASS-THROUGH TRUST VI; and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,

              Defendants.

THE BANK OF NEW YORK MELLON as trustee on
behalf of the CERTIFICATEHOLDERS OF THE
CWHEQ, INC., CWHEQ Revolving Home Equity
Loan Trust, Series 2006-C,

              Nominal Defendants.

No.   17-2-00156-4

**COMPLAINT FOR DECLARATORY RELIEF,
INJUNCTION, VIOLATION OF THE
CONSUMER PROTECTION ACT AND QUIET
TITLE**

      COMES NOW the Plaintiff who seeks a declaratory judgment pursuant to the

Washington Uniform Declaratory Judgments Act, RCW 7.24, *et seq.*, and for damages,

equitable and other relief.  Plaintiff states her claims as follows:

**I. PARTIES**

1     Plaintiff JAN M. RENFROE is an individual and the owner of the real property

---

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION,
VIOLATION OF THE CONSUMER PROTECTION ACT &
QUIET TITLE
Page 1

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

commonly known as 193 Golden Road, Oroville, Okanogan County, WA 98844 (the "Home) and legally described in the Attached **Exhibit B** and denoted by Assessor Parcel Number: 4027330030.

2        Defendant QUALITY LOAN SERVICE CORP. of Washington ("QLS") is incorporated in the State of Washington, and which purports to have been appointed as the trustee to conduct a non-judicial foreclosure sale of the Home on April 28, 2017.

3        Defendant CitiBank, N.A. is named in the Notice of Sale as trustee for NRZ Pass-Through Trust VI.  Based upon information and belief, NRZ Trust is a securitized trust whose situs is unknown.

4        Defendant BANK OF AMERICA, N.A. is a national bank, incorporated in Delaware with its principal place of business in Charlotte, North Carolina. BOA conducts business in Washington State by acting as a mortgage lender and mortgage loan servicer.  Based upon information and belief, plaintiff alleges that BANK OF AMERICA, N.A. merged with a loan servicer named BAC Home Loans Servicing, LP which had acquired Countrywide Home Loans Servicing, LP.  (BANK OF AMERICA, N.A. and its predecessors, including BAC Home Loans Servicing, LP are collectively referred to herein as "BOA")

5        Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc. ("MERS") is a Delaware corporation which is not registered as a foreign corporation with the Washington Secretary of State.

6        Based upon information and belief, a nominal defendant who has an interest in the Home is the CERTIFICATE HOLDERS OF THE CWHEQ, INC., CWHEQ Revolving Home Equity Loan Trust, Series 2006-C (CWHEQ).  CWHEQ is named as the beneficiary under a subordinate

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION,
VIOLATION OF THE CONSUMER PROTECTION ACT &
QUIET TITLE
Page 2

THE HUNTER LAW FIRM, PLLC
645Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

deed of trust assigned by Countrywide Bank, N.A as noted in an Assignment of Deed of Trust for a home equity line of credit, dated June 22, 2012. Based upon information and belief, plaintiff alleges that CWHEQ was a wholly-owned subsidiary of Countrywide that pooled mortgages, including the deed of trust at issue herein, to convert them to a securitized trust. Based upon information and belief, the BANK OF NEW YORK MELLON is trustee for CWHEQ. BNYM is a foreign corporation that is organized under the laws of Delaware with its principal place of business in New York, New York.

## II. JURISDICTION

7       The transgressions sued upon herein occurred in Okanogan County.

8       The real property at issue is located in Okanogan County, Washington.

## III. FACTUAL ALLEGATIONS

9       On or about June 22, 1993, plaintiff purchased the Home and has owned it for almost 24 years. The original purchase loan had been paid off for four and one-half years when on November 15, 2005, Eagle Home Mortgage, Inc. (Eagle) loaned money to plaintiff to refinance her Home. At that time plaintiff signed a promissory note payable to Eagle. (Note)  Attached as **EXHIBIT A** is a true and correct copy of the Note which is incorporated herein by this reference.

10      The Home was to serve as security for paying off the Note by way of deed of trust signed at the same time as the Note (Deed of Trust). Attached as **EXHIBIT B** is a true and correct copy of the Deed of Trust which is incorporated herein by this reference. The Deed of Trust listed Eagle as the lender and Defendant MERS as the "beneficiary."

11      Plaintiff alleges, upon information and belief, that MERS:

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION,
VIOLATION OF THE CONSUMER PROTECTION ACT &
QUIET TITLE
Page 3

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

a. is not the Note Holder, as defined by the Uniform Commercial Code and the Washington Deed of Trust Act, RCW 61.24.105,

b. never had a beneficial interest under the Deed of Trust, and

c. has never been entitled to receive any monies from Ms. Renfroe under the Deed of Trust or the Note.

12      Eagle endorsed the Note and made it payable "to the order of Countrywide Bank, N.A," thus converting it from being a bearer Note to being a Note with a special endorsement.

13      After many years of steady employment with the same employer, plaintiff sustained a loss of employment and income due to reasons beyond her control.

14      Plaintiff contacted Defendant BOA and/or its predecessor for servicing and collection of the subject loan and advised defendant or defendant's agent about her loss of employment. She asked BOA to work out a repayment agreement, but BOA's only advice was for plaintiff to not pay towards her Home loan so BOA could consider her for a loan modification.

15      When plaintiff accepted BOA's advice and quit paying, she encountered difficulty in reaching a BOA representative who would help her to avoid further default and acceleration of the Home loan debt.  On several occasions Ms. Renfroe attempted, but was unable to speak with anyone with BOA who would assist her.  When plaintiff was able to reach a BOA representative, the representative told her that nothing could be done to assist her to avoid foreclosure unless she had the ability to make lump sum payments to get current on the mortgage in amounts that far exceeded her income or her ability to pay.

16      BOA advised plaintiff that partial payments toward the arrearage in the debt would

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION,
VIOLATION OF THE CONSUMER PROTECTION ACT &
QUIET TITLE
Page 4

THE HUNTER LAW FIRM, PLLC
645Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

not be accepted.

17    In 2009 through 2011, BOA eventually agreed to allow payments, but denied any modification after plaintiff made the payments.   BOA locked plaintiff out of her online account, preventing her from checking her payment status.

18    Plaintiff maintains, based upon information and belief, that pursuant to Fannie Mae's Servicer Guidelines, that Fannie Mae is the entity in actual possession of the Note and that all times pertinent to this matter, was holding the Note for the exclusive benefit of Fannie Mae.

19    Any defendant's assertion that it holds the Note for the benefit of Defendant NRZ TRUST is an effort to circumvent the legal requirements imposed under Washington's Deed of Trust Act, RCW 61.24, *et seq.* (DTA)

20    On or about May 11, 2011, Defendant MERS held itself out to be the Note holder and signed an Assignment of Deed of Trust in that capacity.

21    Based upon information and belief, plaintiff alleges that NRZ TRUST is not the holder of the Note. Even if NRZ TRUST held the Note that is specially indorsed to Countrywide Bank, N.A. it could not negotiate it without Countrywide endorsing it over to NRZ TRUST.

22    Ms. Renfroe alleges, upon information and belief, that she has equity in her home which may be lost as a result of the pending foreclosure sale.  She believes that she qualifies for a loan modification under Fannie Mae guidelines but that BOA prevented her from obtaining a loan modification, because it could make more money as the servicer if the foreclosure sale occurs.

23    The foreclosure is being improperly conducted as it is not being done by the "beneficiary" as defined under the Deed of Trust Act  RCW 61.24.005(2).

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION,
VIOLATION OF THE CONSUMER PROTECTION ACT &
QUIET TITLE
Page 5

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

## IV. FIRST CAUSE OF ACTION (*DECLARATORY RELIEF*)
### as Against All Defendants

24      Plaintiff incorporates herein by reference as though fully set forth hereunder the allegations contained in Paragraphs 1-23, inclusive, hereinabove.

25      Each defendant has failed to comply with the DTA, leading to unnecessary injury being imposed upon plaintiff and could lead to the loss of her home unless the Court intervenes.

26      Plaintiff seeks a declaration that the DTA obligates defendants to identify the proper parties who are bringing a non-judicial foreclosure to sell plaintiff's Home.

27      Plaintiff also seeks monetary damages for violations of the Consumer Protection Act.

## V. SECOND CAUSE OF ACTION (*INJUNCTIVE RELIEF*)
### as Against Defendants QLS and NRZ

28      Plaintiff incorporates herein by reference as though fully set forth hereunder the allegations contained in Paragraphs 1-27, inclusive, hereinabove.

29      Defendants QLS and NRZ Trust are pursuing foreclosure without adhering to proper procedures laid out in the DTA.

30      Defendants' QLS and NRZ Trust present and prospective wrongful conduct, unless and until enjoined and restrained *pendente lite* by order of this Court, will cause irreparable injury to plaintiff in that plaintiff will continue to suffer damage as alleged above.

31      Plaintiff has no adequate remedy at law for the injuries hereinabove alleged which it is currently suffering and which are threatened in the future.  It would be impossible for plaintiff to determine the precise amount of damages which it will suffer if the conduct of Defendants QLS and NRZ Trust is not enjoined and restrained.  Without restrain plaintiff would need to

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION,
VIOLATION OF THE CONSUMER PROTECTION ACT &
QUIET TITLE
Page 6

THE HUNTER LAW FIRM, PLLC
645Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

institute a multiplicity of actions to obtain adequate compensation for its injuries each time it learns of another episode of a breach.

32      By way of a separate motion, plaintiff is seeking issuance of a temporary restraining order and a preliminary injunction in order to stop the pending foreclosure sale.

## VI. **THIRD CAUSE OF ACTION** (*VIOLATION OF THE CONSUMER PROTECTION ACT*)
### as Against All Defendants

33      Plaintiff incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in Paragraphs 1 through 33, inclusive.

34      The DTA defines "beneficiary" as holder of the instrument or document evidencing the obligations secured by the deed of trust excluding persons holding the same as security for a different obligation." RCW 1161.24.005(2).  Defendants have misrepresented who holds the Note and/or who is the "beneficiary" as defined by the DTA.  This information impacts the determination as to who has the legal right to foreclose on Ms. Renfroe's Home.  Ms. Renfroe alleges, based upon information and belief, that defendants have repeatedly made such misrepresentations to other Washington homeowners and/or there is a substantial likelihood that they will do so in the future.

35      The Notice of Trustee Sale did not identify the true "beneficiary" as evidenced by the Assignment that denotes NRZ TRUST as beneficiary which differs from the Notice of Default which does not identify either the beneficiary or the trustee.  Furthermore, based upon information and belief, plaintiff alleges that NRZ TRUST is not the holder of the Note that is specially indorsed to Countrywide Bank, N.A.  Even if NRZ TRUST held the Note it could not negotiate it without Countrywide endorsing it over to NRZ TRUST.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION,
VIOLATION OF THE CONSUMER PROTECTION ACT &
QUIET TITLE
Page 7

THE HUNTER LAW FIRM, PLLC
645Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

36    Defendant QLS owes duties under the Deed of Trust Act, RCW 61.24, *et seq.,* to strictly comply with the terms of the statute and to act in "good faith to the borrower, beneficiary, and grantor", RCW 61.24.010(4).

37    Defendant QLS has not complied with the requirements and its duty under the DTA by proceeding with a foreclosure sale which was initiated by an entity which did not have legal authority to do so.

38    In spite of its statutorily imposed duties, Defendant QLS has not acted in good faith with regard to the initiation the foreclosure proceeding regarding Ms. Renfroe's Home and making certain demands for payment.

39    Defendant QLS did not adhere to its duties of good faith to Ms. Renfroe and it has not materially complied with the provisions of the DTA.

40    Defendant QLS has not been appointed as the Successor Trustee by the Note holder or "Beneficiary" as defined by the DTA. Therefore. Defendant QLS is not the Trustee and therefore does not have legal authority to initiate the foreclosure sale of the Home.

41    In spite of the fact that Defendant QLS has not been appointed as the Successor Trustee by the Note Holder, it initiated a foreclosure action in its purported capacity as a trustee by causing to be signed and served upon Ms. Renfroe Notice of Foreclosure and a Notice of Trustee's Sale with incorrect information.

42    Ms. Renfroe alleges, based upon information and belief, that Defendant QLS is not the true servicer, but instead Nationstar Mortgage LLC is the servicer.

43    Therefore, Ms. Renfroe maintains that Defendant QLS is in breach of its duties as a purported trustee under the Deed of Trust Act and is therefore liable to her for those actions.

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION,
VIOLATION OF THE CONSUMER PROTECTION ACT &
QUIET TITLE
Page 8

THE HUNTER LAW FIRM, PLLC
645Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

44      Defendants QLS is a debt collector and accordingly obligated to adhere to the Collection Agency Act, RCW 19.16, *et seq.* (CAA)  QLS' conduct to foreclose against the Home is beyond the applicable statute of limitations and, thus, violates the CAA per se.

45      All defendants have engaged in a pattern of unfair and deceptive business practices in violation of the Washington Consumer Protection Act, RCW 19.86 *et seq.* (CPA)*,* as more particularly described herein.

46      Defendants' conduct harmed plaintiff by causing her to incur costs to learn who holds her loan documents, such as mileage to and from Okanogan County Auditor, postage fees, copy fees, and other monetary costs.

47      Based upon information and belief, plaintiff alleges that defendants' conduct further injured plaintiff by causing her to remit payments to an entity that was not entitled to receive payment under the Deed of Trust and/or Note.

48      Defendants' conduct further injured plaintiff by causing her to consult attorneys to dispel uncertainty regarding the nature of an alleged debt and to obtain loan modifications. Defendants' conduct further injured plaintiff by denying her the chance to obtain a reasonable loan modification because BOA refused to participate in negotiations in good faith.

49      Fees were illegally added to plaintiff's debt and she incurred expenses in investigating their legality.

50      Plaintiff is entitled to equitable relief by having illegal fees stricken.

51      Based upon information and belief, plaintiff alleges that she was harmed by making payments towards her Home loan that were not applied to the loan.

52      The violations of CPA by defendants entitle plaintiff to damages, treble damages and

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION,
VIOLATION OF THE CONSUMER PROTECTION ACT &
QUIET TITLE
Page 9

THE HUNTER LAW FIRM, PLLC
645Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

reasonable attorney fees and costs pursuant to the statute, as well as permanent injunctive relief to make certain that other Washington consumers are not similarly harmed by the actions of these Defendants.

### VII. FOURTH CAUSE OF ACTION (*QUIET TITLE*)
#### as Against All Defendants

53      Plaintiff incorporates herein by reference as if fully set forth hereunder the allegations hereinabove contained in Paragraphs 1 - 52, inclusive.

54      Plaintiff is entitled to have her interests in the land at issue in fee simple.  Plaintiff is also entitled to bar the defendants from having or asserting any right, title, estate, lien or interest on or to the land at issue adverse to plaintiff.

55      Plaintiff has not yet ascertained the exact amount of damages by reason of defendants actions herein alleged.   If required, plaintiff will seek the Court's leave to amend this Complaint to set forth that amount when ascertained.

### VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1      For a declaration that defendants must identify who the proper parties are to bring any judicial foreclosure against plaintiff;

2      For a temporary and permanent injunction restraining the sale of the Home;

3      For a temporary and permanent injunction prohibiting foreclosure proceedings against the Home by any entity or person until further order of this Court;

4      Injunctive relief which may be available under the CPA against the Defendants prohibiting them from engaging in the prohibited acts in the future;

5      For money judgment against Defendants to compensate plaintiff for

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION,
VIOLATION OF THE CONSUMER PROTECTION ACT &
QUIET TITLE
Page 10

THE HUNTER LAW FIRM, PLLC
645Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

a) General damages in an amount to be determined at trial;

b) Treble damages for each and every violation of the Consumer Protection Act, and

c) Pre and post judgment interest at the highest rate allowable by law;

d) For Plaintiff's reasonable attorney's fees and costs incurred;

6  For possession and fee simple title of the Home; and

7  For any and such further relief as the Court deems equitable and just.

DATED: April _3_, 2017.          By:  _____

Robert K. Hunter, Jr., WSBA #28909
THE HUNTER LAW FIRM, PLLC
Attorney for Plaintiff

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION,
VIOLATION OF THE CONSUMER PROTECTION ACT &
QUIET TITLE
Page 11

THE HUNTER LAW FIRM, PLLC
645Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

# Exhibit "A"

MIN#1000452-0000055961-8

# NOTE

November 15, 2005                    KIRKLAND                    Washington
[Date]                                [City]                                [State]

193 GOLDEN ROAD                    ,OROVILLE,WA 98844
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $154,350.00       (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is EAGLE HOME MORTGAGE, INC., A Washington
Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of      6.0000      %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      1st      day of each month beginning on      January 1, 2006      . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on      December 1, 2035      , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at 10510 NE NORTHUP WAY #300      , KIRKLAND, WA 98033
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $925.41

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

EG5X030                                EG5X030                                          0

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0207)   MN 07/02.01   Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3      Initials:



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.0000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

EG5X030                              EG5X030                                                      0

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JAN M. RENFROE                    -Borrower

_____ (Seal)
RAND RENFROE                      -Borrower
Attorney In Fact

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

PAY TO THE ORDER OF
Countrywide Bank, N.A.
WITHOUT RECOURSE
EAGLE HOME MORTGAGE, INC.
A WASHINGTON CORPORATION

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

By: _____

CYNTHIA H. CLARK
SHIPPING MANAGER

[Sign Original Only]

EG5X030                    EG5X030                    0

# Exhibit "B"

20179192 - SH

**3096812**
Page: 1 of 18
11/22/2005 03:28P
Okanogan Co, WA

TRANSNATION TITLE INS. CO.
Return To:

EAGLE HOME MORTGAGE, INC.

10510 NE NORTHUP WAY #300,
KIRKLAND, WA 98033

Assessor's Parcel or Account Number: 4027330030
Abbreviated Legal Description:
PTN NW SW 33-40-27
[Include lot, block and plat or section, township and range]    Full legal description located on page
Trustee: TRANSNATION TITLE INSURANCE COMPANY,

Additional Grantees located on page

————————— [Space Above This Line For Recording Data] —————————

# DEED OF TRUST

MIN 1000452-0000055961-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated    November 15, 2005
together with all Riders to this document.
**(B) "Borrower"** is JAN M. RENFROE and RAND RENFROE, WIFE AND HUSBAND

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is EAGLE HOME MORTGAGE, INC.

EG5X030                           EG5X030                                    0
WASHINGTON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3048 1/01

-6A(WA) (0012)        MW 12/00.01
Page 1 of 15          Initials:
VMP MORTGAGE FORMS - (800)521-7291

3096812
Page: 2 of 16
11/22/2005 03:28P
Okanogan Co, WA

TRANSNATION TITLE   DOT   48.00

Lender is a A Washington Corporation
organized and existing under the laws of          the State of Washington
Lender's address is  10510 NE NORTHUP WAY #300. KIRKLAND, WA 98033

(D) "Trustee" is  TRANSNATION TITLE INSURANCE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated        November 15, 2005
The Note states that Borrower owes Lender One Hundred Fifty Four Thousand Three
Hundred Fifty and no/100                                        Dollars
(U.S. $ 154,350.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      December 1, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

EG5X030                          EG5X030                    Initials:                        0

VMP-6A(WA) (0012)                      Page 2 of 15                          Form 3048 1/01

Page: 3 of 18
11/22/2005 03:28P
40.00  Okanogan Co, WA
TRANSNATION TITLE       DOT

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the       COUNTY        [Type of Recording Jurisdiction]
of       OKANOGAN        [Name of Recording Jurisdiction]:
THAT PORTION OF THE WEST HALF OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 33, TOWNSHIP 40 NORTH, RANGE 27 EAST, W.M. OKANOGAN COUNTY, WASHINGTON DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHEAST CORNER OF SAID SUBDIVISION: THENCE NORTH 460.0 FEET; THENCE WEST 160.0 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUE WEST 160.0 FEET; THENCE NORTH 300.0 FEET; THENCE EAST 160.0 FEET; THENCE SOUTH 300.0 FEET TO THE TRUE POINT OF BEGINNING.  SITUATE IN THE COUNTY OF OKANOGAN, STATE OF WASHINGTON.

Parcel ID Number: 4027330030
193 GOLDEN ROAD
OROVILLE
("Property Address"):

which currently has the address of
                                                                [Street]
[City] , Washington    98844        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

EG5X030                         EG5X030                                                        0
                                                    Initials:
@-6A(WA) (0012)                 Page 3 of 15                              Form 3048 1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community

EG5X030                          EG5X030                          Initials: _____                    0

Page: 5 of 16
11/22/2005 03:20P
TRANSNATION TITLE     DOT     40.00 Okanogan Co, WA

Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

EG5X030                     EG5X030                                      0

Page: 6 of 16
11/22/2005 03:20P
TRANSNATION TITLE    DOT    48 00 Okanogan Co., WA

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to

EG5X030                          EG5X030                                                    0

-6A(WA) (0012)                   Page 6 of 15          Initials:         Form 3048  1/01

3096812
Page: 7 of 16
11/22/2005 03:20P
TRANSNATION TITLE        DOT        48.00    Okanogan Co, WA

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise. Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

EG5X030                      EG5X030                                              0

Initials: _____

-6A(WA) (0012)              Page 7 of 15                        Form 3048  1/01

3096812
Page: 8 of 15
11/22/2005 03:28P
TRANSNATION TITLE    DOT    48.88  Okanogan Co, WA

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

EG5X030                         EG5X030                                          0

Initials: JR RR

AIF

-6A(WA) (0012)              Page 8 of 15                        Form 3048   1/01

3096512
Page: 9 of 15
11/22/2005 03:20P
Okanogan Co, WA

TRANSNATION TITLE        DOT        49.00

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

EG5X030                    EG5X030                                              0

Initials: _JK KR_
          A IF

Page: 10 of 18
11/22/2005 03:28P
TRANSNATION TITLE    DOT    48.00  Okanogan Co, WA

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's

EG5X030                          EG5X030

Initials: _JK KR_
_A IK_

TRANSNATION TITLE   DOT   48.00

3096B12
Page: 11 of 16
11/22/2005 03:20P
Okanogan Co, WA

notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)

EG5X030                    EG5X030                                                      0

Initials: _JKRR_
                                                                         _AJF_

-6A(WA) (0012)             Page 11 of 15                    Form 3048   1/01

TRANSNATION TITLE      DOT      48.00  Okanogan Co, WA
3096812
Page: 12 of 16
11/22/2005 03:20P

certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

EG5X030                         EG5X030                        Initials: _JK KR_
                                                                        AIF

-6A(WA) (0012)                  Page 12 of 15                   Form 3048 1/01

0

3096812
Page: 13 of 16
11/22/2005 03:28P
TRANSNATION TITLE   DOT   45.00   Okanogan Co, WA

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

EG5X030                     EG5X030                                        0

Initials: _JL RR_
_AIF_

VMP -6A(WA) (0012)                Page 13 of 15                         Form 3048 1/01

3096812
Page: 14 of 16
11/22/2005 03:20P
TRANSNATION TITLE      DOT      48.00  Okanogan Co, WA

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____


_____                    _____ (Seal)
                                                     JAN M. RENFROE                -Borrower


_____                    _____ (Seal)
                                                     RAND RENFROE                  -Borrower
                                                                                   Attorney In Fact

_____ (Seal)             _____ (Seal)
                          -Borrower                                            -Borrower


_____ (Seal)             _____ (Seal)
                          -Borrower                                            -Borrower


_____ (Seal)             _____ (Seal)
                          -Borrower                                            -Borrower


EG5X030                        EG5X030                                               0

-6A(WA) (0012)                 Page 14 of 15                        Form 3048  1/01

3096812
Page: 15 of 18
11/22/2005 03:28P
Okanogan Co, WA

TRANSNATION TITLE          DOT          48.00

**STATE OF WASHINGTON**
County of Okanogan                              } ss: 

On this day personally appeared before me   JAN M. RENFROE ~~and   RAND   RENFROE~~

to me known to be the individual(s) described in and who executed the within and foregoing instrument,
and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the
uses and purposes therein mentioned.

GIVEN under my hand and official seal this      17th      day of   November, 2005   .

**Official Seal**

**JEFF F. LITTLE**
NOTARY PUBLIC STATE OF WASHINGTON
COMMISSION EXPIRES: APRIL 24, 2006

Notary Public in and for the State of Washington, residing at  Omak

My Appointment Expires on  04/24/04

EG5X030

EG5X030

Page 15 of 15

Initials: JKRR
A.F

Form 3048  1/01

-6A(WA) (0012)

0

**3096812**
Page: 16 of 16
11/22/2005 03:26P
TRANSACTION TITLE        DOT                48.00 Okanogan Co, WA

State of Washington

                                    SS:

County of Okanogan

On this _17th_ day of November, 2005 before me personally appeared Jan Renfroe, to me known to be the individual described in and who executed the foregoing instrument as Attorney in Fact for Rand Renfroe and acknowledged that she signed the same as his free and voluntary act and deed as Attorney in Fact for said principal for the uses and purposes therein mentioned and on oath stated that the Power of Attorney authorizing the execution of this instrument has not been revoked and that the said principal is now living and is not insane.

Given under my hand and official seal the day and year last above written.

_Jeff F. Little_

Notary Public in and for the State of _Washington_
Residing at _Omak_
My Appointment expires: _04/24/06_

**Official Seal**
JEFF F. LITTLE
NOTARY PUBLIC STATE OF WASHINGTON
COMMISSION EXPIRES: APRIL 24, 2006

FILED

2017 APR 03 PM 03:42

CHARLEEN GROOMES

OKANOGAN COUNTY CLERK

E-Filed

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF OKANOGAN

JAN M. RENFROE,

        Plaintiff,

v.

QUALITY LOAN SERVICE CORP. OF
WASHINGTON; BANK OF AMERICA, N.A.,
successor by merger to BAC Home Loans
Servicing, LP, f/k/a Countrywide Home Loans
Servicing, LP; CITIBANK, N.A. as trustee of NRZ
PASS-THROUGH TRUST VI; and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,

        Defendants.

THE BANK OF NEW YORK MELLON as trustee on
behalf of the CERTIFICATEHOLDERS OF THE
CWHEQ, INC., CWHEQ Revolving Home Equity
Loan Trust, Series 2006-C,

        Nominal Defendants.

No. **17-2-00156-4**

**DECLARATION OF JAN M. RENFROE IN
SUPPORT OF MOTION TO RESTRAIN
SHERIFF'S SALE AND OBTAIN RESTRAINING
ORDER**

I, Jan M. Renfroe, do hereby declare:

1.      I am the plaintiff named in the above-captioned action. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify hereto.

2.      This declaration is made in support of my Motion to Restrain Sheriff Sale and to Obtain a Temporary Restraining Order.

DECLARATION OF JAN M. RENFROE
                    Page 1

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Pkwy, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

3.      I with my former spouse purchased the subject real property located at 193 Golden Road, Oroville, Okanogan County, Washington (Home).   Rand and I dissolved our marital relationship in January 2012, leaving the Home to me.

4.      The Property is a 104 year old three bedroom home situated on a one acre parcel.  In or about November 15, 2005, Rand Renfroe and I signed a promissory note to borrow $154,350 to re-finance the Home (Note).  [See a true and correct copy of the promissory note attached to hereto as **Exhibit A**]  Eagle Home Mortgage, Inc. (Eagle) loaned the money.

5.      To secure payment of the Note, a deed of trust was recorded against the Home on November 22, 2005 in Okanogan County, Washington under Auditor's File No. 3096812, in the amount of $154,350.  [See a true and correct copy of the Deed of Trust attached to hereto as **Exhibit B.**]

6.      I worked as a bookkeeper before the Recession.  As a result of the problems in the mortgage market beginning in 2008, I lost my job that I had held for many years with the same employer.  I began to experience very serious financial problems and struggled to pay personal expenses. At that time I was making payments to BAC, because it was BAC that sent me monthly statements.

7.      I suspected BAC to be a Bank of America subsidiary since some of their correspondence would have both company names reflected on the same document.  For example, see **Exhibit C** which is a true and correct copy of a letter dated June 16, 2009 that was sent to me to accelerate the debt.  Therefore, in this declaration when I refer to BOA, this reference includes both Bank of America and BAC.

8.      I began to speak with BOA representatives about how to refinance my loan to save my

DECLARATION OF JAN M. RENFROE
                              Page 2

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Pkwy, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

home.  The representatives told me to quit paying my loan payments so I could be considered for a loan modification.  I did as instructed and quit paying in early 2009.  Once I quit making payments, it became very difficult to reach a BOA representative.  Although BOA had told me it would assist me if I quit paying, the company became more evasive.  I repeatedly tried to reach anyone at BOA, but to no avail and this led to me falling further behind on mortgage payments.  Once I realized that BOA would not provide me with any meaningful assistance with modifying my loan, I retained a law firm named American Law Firm.  That firm worked to obtain a loan modification.

9.      On May 20, 2009, all documents requested by BAC Loan Servicing were received by American Law Firm.  On July 8, 2009, American Law confirms via email BAC Loan Servicing will be requesting updated documents from time to time.    I sent documentation in support of the Making Home Affordable Program, including the following:

- Copies of 2 most recent consecutive months personal Bank Statements
- Dodd Frank Certification
- 2 months utility bills

I also faxed to same person the following items:

- Hardship Letter
- Forms they asked me to fill out and send back
- 2009 1040 Income Tax Return

10.     On September 1, 2009, pursuant to a request made by a representative of BAC, I sent in additional documentation to BAC again by fax the following:

- Bank statements
- Paystubs

11.     On November 1, 2009, I received notification from BAC Loan Servicing stating that I was

DECLARATION OF JAN M. RENFROE
Page 3

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Pkwy, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

not eligible for the modification, but that I may be have other options available. On February 1, 2010, I received notice stating that BOA "regrets to inform you that you are not available for workout options based on the financial information that was provided."

12.    In late 2009, I applied for a modification and was given a forbearance payment plan to make $509 monthly payments. I was told to complete the plan and I would get a modification. Although my financial situation was very tight, I completed the plan and within 5-10 days BOA refused to honor the arrangement. In 2010, I applied again for a modification. I was denied. On February 01, 2010, B of A sent me notice that said "regrets to inform you that there are no available workout options based on the financial information that was provided."

13.    On or about July 10, 2010, I spoke with BOA to again discuss different modifications programs. I was told "Investor declined Modification, all options exhausted."

14.    Since BOA refused to participate in any negotiations, I again had to seek legal assistance. On January 24, 2011, I retained Secure Law Center, P.C. All documents that BOA requested were delivered to Secure Law and forwarded to BOA.

15.    In 2011, I applied a third time and was given a trial payment plan, which I completed on time. On August 20, 2011, BOA offered me a loan modification with a ½ percent reduction in interest rate and several thousand dollars of fees, etc. added to the loan. This created a loan balance greater than when I started with and a payment barely less than the previous payment; but I accepted anyway, signed the documents and sent the money as required via FedEx.

16.    BOA again promptly refused to honor the modification that was offered and accepted. On September 22, 2011, I received a letter from BOA notifying me that my loan modification was rejected for "Note Modification Return Date Expired." BOA denied the modification even

DECLARATION OF JAN M. RENFROE
Page 4

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Pkwy, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

though it kept my money.

17.    Except for the times that BOA took my money to perform under modification agreements, BOA said it would not accept my partial payments. The outstanding loan balance kept getting larger and larger and this caused me a great deal of grief.

18.    I started researching on my own to learn who controlled my loan. I made several trips to Okanogan County Auditor Office to find recorded documents the pertained to my Home. There I found an Assignment of Deed of Trust recorded on May 17, 2011, bearing Instrument No. 3163952. [A true and correct copy of the assignment is attached hereto as **Exhibit D**.]

19.    Today, I still am unable to determine whether my payments under any modification plans were ever applied to the balance of the loan.

20.    The letter dated August 20, 2011 demanded that I gather all the records, sign forms and send them back before August 30, 2011. This barely gave me 10 days to obtain all this information. This surprised me because the bank did not tell me it was going to consider my request for a Modification. By the way, a note at the bottom of page two states, "NOTE: Failure to return all documents correctly signed, dated and notarized and the first payment as requested will result in processing delays." It does not say errors would result in rejection.

21.    I was deeply concerned and disheartened by the modification denials. Without the modification I knew that I would be unable to pay the accelerated amount that the bank had declared due on June 16, 2009. [**Exhibit C.**]

22.    In or about May 2014, B of A sent a Notice of Default to me. [A true and correct copy of the Notice of Default dated May 9, 2014 is attached hereto as **Exhibit E**]

23.    My other trips to the Auditor Office allowed me to find an Appointment of Successor

DECLARATION OF JAN M. RENFROE
Page 5

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Pkwy, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

Trustee recorded on August 17, 2015, bearing Instrument No. 3203196 [A true and correct copy of the Appointment is attached hereto as **Exhibit F**]  My research also allowed me to find another Assignment of the Deed of Trust.  This one was recorded May 3, 2016, bearing Instrument No. 3207974.  [A true and correct copy of the Appointment is attached hereto as **Exhibit G**]

24.    I received a letter dated January 12, 2016 from BOA.  This letter notified me that my loan servicing would transfer to Nationstar Mortgage, LLC on February 1, 2016.  [A true and correct copy of the BOA letter re servicing of Home Loan No. 115904616 is attached hereto as **Exhibit H**]

25.    On or about December 23, 2016, a Notice of Sale was recorded.  The Notice of Sale was sent late December 2016.  [A true and correct copy of the Notice of Sale dated December 21, 2016 bearing Instrument Number 3213654 is attached hereto as **Exhibit I**]

26.    To date I have invested almost $20,000.00 in trying to save my home.  In addition I have spent a considerable amount of time researching, gathering documents and speaking – or trying to speak – with the bank and attorneys.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated this _3_ day of April, 2017, at _Oroville_____, Washington.

_____
Jan M. Renfroe

DECLARATION OF JAN M. RENFROE
                                    Page 6

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Pkwy, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

# Exhibit "A"

MIN#1000452-0000055961-8

# NOTE

November 15, 2005      KIRKLAND      Washington
[Date]                 [City]                  [State]

193 GOLDEN ROAD      ,OROVILLE,WA 98844
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $154,350.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is EAGLE HOME MORTGAGE, INC., A Washington Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   6.0000   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on   January 1, 2006   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   December 1, 2035   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 10510 NE NORTHUP WAY #300   , KIRKLAND, WA 98033
                 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $925.41

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

EG5X030                  EG5X030                      0

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

 -5N (0207)   MN 07/02.01   Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3      Initials:



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of         15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.0000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

EG5X030                              EG5X030                                                                    0

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JAN M. RENFROE                  -Borrower

_____ (Seal)
RAND RENFROE                    -Borrower
By Jan K Renfroe
Attorney In Fact

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

PAY TO THE ORDER OF
Countrywide Bank, N.A.
WITHOUT RECOURSE
EAGLE HOME MORTGAGE, INC.              (Seal)
A WASHINGTON CORPORATION          -Borrower
BY:

CYNTHIA H. CLARK
SHIPPING MANAGER

_____ (Seal)
                                -Borrower

*[Sign Original Only]*

EG5X030                 EG5X030                          0

# Exhibit "B"

20179192-SH

**TRANSNATION TITLE INS. CO.**
Return To:
EAGLE HOME MORTGAGE, INC.

10510 NE NORTHUP WAY #300,
KIRKLAND, WA 98033

Assessor's Parcel or Account Number:  4027330030
Abbreviated Legal Description:
PTN NW SW 33-40-27
[Include lot, block and plat or section, township and range]          Full legal description located on page          .
Trustee: TRANSNATION TITLE INSURANCE COMPANY,
                                              Additional Grantees located on page          .
———————————————[Space Above This Line For Recording Data]———————————————

# DEED OF TRUST

MIN 1000452-0000055961-8

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    November 15, 2005    , together with all Riders to this document.

(B) "Borrower" is JAN M. RENFROE and RAND RENFROE, WIFE AND HUSBAND

Borrower is the trustor under this Security Instrument.

(C) "Lender" is EAGLE HOME MORTGAGE, INC.

EG5X030                              EG5X030                                                                0

WASHINGTON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3048 1/01

-6A(WA) (0012)        MW 12/00.01
Page 1 of 15        Initials:
VMP MORTGAGE FORMS - (800)521-7291

3096812
Page: 2 of 16
11/22/2005 03:26P
49.00  Okanogan Co, WA
TRANSNATION TITLE    DOT

Lender is a A Washington Corporation
organized and existing under the laws of          the State of Washington
Lender's address is  10510 NE NORTHUP WAY #300, KIRKLAND, WA 98033

(D) "Trustee" is TRANSNATION TITLE INSURANCE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated      November 15, 2005
The Note states that Borrower owes Lender One Hundred Fifty Four Thousand Three
Hundred Fifty and no/100                                              Dollars
(U.S. $ 154,350.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than      December 1, 2035
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider        ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

EG5X030                    EG5X030                  Initials:                          0
-6A(WA) (0012)                  Page 2 of 15                          Form 3048 1/01

3096812
Page: 3 of 15
11/22/2005 03:20P
Okanogan Co, WA

TRANSNATION TITLE        DOT        48.00

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the                COUNTY                [Type of Recording Jurisdiction]
of        OKANOGAN                [Name of Recording Jurisdiction]:
THAT PORTION OF THE WEST HALF OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 33, TOWNSHIP 40 NORTH, RANGE 27 EAST, W.M. OKANOGAN COUNTY, WASHINGTON DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHEAST CORNER OF SAID SUBDIVISION; THENCE NORTH 460.0 FEET; THENCE WEST 160.0 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUE WEST 160.0 FEET; THENCE NORTH 300.0 FEET; THENCE EAST 160.0 FEET; THENCE SOUTH 300.0 FEET TO THE TRUE POINT OF BEGINNING. SITUATE IN THE COUNTY OF OKANOGAN, STATE OF WASHINGTON.

Parcel ID Number: 4027330030                which currently has the address of
193 GOLDEN ROAD                                                [Street]
OROVILLE                                [City] , Washington  98844        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

EG5X030                        EG5X030                        Initials:                        0
-6A(WA) (0012)                        Page 3 of 15                        Form 3048 1/01

3096812
Page: 4 of 15
11/22/2005 03:26P
Okanogan Co, WA
TRANSNATION TITLE        DOT        48.00

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community

EG5X030                         EG5X030                    0
⬛-6A(WA) (0012)              Page 4 of 15      Initials: RR  AIF  Form 3048 1/01

3096812
Page: 5 of 15
11/22/2005 03:20P
TRANSNATION TITLE        DOT        40.00  Okanogan Co, WA

Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

EG5X030                    EG5X030                                    0

Initials: JR RR
          A JT

-6A(WA) (0012)              Page 5 of 15                    Form 3048 1/01

3096812
Page: 5 of 15
11/22/2005 83:28P
TRANSNATION TITLE    DOT    48.00    Okanogan Co, WA

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to

EG5X030                    EG5X030                                              0

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

EG5X030                          EG5X030                                           0

-6A(WA) (0012)                  Page 7 of 15              Initials: ___    Form 3048 1/01



**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

EG5X030                        EG5X030                                            0

Initials: JR RR

AIF

-6A(WA) (0012)                 Page 8 of 15                                    Form 3048   1/01

3096812
Page: 9 of 18
11/22/2005 03:26P
Okanogan Co, WA
TRANSNATION TITLE    DOT    48.00

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

EG5X030                         EG5X030                                              0

-6A(WA) (0012)              Page 9 of 15          Initials: ___    Form 3048   1/01

3096812
Page: 10 of 15
11/22/2005 03:28P
TRANSNATION TITLE    DOT    48.00   Okanogan Co, WA

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's

EG5X030                                    EG5X030                                              0

-6A(WA) (0012)                     Page 10 of 15          Initials: JK RR          Form 3048  1/01
                                                                    A IF

3096812
Page: 11 of 16
11/22/2005 03:28P
Okanogan Co, WA
TRANSNATION TITLE    DOT    48.00

notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)

EG5X030                          EG5X030                                    0

3096812
Page: 12 of 16
11/22/2005 03:20P
Okanogan Co, WA

TRANSNATION TITLE        DOT        40.00

certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

EG5X030                              EG5X030                                                        0

3096812
Page: 13 of 16
11/22/2008 03:26P
Okanogan Co, WA

TRANSNATION TITLE        DOT        46.00

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

EG5X030                    EG5X030                                                    0

Initials: _JK_ _RR_
_AIF_



3096812
Page: 14 of 16
11/22/2005 03:20P
TRANSNATION TITLE    DOT    49.00    Okanogan Co, WA

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
JAN M. RENFROE                    -Borrower

_____

_____ (Seal)
RAND RENFROE                      -Borrower
Attorney In Fact

_____ (Seal)      _____ (Seal)
                        -Borrower                          -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                          -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                          -Borrower

EG5X030                 EG5X030                      0
-6A(WA) (0012)          Page 14 of 15        Form 3048  1/01



3096812
Page: 15 of 16
11/22/2005 03:20P
Okanogan Co, WA

TRANSACTION TITLE        DOT        48.00

STATE OF WASHINGTON
County of Okanogan                                    } ss: JL

On this day personally appeared before me   JAN M. RENFROE ~~and RAND RENFROE~~

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this   17th   day of   November, 2005   .

**Official Seal**
JEFF F. LITTLE
NOTARY PUBLIC STATE OF WASHINGTON
COMMISSION EXPIRES: APRIL 24, 2008

Notary Public in and for the State of Washington, residing at   Omak

My Appointment Expires on   04/24/04

EG5X030                        EG5X030                                              0

(logo)-6A(WA) (0012)              Page 15 of 15          Initials: JKRR    Form 3048 1/01
                                                                  AIF



**3096812**
Page: 18 of 18
11/22/2005 03:20P
Okanogan Co, WA

State of <u>Washington</u>

                                                SS:

County of <u>Okanogan</u>

On this 17th day of November, 2005  before me personally appeared Jan Renfroe, to me known
to be the individual described in and who executed the foregoing instrument as Attorney in Fact for
Rand Renfroe and acknowledged that she signed the same as his free and voluntary act and deed
as Attorney in Fact for said principal for the uses and purposes therein mentioned and on oath
stated that the Power of Attorney authorizing the execution of this instrument has not been
revoked and that the said principal is now living and is not insane.

Given under my hand and official seal the day and year last above written.

Notary Public in and for the State of _Washington_
Residing at ___Omak___
My Appointment expires: ___04/24/06___

```
Official Seal
JEFF F. LITTLE
NOTARY PUBLIC STATE OF WASHINGTON
COMMISSION EXPIRES: APRIL 24, 2006
```

# Exhibit "C"

**Home Loans**
P.O. Box 650070
Dallas, TX 75265-0070

*Business Address:*
*450 American Street*
*Simi Valley, CA 93065-6285*

*Send Payments to:*
*P.O. Box 650070*
*Dallas, TX 75265-0070*

June 16, 2009

Jan M & Rand Renfroe
193 GOLDEN RD
OROVILLE, WA 98844-9766

Account No.: 115904616
Property Address:
193 Golden Road
Oroville, WA 98844-9766

### NOTICE OF INTENT TO ACCELERATE

Dear Jan M & Rand Renfree:

BAC Home Loans Servicing, LP (hereinafter "BAC Home Loans Servicing, LP") services the home loan described above on behalf of the holder of the promissory note (the "Noteholder"). The loan is in serious default because the required payments have not been made. The total amount now required to reinstate the loan as of the date of this letter is as follows:

| | | |
|---|---|---|
| Monthly Charges: | 05/01/2009 | $1,850.82 |
| Late Charges: | 05/01/2009 | $46.27 |
| Other Charges: | Total Late Charges: | $0.00 |
| | Uncollected Costs: | $0.00 |
| | Partial Payment Balance: | ($0.00) |
| | **TOTAL DUE:** | **$1,897.09** |

You have the right to cure the default. To cure the default, on or before July 16, 2009, BAC Home Loans Servicing, LP must receive the amount of $1,897.09 plus any additional regular monthly payment or payments, late charges, fees and charges, which become due on or before July 16, 2009.

The default will not be considered cured unless BAC Home Loans Servicing, LP receives "good funds" in the amount $1,897.09 on or before July 16, 2009. If any check (or other payment) is returned to us for insufficient funds or for any other reason, "good funds" will not have been received and the default will not have been cured. No extension of time to cure will be granted due to a returned payment. BAC Home Loans Servicing, LP reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. For example, if less than the full amount that is due is sent to us, we can keep the payment and apply it to the debt but still proceed to foreclosure since the default would not have been cured.

If the default is not cured on or before July 16, 2009, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property. If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, BAC Home Loans Servicing, LP and the Noteholder shall be entitled to collect all fees and costs incurred by BAC Home Loans Servicing, LP and the Noteholder in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

Your loan is in default. Pursuant to your loan documents, BAC Home Loans Servicing, LP may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument and as permitted by law.**

If you are unable to cure the default on or before July 16, 2009, BAC Home Loans Servicing, LP wants you to be aware of various options that may be available to you through BAC Home Loans Servicing, LP to prevent a foreclosure sale of your property. For example:

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

Please write your account number on all checks and correspondence.
We may charge you a fee for any payment returned or rejected by your financial institution, subject to applicable law.

BLONGENV 8795 12/11/2008

| | | |
|---|---|---|
| **Payment Instructions:** | Account Number: **115904616-6** | Balance Due for charges listed above: $1,897.09 as of June 16, 2009. |
| • Make your check payable to BAC Home Loans Servicing, LP | Jan M & Rand Renfree<br>193 Golden Road<br>Oroville, WA 98844-9766 | |
| • Don't send cash | | Please update e-mail information on the reverse side of this coupon. |
| • Please include coupon with your payment | | Additional<br>Principal |
| For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year. | BLONSENV | Additional<br>Escrow |
| | **BAC Home Loans Servicing, LP**<br>PO BOX 650070<br>Dallas, TX 75265-0070 | Check<br>Total |

11590461660000189709000189709

⑈586990058⑈115904616⑊

D ANA000000

Loans Servicing, LP. Our basic plan requires that BAC Home Loans Servicing. LP receive, up front, at least ½ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- Loan Modification: Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through BAC Home Loans Servicing. LP even if your home is worth less than what is owed on it.

- Deed-In-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with BAC Home Loans Servicing, LP, you must contact us immediately. If you request assistance. BAC Home Loans Servicing. LP will need to evaluate whether that assistance will be extended to you. In the meantime, BAC Home Loans Servicing, LP will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by July 16, 2009 as outlined above will result in the acceleration of your debt.

Additionally, the U.S. Department of Housing and Urban Development (HUD) funds free or very low cost housing counseling across the nation. Housing counselors can help you understand the law and your options. They can also help you to organize your finances and represent you in negotiations with your lender if you need this assistance. You may find a HUD-approved housing counselor near you by calling 1-800-569-4287. For the hearing impaired. HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

Time is of the essence. Should you have any questions concerning this notice, please contact Loan Counseling Center immediately at 1-800-669-6654. Our office hours are between 8am to 9pm Eastern Time.

Sincerely,

Loan Counseling Center

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

Account Number: 115904616

E-mail use: Providing your e-mail address below will allow us to send you information on your account.
Jan M & Rand Renfroe E-mail address:

**How we post your payments:** All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments, rather than principal reduction.

**Postdated checks:** Postdated checks will be processed on the date received unless a loan counselor agrees to honor the date written on the check as a condition of a repayment plan.

# Exhibit "D"

05/17/2011 10:55:08 AM
Recording Fee $14.00  Page 1 of 1
Assignment Of Deed Of Trust
Okanogan County Washington                    CORELOGIC

3163952

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

This space for Recorder's use

DocID#    83011590461619164

Tax ID:    4027330030

Property Address:
193 GOLDEN ROAD
Oroville, WA 98844
WAO-ADT 13859046        5/10/2011

Recording Requested By:
Bank of America
Prepared By:
Edward Gallegos
888-603-9011
450 E. Boundary St.
Chapin, SC 29036

MIN #: 1000452-0000055961-8          MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME  LOANS SERVICING LP whose address is 13150 WORLD GATE DR, HERNDON, VA 20170 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          EAGLE HOME MORTGAGE, INC.
Made By:                  JAN M. RENFROE AND RAND RENFROE, WIFE AND HUSBAND
Original Trustee:         TRANSNATION TITLE INSURANCE COMPANY
Date of Deed of Trust:    11/15/2005
Original Loan Amount:     $154,350.00

Recorded in Okanogan County, WA on: 11/22/2005, book N/A, page N/A and instrument number 3096812

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
5-10-11

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By:

Malik Basurto, Assistant Secretary

State of California
County of Ventura

On 5-10-11 before me, Shannon Steeg, Notary Public, personally appeared Malik Basurto, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public, Shannon Steeg          (Seal)
My Commission Expires: 6/17/2013

SHANNON STEEG
Commission # 1849791
Notary Public - California
Los Angeles County
My Comm. Expires May 17, 2013

# Exhibit "E"

# NOTICE

**THIS NOTICE IS ONE STEP IN A PROCESS THAT COULD RESULT IN YOUR LOSING YOUR HOME.**

You may be eligible for mediation in front of a neutral third party to help save your home.

**CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW** to assess your situation and refer you to mediation if you might benefit.  Mediation MUST be requested between the time you receive the Notice of Default and no later than twenty days after the Notice of Trustee Sale is recorded.

**DO NOT DELAY.**  If you do nothing, a notice of sale may be issued as soon as 30 days from the date of this notice of default.  The notice of sale will provide a minimum of 120 days' notice of the date of the actual foreclosure sale.

**BE CAREFUL** of people who claim they can help you. There are many individuals and businesses that prey upon borrowers in distress.

**REFER TO THE CONTACTS BELOW** for sources of assistance.

**SEEKING ASSISTANCE**

Housing counselors and legal assistance may be available at little or no cost to you.  If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing Finance Commission:

> Telephone:  (1-877-894-4663)
> Website:    http://www.wshfc.org/buyers/counseling.htm

The United States Department of Housing and Urban Development

> Telephone:  (1-800-569-4287)
> Website:
> http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA
> &filterSvc=dfc

The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys:

> Telephone:  (1-800-606-4819)
> Website:    http://nwjustice.org/what-clear

**NOTE:  IMPORTANT INFORMATION ON THE REVERSE SIDE OF THIS PAGE**

**NOTICE: YOU ARE HEREBY NOTIFIED THAT THE AMOUNT OF YOUR INDEBTEDNESS TO THE BENEFICIARY, THEIR SUCCESSORS IN INTEREST AND/OR ASSIGNEES AS RECITED BELOW, AS OF THE DATE OF THIS NOTICE/LETTER, IS $175,983.46. INTEREST (PRESENTLY AT THE RATE OF 6.00000% PER ANNUM), FEES AND COSTS WILL CONTINUE TO ACCRUE AFTER THE DATE OF THIS NOTICE/LETTER. UNLESS YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF WITHIN 30 DAYS AFTER RECEIVING NOTICE OF THIS DOCUMENT, THIS OFFICE WILL ASSUME THE DEBT TO BE VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN THE 30-DAY PERIOD THAT THE DEBT OR ANY PORTION THEREOF IS DISPUTED, VERIFICATION OF THE DEBT WILL BE OBTAINED AND WILL BE MAILED TO YOU. UPON WRITTEN REQUEST WITHIN 30 DAYS, THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR, WILL BE PROVIDED.**

**NOTICE: WE ARE A DEBT COLLECTOR. THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR PURPOSES OF DEBT COLLECTION.**

Renfroe, Jan M. and Rand, 2014-0008027

## NOTICE OF DEFAULT

Pursuant to the Revised Code of Washington, Chapter61.24 et seq.

1.    **Default:**

You are hereby notified that the beneficiary has declared a default of the obligation secured by a deed of trust given by Jan M. Renfroe and Rand Renfroe, Wife and Husband, Grantor(s), to Mortgage Electronic Registration Systems, Inc. is a separate corporation that is acting solely as a nominee for Eagle Home Mortgage, Inc. and its successors and assigns as beneficiary, dated November 15, 2005, and recorded November 22, 2005 under Recorder's/Auditor's Number 3096812, in the Official Records of Okanogan County, Washington, encumbering the following described real property in said County:

> THAT PORTION OF THE WEST HALF OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 33, TOWNSHIP 40 NORTH, RANGE 27 EAST, W.M., OKANOGAN COUNTY, WASHINGTON DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHEAST CORNER OF SAID SUBDIVISION; THENCE NORTH 460.0 FEET; THENCE WEST 160.0 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUE WEST 160.0 FEET; THENCE NORTH 300.0 FEET; THENCE EAST 160.0 FEET; THENCE SOUTH 300.0 FEET TO THE TRUE POINT OF BEGINNING. SITUATE IN THE COUNTY OF OKANOGAN, STATE OF WASHINGTON.

**TO BRING YOUR LOAN CURRENT OR PAY IT OFF YOU MUST CONTACT Bishop, Marshall & Weibel, P.S. at (206) 622-7527 or at quotes@bwmlegal.com. DO NOT SEND MONEY WITHOUT CALLING AND OBTAINING AN EXACT AMOUNT.**

NOTICE OF DEFAULT - 1

Renfroe, Jan M. and Rand/2014-0008027/BANA_GETZVILLE
FC-NJ-WA-NOD-4

2.    **Statement of Default and Itemized Arrearages:**

The beneficiary alleges default of the deed of trust for the following reasons:

a.    Failure to pay the following amounts, now in arrears:

**Monthly Payments:**

**Delinquent Monthly Payments Due from**
07/01/2011 through 05/01/2014:
13 payment(s) at $1,216.53
12 payment(s) at $1,212.67
10 payment(s) at $1,223.91

| | |
|---|---:|
| **Total:** | **$42,606.03** |
| Property Inspection: | $ 330.00 |
| Property Preservation Fees | $ 300.00 |
| **TOTAL DEFAULT:** | **$43,236.03** |

b.    **TO REINSTATE OR PAYOFF YOU MUST CONTACT THE TRUSTEE.**

Default other than failure to make monthly payments:

In the event there are delinquent taxes and assessments owing against the property at the time of reinstatement, or a senior lien is delinquent, those delinquent taxes and assessments and lien must also be cured as a condition of reinstatement.

**3. Other Charges, Costs and Fees:**

In addition to the amounts specified above, you are or may be obliged to pay the following charges, costs and fees to reinstate the Deed of Trust if reinstatement is made before recording of the Notice of Trustee's Sale:

| | |
|---|---:|
| Cost of title report for foreclosure (Estimated): | $ 800.00 |
| Posting of Notice of Default (Estimated): | $77.00 |
| Copying (Estimated): | $15.00 |
| Statutory Mailing (Estimated): | $30.00 |
| Agent's fee for issuance of Notice of Default | $1,200.00 |
| Recording (Estimated): | $40.00 |
| **TOTAL CHARGES – COSTS AND FEES ESTIMATED:** | **$2,162.00** |

**TO BRING YOUR LOAN CURRENT OR PAY IT OFF YOU MUST CONTACT Bishop, Marshall & Weibel, P.S. at (206) 622-7527 or at quotes@bwmlegal.com. DO NOT SEND MONEY WITHOUT CALLING AND OBTAINING AN EXACT AMOUNT.**

**4.    Reinstate:**

    a.    The total amount necessary to reinstate your Note and Deed of Trust before the recording of the Notice of Trustee's Sale is the sum of Paragraphs 2 and 3 above.

    PLUS the amount of any monthly payments and late charges which but for the acceleration, would fall due after the date of the Notice of Default.

    PLUS any of the additional costs or fees which may be incurred subsequent to the date of the Notice of Default.

Payoff monies, in the form of **cash, or cashier's check or certified checks** from federally or state chartered banks, must be tendered to:

Bishop, Marshall & Weibel, P.S.
720 Olive Way, Suite 1201
Seattle, WA 98101
(206) 622-7527

**5.    Consequences of Default:**

    a.    Failure to cure said alleged default within thirty (30) days of the mailing of this notice, or if personally served, within thirty (30) days of the date of personal service hereof, may lead to recordation, transmittal and publication of a Notice of Trustee's Sale, and the property described in Paragraph 1 above may be sold at a public auction at a date no less than 150 days in the future.

    b.    The effect of the recordation, transmittal and publication of a Notice of Trustee's Sale will be to (i) increase the costs and fees; and (ii) publicize the default and advertise the property described herein for sale.

    c.    The effect of the sale of the grantor(s)' property by the Trustee will be to deprive the grantor(s) of all their interest in the property described in Paragraph 1 above.

**6.    Recourse to Courts:**

    The borrower, grantor(s), and any guarantor has recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on any proper ground.

NOTICE TO ALL PERSONS AND PARTIES WHO ARE GUARANTORS OF THE OBLIGATIONS SECURED BY THIS DEED OF TRUST: (1) The Guarantor may be liable for a deficiency judgment to the extent the sale price obtained at the Trustee's Sale is less than the debt secured by the Deed of Trust; (2) The Guarantor has the same rights to reinstate the debt, cure the default, or repay the debt as is given to the grantor in order to avoid the trustee's sale; (3) The Guarantor will have no right to redeem the property after the Trustee's Sale; (4) Subject to such longer periods as are provided in the Washington Deed of Trust Act, Chapter 61.24 RCW, any action brought to enforce a guaranty must be commenced within one year after the Trustee's Sale, or the last Trustee's Sale under any deed of trust granted to secure the same debt; and (5) In any action for a deficiency, the Guarantor will have the right to establish the fair value of the property as of the date of the Trustee's Sale, less prior liens and encumbrances, and to limit its liability for a deficiency to the difference between the debt and the greater of such fair value or the sale price paid at the Trustee's Sale, plus interest and costs.

NOTICE OF DEFAULT - 3

Renfroe, Jan M. and Rand/2014-0008027/BANA_GETZVILLE
FC-NJ-WA-NOD-4

7.    **Declaration Re: Foreclosure Loss Mitigation:**

[X]  Attached is a true and correct copy of the Declaration Re: Loss Mitigation, duly executed by the Beneficiary or authorized agent of the Beneficiary; or

[ ]  No Declaration Re: Loss Mitigation is attached to this Notice because:
    [ ]    Property is vacant
    [ ]    Property is non-owner occupied
    [ ]    Property secures a commercial loan (loan not made primarily for personal, family or household purposes), or secures the obligation of a grantor who is not the borrower or a guarantor, or secures a purchaser's obligation under a seller-financed note.

8.    The name and address of the owner of the note or other obligation secured by the above deed of trust are as follows:

a.  The name and address of the owner of the note or other obligation secured by the above deed of trust are as follows:

Name:     Federal National Mortgage Association
Address:  3900 Wisconsin Ave., NW
          Washington, DC 20016-2892

b.  The name, address and telephone number of the party acting as a servicer of the obligation secured by the above deed of trust are as follows:

Name:     Bank of America, N.A.
Address:  7105 Corporate Drive
          Plano, TX 75024

Phone:    800-669-6650

DATED:  May 9, 2014

☐  William L. Bishop, Jr.
☐  David A. Weibel
☐  Ann T. Marshall
Bishop, Marshall & Weibel, P.S.
720 Olive Way, Suite 1201
Seattle, WA 98101
(206) 622-7527

Renfroe, Jan M. and Rand/2014-0008027

This Notice of Default was mailed on May 9, 2014

NOTICE OF DEFAULT - 4

Renfroe, Jan M. and Rand/2014-0008027/BANA_GETZVILLE
FC-NJ-WA-NOD-4

C3_393-2 WA-DECLARATIONS 14478 03/10/2011

**Notice Date:** April 21, 2014

**Property Address:**
193 Golden Road
Oroville, WA 98844

Jan M & Rand Renfroe
193 Golden Rd
Oroville, WA 98844

# <u>Foreclosure Loss Mitigation Declaration</u>

Trustee Sale Number: _____

The undersigned beneficiary or authorized agent of the beneficiary hereby represents and declares under penalty of perjury that:

X    The beneficiary or beneficiary's authorized agent has contacted the borrower under, and has complied with, RCW 61.24.031 (contact provision to "assess the borrower's financial ability to pay the debt secured by the deed of trust and explore options for the borrower to avoid foreclosure") and the borrower did not request a meeting.

The beneficiary or beneficiary's authorized agent has contacted the borrower as required under RCW 61.24.031 and the borrower or the borrower's designated representative requested a meeting. A meeting was held in compliance with RCW 61.24.031.

The beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required in RCW 61.24.031

The borrower has surrendered the secured property as evidenced by either a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, the beneficiary's authorized agent or to the trustee.

Under RCW 61.24.031, the beneficiary or the beneficiary's authorized agent has verified information that, on or before the date of this declaration, the borrower(s) has filed for bankruptcy, and the bankruptcy stay remains in place, or the borrower has filed for bankruptcy and the bankruptcy court has granted relief from the bankruptcy stay allowing the enforcement of the deed of trust.

I declare under penalty of perjury under the laws of the State of _Washington_ and the laws of the United States that the foregoing is true and correct.

Bank of America, N.A.

_Marhitta Butler_ / MTG Servicing Specialist Lead
Signature/Title

**Produced By:** CharKitta L. Butler

**Date:** 04-21-2014

# 'Mailing List'

Jan M Renfroe
193 Golden Rd A
Oroville, WA 98844

Jan M Renfroe
193A Golden RD
Oroville, WA 98844

Jan M. Renfroe
193 Golden Rd
Oroville, WA 98844

Rand Renfroe
193 Golden Rd A
Oroville, WA 98844

Rand Renfroe
193 Golden Rd
Oroville, WA 98844

Rand Renfroe
193A Golden RD
Oroville, WA 98844



**Bishop, Marshall & Weibel, P.S.**

ATTORNEYS AT LAW

720 Olive Way, Suite 1201
Seattle, WA 98101
Telephone
(206) 622-5306
Fax
(206) 622-0354

# N O T I C E

**If you are the borrower in the deed of trust transaction described in this notice, and you are now, or have within the past twelve months been, a member of the armed forces who is on active military duty, or are a member of the a Reserve Unit or National Guard, are an active service member of the commissioned corps of the Public Health Service or the National Oceanic and Atmospheric Administration, and are deployed for active duty, or are a United States citizen serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action, please contact our office immediately to discuss alternatives to this foreclosure proceeding.**

NOTICE: State and federal law provide protections to defendants who are on active duty in the military service, and to their dependents. Dependents of a service member are the service member's spouse, the service member's minor child, or an individual for whom the service member provided more than one-half of the individual's support for one hundred eighty days immediately preceding an application for relief.

One protection provided is the protection against the entry of a default judgment in certain circumstances. This notice only pertains to a defendant who is a dependent of a member of the national guard or a military reserve component under a call to active service, or a national guard member under a call to service authorized by the governor of the state of Washington, for a period of more than thirty consecutive days. Other defendants in military service also have protections against default judgments not covered by this notice. If you are the dependent of a member of the national guard or a military reserve component under a call to active service, or a national guard member under a call to service authorized by the governor of the state of Washington, for a period of more than thirty consecutive days, you should notify the plaintiff or the plaintiff's attorneys in writing of your status as such within twenty days of the receipt of this notice. If you fail to do so, then a court or an administrative tribunal may presume that you are not a dependent of an active duty member of the national guard or reserves, or a national guard member under a call to service authorized by the governor of the state of Washington, and proceed with the entry of an order of default and/or a default judgment without further proof of your status. Your response to the plaintiff or plaintiff's attorneys about your status does not constitute an appearance for jurisdictional purposes in any pending litigation nor a waiver of your rights.

# Exhibit "F"

Recording Fee $15.00   Page 1 of 2
Resig/appt Successor Trustee
Okanogan County Washington
BAINES TITLE CO

When recorded return to:
**Bank of America, Collateral Request Team**
**1800 Tapo Canyon Road**
**Simi Valley, CA 96063**

**Baines Title & Escrow**
CK  63144-15

| | | |
|---|---|---|
| TS No.: | **WA-15-673663-SW** | Space above this line for recorders use only |
| Order No.: | **150152630-WA-MSO** | |
| APN No.: | **4027330030** | |

MERS MIN No.: 1000452-0000055961-8   MERS Telephone No. 1-888-679-6377

### Appointment of Successor Trustee

NOTICE IS HEREBY GIVEN that **QUALITY LOAN SERVICE CORPORATION OF WASHINGTON**, whose address is **108 1st Ave South, Suite 202, Seattle, WA 98104** is hereby appointed Successor Trustee under that certain Deed of Trust dated **11/15/2005**, executed by JAN M. RENFROE AND RAND   RENFROE , WIFE AND HUSBAND as Grantor, in which **TRANSNATION TITLE INSURANCE COMPANY** was named as Trustee, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR EAGLE HOME MORTGAGE, INC** as Beneficiary, and recorded on **11/22/2005**, under Auditor's File No. **3096812** of Official Records whereas, **BANK OF AMERICA, N.A.** is the present Beneficiary under said Deed of Trust, and desires to appoint and hereby does appoint QUALITY LOAN SERVICE CORPORATION OF WASHINGTON as the new Trustee in place and stead of the present Trustee thereunder.

Said Deed of Trust Encumbers the real property situated in **OKANOGAN** County, Washington and is fully described as:

> THAT PORTION OF THE WEST HALF OF THE NORTHWEST QUARTER OF THE SOUTHWEST  QUARTER OF SECTION 33, TOWNSHIP 40 NORTH, RANGE 27 EAST, W.M. OKANOGAN  COUNTY, WASHINGTON, DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHEAST  CORNER OF SAID SUBDIVISION; THENCE NORTH 460.0 FEET; THENCE WEST 160.0  FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUE WEST 160.0 FEET;  THENCE NORTH 300.0 FEET; THENCE EAST 160.0 FEET; THENCE SOUTH 300.0  FEET TO THE TRUE POINT OF BEGINNING.  SITUATE IN THE COUNTY OF OKANOGAN, STATE OF WASHINGTON.

And more commonly known as: **193 GOLDEN ROAD, OROVILLE, WA 98844-0000**

08/17/2015 08:09:07 PM   2892155
Recording Fee $15.00  Page 2 of 2
Resig/appt Successor Trustee        BAINES TITLE CO
Okanogan County Washington

NOW THEREFORE, the undersigned, **BANK OF AMERICA, N.A.**, hereby substitutes QUALITY LOAN SERVICE CORPORATION OF WASHINGTON as Trustee under said Deed of Trust.

TS No.:  **WA-15-673663-SW**

Dated:  August 3, 2015                    **BANK OF AMERICA, N.A.**

By: _Christian Michelle Jones_
    _Assistant Vice President_

State of: _Pennsylvania_ )
                         ) ss.
County of: _Allegheny_ )

Before me, _Anthony R. McCreary_ , the undersigned officer, on this, the _3_ day
         (insert name of notary)
of _August_ , 2015, personally appeared _Christine Michelle Jones_ ,
                                              (insert name of signer)

☐ known to me or, ☑ through production of _Driver's License_ as
identification, who identified her/himself to be the _Assistant Vice President_ of
_Bank of America, N.A._ , the person and officer whose name is subscribed to the
foregoing instrument, and being authorized to do so, acknowledged that (s)he had executed the
foregoing instrument as the act of such corporation for the purpose and consideration described
and in the capacity stated.

_[signature]_
Notary Signature                     (seal)

**COMMONWEALTH OF PENNSYLVANIA**

> NOTARIAL SEAL
> ANTHONY R MCCREARY, NOTARY PUBLIC
> CITY OF PITTSBURGH, ALLEGHENY COUNTY
> MY COMMISSION EXPIRES MAY 29, 2019

Notary Public, State of _Pennsylvania_
Commission No.: _1291023_
My Commission Expires: _May 29 2019_

# Exhibit "G"

05/03/2016 03:24:15 PM   3207974
Recording Fee $17.00 Page 1 of 3
Quality Loan Service CES INC
Okanogan County Washington

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94th Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

**APN# 4027330030**

_____   _____ Space above for Recorder's use _____

Loan No: 2328793
Svcr Ln No: 630681385


2247824

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP,** whose address is **1800 TAPO CANYON RD., SIMI VALLEY, CA 93063**, (ASSIGNOR), does hereby grant, assign and transfer to **CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR NRZ PASS-THROUGH TRUST VI,** whose address is **60 LIVINGSTON AVE. MAILCODE: EP-MN-WS3D, ST. PAUL, MN 55107,** (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **11/15/2005**
Original Loan Amount: **$154,350.00**
Executed by (Borrower(s)): **JAN M. RENFROE AND RAND RENFROE, WIFE AND HUSBAND**
Original Trustee: **TRANSNATION TITLE INSURANCE COMPANY**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR EAGLE HOME MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book N/A, Page N/A,
Document/Instrument No: **3096812** in the Office of County Recorder of **OKANOGAN** County, WA, Recorded on **11/22/2005**.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **193 GOLDEN ROAD, OROVILLE, WASHINGTON 98844**

2328793  NRZ FNMA NPL 1  2247824

05/03/2016 03:24:15 PM   3207974
Okanogan County Washington
MERIDIAN ASSET SERVICES, INC

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____4-1-16_____

**BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP**

By: **DAN SLEDD**
Title: **VICE PRESIDENT**
MERIDIAN ASSET SERVICES, INC., AS
ATTORNEY-IN-FACT FOR BANK OF
AMERICA, N.A., SUCCESSOR BY MERGER TO
BAC HOME LOANS SERVICING, LP, F/K/A
COUNTRYWIDE HOME LOANS SERVICING,
LP

Witness Name: **JON SLEDD**

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of     **FLORIDA**
County of    **PINELLAS**

On _____4-1-16_____, before me, **GERALD E. MURCH**, a Notary Public, personally appeared **DAN SLEDD, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, INC., AS ATTORNEY-IN-FACT FOR BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify DAN SLEDD, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **GERALD E. MURCH**
My commission expires: **2/13/2018**

GERALD E. MURCH
MY COMMISSION # FF 039561
EXPIRES February 13, 2018
Bonded Thru Budget Notary Services

2328793  NRZ FNMA NPL 1  2247824

05/03/2016 03:24:15 PM    3207974
Recording Fee $17.00  Page 3 of 3
Deed of Trust    NATIONSTAR MORTGAGE ADDRESS. INC
Okanogan County Washington

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

## EXHIBIT "A"

THAT PORTION OF THE WEST HALF OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 33, TOWNSHIP 40 NORTH, RANGE 27 EAST, W.M. OKANOGAN COUNTY, WASHINGTON DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHEAST CORNER OF SAID SUBDIVISION; THENCE NORTH 460.0 FEET; THENCE WEST 160.0 FEET TO THE TRUE POINT OF BEGINNING;  THENCE CONTINUE WEST 160.0 FEET; THENCE NORTH 300.0 FEET;  THENCE EAST 160.0 FEET;  THENCE SOUTH 300.0 FEET TO THE TRUE POINT OF BEGINNING.  SITUATE IN THE COUNTY OF OKANOGAN, STATE OF WASHINGTON.

2328793  NRZ FNMA NPL 1  2247824

# Exhibit "H"

C3_1678 PSGSRL01 18464 08/21/2015



**Bank of America**

Home Loans

P.O. Box 31785
TAMPA, FL 33631-3785

**IMPORTANT INFORMATION ENCLOSED**

AT2        4-772-27038-0000148-001-1-000-000-000-000

JAN M & RAND RENFROE
645 VALLEY MALL PKWY SUITE 200
EAST WENATCHEE, WA 98802

P.O. Box 31785
TAMPA, FL 33631-3785

**Business Address:**
450 American Street
Simi Valley, CA 93065-6285

**Notice Date:**    January 12, 2016

**Loan No.:**    115904616

**Property Address:**
193 Golden Road
Oroville, WA 98844

JAN M & RAND RENFROE:

The servicing of your home loan will transfer to Nationstar Mortgage LLC on February 01, 2016.

---

**IMPORTANT INFORMATION ABOUT THE SERVICING OF YOUR HOME LOAN**

On February 01, 2016, the servicing of your above referenced mortgage loan will transfer to Nationstar Mortgage LLC. As of that date, your new servicer, Nationstar Mortgage LLC, will support all of your loan servicing, including billing, payment processing, and customer support. You will no longer receive mortgage statements from Bank of America; instead, your statements will be sent by Nationstar Mortgage LLC.

Enclosed is a **Notice of Servicing Transfer** from Bank of America regarding the above referenced loan. No action is required on your part in response to this notice. In addition to the information provided in this letter, this notice will contain important information about the servicing transfer of your loan. Please note this servicing transfer only applies to the loan noted above. Other loans you may have with us will not be affected by this change unless you are notified. **Please review this notice and retain it for your records.**

In the mortgage lending industry, the transfer or sale of loan servicing to other servicing institutions is a common practice and we'll work closely with Nationstar Mortgage LLC to make the transition as smooth as possible. If you have any questions or concerns regarding this transfer, we're available to answer your questions Monday-Friday 7a.m. to 7p.m. Local Time at 1-800-669-6607.

---

**WHAT YOU NEED TO KNOW**

**If you are currently being considered for a loan modification or other foreclosure avoidance program,** your new servicer Nationstar Mortgage LLC is aware of your current status and will have all of your documents. Please contact Nationstar Mortgage LLC to complete the process and determine which programs may best suit your current situation. For more information on working with Nationstar Mortgage LLC, please review the frequently asked questions below.

---

**ANSWERS TO QUESTIONS YOU MAY HAVE**

**What will change with my servicing transfer?**
- Your loan number and payment address information will change once your loan has been transferred. Please look for a letter from Nationstar Mortgage LLC within the next few weeks which will outline this important information.
- The transfer of your loan to Nationstar Mortgage LLC does not affect any terms or conditions of your mortgage loan, other than those terms directly related to the servicing of the loan.
- Your monthly payment will not be affected by this transfer.

**Will the quality of my loan service change?**
- We expect that the quality of your loan service will not change. We are transferring servicing on your loan to Nationstar Mortgage LLC, an experienced mortgage servicer who will work with you on your mortgage concerns.

**Where should I make my home loan payments?**
- You should continue to make your monthly payment to Bank of America through January 31, 2016. You will begin making payments to Nationstar Mortgage LLC on February 01, 2016.
- If you do not receive a billing statement from Nationstar Mortgage LLC before the payment is due, write your new loan number on your check and mail it to the payment address shown on the enclosed notice. Please note, if you do not have the new loan number, you may write your old Bank of America loan number on the check.

**What if I have automatic payments set up with Bank of America?**
- Any automatic payments set up with us through the PayPlan programs will be discontinued as of January 31, 2016. Please look for instructions from Nationstar Mortgage LLC or contact them on or after February 01, 2016 to determine what payment options they may offer.

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

**Will I still be able to make my mortgage payment at a Bank of America financial center or through online banking?**
- You will no longer be able to make your payment at a Bank of America financial center for the mortgage loan being transferred.
- If you make payments through Bank of America online banking or any other online banking or bill payment service, you will need to update your loan number and payee information for Nationstar Mortgage LLC on or after February 01, 2016.

**When my loan is transferred, will I still have access to my online loan information through Bank of America?**
- After the transfer is complete, your mortgage account will be moved to Nationstar Mortgage LLC. As a result, you will no longer access your mortgage information through Bank of America. Prior to the transfer, you may choose to download any information currently online to keep for your own records, such as tax documents, mortgage statements, payment history, etc. Nationstar Mortgage LLC will be able to provide you with information about access to your loan account information following the transfer. If you have any other accounts with Bank of America, such as checking, savings or credit card, you will still be able to access those accounts through Bank of America's online banking.

**How will the service transfer affect my other Bank of America accounts?**
- There will be no change to any additional accounts you have with us.
- If you have a Bank of America Advantage, Premium or Preferred checking account, and you're not charged a monthly fee on your account because your mortgage is with us, this will not change with the transfer of your mortgage to another servicer. We'll let you know in writing if this changes in the future.

**What if I am currently participating in a loan modification or other foreclosure avoidance program (e.g., forbearance, short sale, refinance or deed in lieu of foreclosure)?**
- The loan assistance programs that are offered by Nationstar Mortgage LLC are determined by the owner (also known as the investor) or insurer of your loan. Where applicable, Nationstar Mortgage LLC has agreed to evaluate your loan under the same investor or insurer guidelines as Bank of America, N.A..
- We will transfer any supporting documentation you may have submitted to us to Nationstar Mortgage LLC. We encourage you to work with Nationstar Mortgage LLC to complete the process and determine which programs may best suit your current situation.
- You should continue to make your payments to Bank of America, N.A. through January 31, 2016. On or after February 01, 2016, your payments should be made to Nationstar Mortgage LLC unless you are provided additional direction.
- If your loan is pending a decision regarding qualification for these programs, that decision will now be made by Nationstar Mortgage LLC.

**Will my ability to receive financial counseling be impacted by this servicing transfer?**
- If you have previously received an offer for financial counseling in association with a HAMP trial or permanent modification, the transfer of your loan does not impact that offer.
- If you have already set an appointment, please continue to attend your scheduled appointment.
- If you have yet to take advantage of this opportunity, please contact us at your earliest convenience by calling the number provided in your offer letter or by contacting your current Relationship Manager.

**What if I need loan assistance after the transfer?**
- If you experience a hardship and struggle with making your home loan payments after the servicing of your loan has been transferred, please contact Nationstar Mortgage LLC right away to request help. They will determine which program may be right for you based on the applicable investor and insurer guidelines.

**What if I am refinancing my mortgage loan that is being transferred?**
- Your refinance will not be affected by the upcoming loan transfer. If you are working on a refinance through Bank of America Home Loans, your application remains active and we will continue to work with you on your refinance. Please contact the Mortgage Loan Officer or Loan Processor you have been working with if you have any questions.

**What about my optional Insurance products with or through Bank of America?**
- If your payments include amounts for any optional insurance products such as credit insurance, accidental death insurance, etc., please read the "Information About Optional Insurance Products" section in the enclosed notice carefully.

**What about my other (non-insurance) optional products with or through Bank of America?**
- If your payments include amounts for any other optional products you have purchased such as home warranty, identity theft protection, etc., we will no longer make payments to the optional product provider on your behalf. As a result, your optional product may be cancelled unless you are able to make alternative arrangements to pay the amounts due. To see if it is possible to establish another payment method and maintain your optional products, you will need to contact your optional product provider.
- Your provider contact information may be found on your monthly mortgage statement. If you have more than two optional products, they may not all be listed on your monthly mortgage statement. If you are unsure about how many optional products you have or you have questions about your products, please contact Bank of America.

---

**WE'RE HERE TO HELP**

Thank you for the opportunity to serve your home loan needs. If you have any questions or need assistance prior to your loan transfer, please call us toll free at 1-800-669-6607, Monday-Friday 7a.m. to 7p.m. Local Time.

Beginning February 01, 2016, Nationstar Mortgage LLC can assist you with any questions related to your home loan and the transfer of servicing. Nationstar Mortgage LLC's customer service number is 1-877-372-0512, Monday through Thursday 8:00 am - 8:00 pm, Friday 8:00 am - 6:00 pm and Saturday 8:00 am - 2:00 pm Central Time.



MILITARY PERSONNEL/SERVICEMEMBERS: If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act (SCRA) and similar state laws provide significant protections and benefits to eligible military service personnel. However, military service and/or SCRA qualification may not necessarily prevent foreclosure. If your loan is in default, a court may authorize foreclosure. If you are having difficulty making your payments, please call us as soon as you can so we can discuss various home retention options. You can reach our Enterprise Military Benefits Unit at 877.345.0693. From outside the U.S., please call us at 817.245.4094. Both numbers are available 24/7. Homeowner counseling is also available at agencies such as Military OneSource at militaryonesource.mil or 800.342.9647 and Armed Forces Legal Assistance at legalassistance.law.af.mil, and through HUD-approved housing counseling agencies, which you can find at hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

—

This communication is from Bank of America, N.A., the servicer of your home loan.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. If you are currently in a bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this notice is for informational purposes only and is not an attempt to collect a debt, a demand for payment or an attempt to impose personal liability for a discharged debt.

Loan No. 115904616    Notice Date: January 15, 2016

**NOTICE OF SERVICING TRANSFER**



You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, will be assigned, sold or transferred from **Bank of America, N.A.** to **Nationstar Mortgage LLC**, effective February 01, 2016.

The transfer of the servicing of your mortgage loan does not affect any terms or conditions of the mortgage instruments, other than those terms directly related to the servicing of your loan. Except in limited circumstances, federal law requires that your present servicer send you this notice at least 15 calendar days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 calendar days after this effective date or at closing.

**YOUR SERVICER PRIOR TO FEBRUARY 01, 2016:**

Your *present servicer* is **Bank of America, N.A..** If you have any questions relating to the transfer of servicing from your present servicer, please call **Bank of America, N.A.** Customer Service at 1-800-669-6607, Monday-Friday 7a.m. to 7p.m. Local Time. This is a toll-free number. The address to send written questions to your present servicer relating to the transfer of servicing of your mortgage loan (but not your loan payments) is: Customer Service Correspondence, P.O. Box 31785, TAMPA, FL 33631-3785.

**YOUR NEW SERVICER ON AND AFTER FEBRUARY 01, 2016:**

Your *new servicer* will be **Nationstar Mortgage LLC**.

Phone Number for Questions Related to Servicing Transfer
The telephone number of **Nationstar Mortgage LLC** is 1-877-372-0512. If you have any questions relating to the transfer of servicing to your new servicer, please call **Nationstar Mortgage LLC** Customer Service toll-free at 1-877-372-0512, Monday through Thursday 8:00 am - 8:00 pm, Friday 8:00 am - 6:00 pm and Saturday 8:00 am - 2:00 pm Central Time.

Address for Written Questions Related to Servicing Transfer
The address to send written questions related to the transfer of servicing to **Nationstar Mortgage LLC** is:

Nationstar Mortgage LLC
8950 Cypress Waters Blvd.

Coppell, TX  75019

Address for Mailed Payments
The address to send payments to **Nationstar Mortgage LLC** is:

Nationstar Mortgage LLC
Attn: Payment Processing, P.O. Box 650783
Dallas, TX  75265-0783

Please include your loan number on all checks, cashier's checks and other payments sent to **Nationstar Mortgage LLC.**

**INFORMATION CONCERNING YOUR LOAN PAYMENTS:**

The date that **Bank of America, N.A.** will stop accepting payments from you is January 31, 2016.

The date that your *new servicer* **Nationstar Mortgage LLC** will start accepting payments from you is February 01, 2016. Send all payments due on or after that date to your *new servicer*.

**INFORMATION ABOUT OPTIONAL INSURANCE PRODUCTS:**

The transfer of servicing may affect the terms of or the continued availability of credit insurance, accidental death insurance or any other type of optional insurance in the following manner: **Bank of America, N.A.** will no longer make payments to the insurance company on your behalf. As a result, your coverage may be cancelled.

To see if it is possible to maintain coverage, you will need to contact your insurance provider to find out if you are still eligible to receive the coverage and/or to arrange another payment method.

**TREATMENT OF PAYMENTS FOR THE 60 DAYS AFTER SERVICING TRANSFER:**

Under federal law, during the 60-day period beginning the effective date of the transfer of the servicing of your mortgage loan, a loan payment received by current servicer on or before its due date may not be treated by the new servicer as late and a late fee may not be imposed on you.

Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2012 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved. Some products may not be available in all states. This is not a commitment to lend. Restrictions apply.

# Exhibit "I"

12/23/2016 01:58:35 PM   3213854
Recording Fee $76.00  Page 1 of 4   BAINES TITLE CO
Okanogan County Trust

WHEN RECORDED MAIL TO:
**Quality Loan Service Corp. of Washington**
**C/O Quality Loan Service Corporation**
**411 Ivy Street**
**San Diego, CA 92101**

Baines Title & Escrow
63794716-82

TS No.: **WA-15-673663-SW**                          SPACE ABOVE THIS LINE FOR RECORDER'S USE
APN No.: **4027330030**
Title Order No.: **160041945-WA-MSO**
Deed of Trust Grantor(s): **JAN M. RENFROE, RAND RENFROE**
Deed of Trust Grantee(s): **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR EAGLE HOME MORTGAGE, INC**
Deed of Trust Instrument/Reference No.: **3096812**

# NOTICE OF TRUSTEE'S SALE
Pursuant to the Revised Code of Washington 61.24, et seq.

I.      **NOTICE IS HEREBY GIVEN** that Quality Loan Service Corp. of Washington, the undersigned Trustee, will on **4/28/2017, at 10:00 AM** At the **main entrance of the Okanogan County Courthouse, located at 149 3rd N, Okanogan, WA 98840** sell at public auction to the highest and best bidder, payable in the form of credit bid or cash bid in the form of cashier's check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of **OKANOGAN**, State of Washington, to-wit:

**THAT PORTION OF THE WEST HALF OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 33, TOWNSHIP 40 NORTH, RANGE 27, E.W.M., OKANOGAN COUNTY, WASHINGTON, DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHEAST CORNER OF SAID SUBDIVISION; THENCE NORTH 460.0 FEET; THENCE WEST 160.0 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUE WEST 160.0 FEET; THENCE NORTH 300.0 FEET; THENCE EAST 160.0 FEET; THENCE SOUTH 300.0 FEET TO THE TRUE POINT OF BEGINNING.**

More commonly known as: **193 GOLDEN ROAD, OROVILLE, WA 98844**

which is subject to that certain Deed of Trust dated **11/15/2005**, recorded 11/22/2005, under **Instrument No. 3096812** records of OKANOGAN County, Washington, from **JAN M. RENFROE AND RAND RENFROE , WIFE AND HUSBAND**, as grantor(s), to **TRANSNATION TITLE INSURANCE COMPANY**, as original trustee, to secure an obligation in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR EAGLE HOME MORTGAGE, INC**, as original beneficiary, the beneficial interest in which was subsequently assigned to **CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI**, the Beneficiary, under an assignment recorded under Auditors File Number 3207974

II.     No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III.    The default(s) for which this foreclosure is made is/are as follows: Failure to pay when due the following amounts which are now in arrears: **$85,091.80**

IV.    The sum owing on the obligation secured by the Deed of Trust is: The principal sum of **$139,963.87**, together with interest as provided in the Note from 6/1/2011 on, and such other costs and fees as are provided by statute.

V.    The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on 4/28/2017. The defaults referred to in Paragraph III must be cured by 4/17/2017 (11 days before the sale date), or by other date as permitted in the Note or Deed of Trust, to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before 4/17/2017 (11 days before the sale), or by other date as permitted in the Note or Deed of Trust, the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashiers or certified checks from a State or federally chartered bank. The sale may be terminated any time after the 4/17/2017 (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI.    A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower(s) and Grantor(s) by both first class and certified mail, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting. The list of recipients of the Notice of Default is listed within the Notice of Foreclosure provided to the Borrower(s) and Grantor(s). These requirements were completed as of 5/9/2014.

VII.    The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.    The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above-described property.

IX.    Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.    NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

**THIS NOTICE IS THE FINAL STEP BEFORE THE FORECLOSURE SALE OF YOUR HOME.**

You have only 20 DAYS from the recording date of this notice to pursue mediation.

**DO NOT DELAY. CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW** to assess your situation and refer you to mediation if you are eligible and it may help you save your home. See below for safe sources of help.

**SEEKING ASSISTANCE**

Housing counselors and legal assistance may be available at little or no cost to you. If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

12/23/2016 01:58:35 PM    3213654
Recording Fee $76.00   Page 3 of 4
Notice Of Trustee's Sale    BAINES TITLE CO

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing Finance Commission: Toll-free: **1-877-894-HOME (1-877-894-4663)** or Web site: http://www.dfi.wa.gov/consumers/homeownership/post_purchase_counselors_foreclosure.htm.

The United States Department of Housing and Urban Development: Toll-free: **1-800-569-4287** or National Web Site: http://portal.hud.gov/hudportal/HUD or for Local counseling agencies in Washington: http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA&filterSvc=dfc

The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys: Telephone: **1-800-606-4819** or Web site: http://nwjustice.org/what-clear.

**Additional disclaimers provided by the Trustee:** If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the noteholders rights against the real property only.



12/23/2016 01:58:55 PM   9213654
Recording Fee $76.00  Page 4 of 4
Notice Of Trustee's Sale
Washington      BAINES TITLE CO

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

Dated:

12 / 21 / 2016

_Lauren Esquivel_

Quality Loan Service Corp. of Washington, as Trustee
By: Lauren Esquivel, Assistant Secretary

Trustee's Mailing Address:
Quality Loan Service Corp. of Washington
C/O Quality Loan Service Corp.
411 Ivy Street, San Diego, CA 92101
(866) 645-7711

Trustee's Physical Address:
Quality Loan Service Corp. of Washington
108 1st Ave South, Suite 202
Seattle, WA 98104
(866) 925-0241

Sale Line: 916-939-0772 or Login to: http://wa.qualityloan.com
Trustee Sale Number: WA-15-673663-SW

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of: **California** )
County of: **San Diego** )

On **DEC 21 2016** before me, ___Brenda A. Gonzalez___ a notary public, personally appeared _Lauren Esquivel_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of **California** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

(Seal)

Signature

Brenda A. Gonzalez

BRENDA A. GONZALEZ
Notary Public - California
San Diego County
Commission # 2116627
My Comm. Expires Jun 21, 2019

FILED

E-Filed

2017 APR 03 PM 03:38

CHARLEEN GROOMES

OKANOGAN COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF OKANOGAN

| | |
|---|---|
| JAN M. RENFROE,<br><br>          Plaintiff,<br><br>v.<br><br>QUALITY LOAN SERVICE CORP. OF WASHINGTON; BANK OF AMERICA, N.A., successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP; CITIBANK, N.A. as trustee of NRZ PASS-THROUGH TRUST VI; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,<br><br>          Defendants.<br><br>THE BANK OF NEW YORK MELLON as trustee on behalf of the CERTIFICATEHOLDERS OF THE CWHEQ, INC., CWHEQ Revolving Home Equity Loan Trust, Series 2006-C,<br><br>          Nominal Defendants. | No.   17-2-00156-4<br><br>**PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE AND OBTAIN RESTRAINING ORDER; WITH MEMORANDUM OF LAW** |

## MOTION

Plaintiff Jan Renfroe, requests that this Court Restrain the Sheriff's Sale scheduled for April 28, 2017.  The reasons set forth in the subjoined Memorandum of Law include:

- The sale is set more than six years after the lender accelerated the debt and is now time barred;

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 1

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

- Insufficient notice given in the Notice of Sale;

- Inadequate description of default given in Notice of Default;

- The originally named beneficiary did not have beneficial interests to assign to successor beneficiaries;

- The originally named beneficiary did not have beneficial interests giving it authority to appoint a successor trustee; and

- A request for HAMP modification was improperly denied.

Plaintiff has filed an action for declaratory and injunctive relief, violations of the Consumer Protection Act, and other relief which is incorporated herein by reference.  Plaintiff is and was at all times material hereto the legal owner of residential real property located at 193 Golden Road, Oroville, Washington (hereafter the "Home").

This motion is based upon the record and pleadings herein; RCW §61.24 *et. seq.* (the Deed of Trust Act); CR 65; the subjoined Memorandum of Law; the accompanying declaration of Jan Renfroe; the accompanying Note for Motion; and such oral argument that may be heard.

**MEMORANDUM OF LAW**

I.    **FACTS**

Jan Renfroe with her former spouse purchased the subject real property located at 193 Golden Road, Oroville, Okanogan County, Washington (Home).[1]  The Home is a 104 year old three bedroom home situated on a one acre parcel.  Plaintiff completely paid off the original purchase loan four and one-half years before November 15, 2005, when Jan and Rand

---

1 Rand and Jan Renfroe dissolved their marital relationship in January 2012, leaving the Property to Jan.

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 2

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

Renfroe signed a promissory note to borrow $154,350 to re-finance the Home (Note). [Renfroe Decl. **Exh. A**]   They borrowed from Eagle Home Mortgage, Inc. (Eagle).  The Note was to be secured by a deed of trust of the same date.

The deed of trust was recorded against the Property on November 22, 2005 in Okanogan County, Washington under Auditor's File No. 3096812, in the amount of $154,350. [Renfroe Decl. **Exh. B**]   The deed of trust names Eagle as the lender, Transnation Title Insurance Company as the trustee, and Mortgage Electronic Registration Services, Inc. (MERS) as the beneficiary.  On or about May 10, 2011, MERS assigned any interest it had as beneficiary under the Deed of Trust to BAC Home Loan Servicing (BAC). [Renfroe Decl. **Exh. D**]

Ms. Renfroe worked as a bookkeeper before the Recession.  As a result of the problems in the mortgage market beginning in 2008, she lost her job and began to experience very serious financial problems. She struggled to pay her personal expenses. At that time she was making her payments to BAC pursuant to BAC monthly statements. [Renfroe Decl. ¶6]

Meanwhile, plaintiff tried to speak with representatives at Bank of America and/or BAC about how to obtain a loan modification to save her home.  Once she realized that BAC would not provide her with any meaningful assistance with modifying her loan, it was necessary for her to retain a law firm named American Law Firm.  Starting in May 2009, that firm worked to obtain a loan modification for Ms. Renfroe. [Renfroe Decl. ¶8] At that time, BAC Loan Servicing requested documents.  On May 20, 2009 American Law Firm received the documents and forwarded them to BAC.

Even though Ms. Renfroe complied with requests for documentation, on June 16, 2009, BOA declared the loan in default and accelerated the debt unless she paid all past due

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 3

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

amounts by July 16, 2009 to BAC. Sadly, Ms. Renfroe was unable to come up with that sum. She remained hopeful, because the notice said she might still be able to cure the default after acceleration. She continued to work with her attorneys and BAC's requests.

On July 8, 2009, the law firm confirmed that BAC Loan Servicing would be requesting more documents. Plaintiff sent documentation in support of the Making Home Affordable Program ("HAMP"), including the following:

- Copies of 2 most recent consecutive months personal Bank Statements
- Dodd Frank Certification
- 2 months utility bills

She also faxed to same person the following items:

- Hardship Letter
- Forms they asked her to fill out and send back
- 2009 1040 Income Tax Return

[Renfroe Decl. ¶9]

On September 1, 2009, pursuant to a request made by a representative of BAC, plaintiff sent in additional documentation to BAC again by fax the following:

- Bank statements
- Paystubs

[Ibid]

In 2009, she applied for a modification and was given some form of a trial payment plan and told to complete the plan and we would get a modification. She completed the plan and was promptly denied within 5-10 days. On November 1, 2009, Ms. Renfroe received notification from BAC Loan Servicing stating that she was not eligible for the modification, but that there may be other options available for her. [Renfroe Decl. ¶11]

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 4

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

In late 2009, BAC agreed to hold off on foreclosure so long as Ms. Renfroe made monthly payments in the amount of $509. In accordance with BAC's offer, plaintiff religiously made the payments from January 5th to June 1st, 2010. She kept making payment in the face of her financial hardship and BAC's lack of communication. On July 10, 2010, Ms. Renfroe again contacted Bank of America to discuss different modifications programs. She was advised "Investor declined Modification, all options exhausted." [Renfroe Decl. ¶¶12 & 13] On February 01, 2010 she received notice that BOA "regrets to inform you that there are no available workout options based on the financial information that was provided." [Ibid]

Ms. Renfroe refused to give up and on January 24, 2011, plaintiff retained Secure Law Center, P.C. to apply a third time. She delivered all the documents that BOA requested to her attorney who then forwarded them to BOA. She was given a trial payment plan, which she completed on time. [Renfroe Decl. ¶¶14 & 15]

At the end of the plan she was offered a modification with a ½ percent reduction in interest rate and thousands of dollars of fees, etc. added to the loan. This created a loan balance greater than when she started with and a payment barely less than the previous payment; but she accepted anyway, signed the documents and sent the money as required via FedEx. She was again promptly denied a modification that was offered even though the bank kept her money. [Renfroe Decl. ¶16]

On August 20, 2011, BOA offered plaintiff a Loan Modification. Plaintiff agreed to the offer, signed the documents and submitted them with payment to BOA. On September 22, 2011, plaintiff received a letter from BOA notifying her that her Loan Modification was being

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 5

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

rejected for "Note Modification Return Date Expired."[2]    Today, Ms. Renfroe, with an accounting background, is still unable to determine whether her payments under any modification plan was ever applied to the balance of the loan. [Renfroe Decl. ¶19]

Worth noting is that the letter is dated August 20, 2011 expected plaintiff to get everything done, signed and back to them on or before August 30, 2011 – just 10 days.    She had no prior notice that the bank was going to offer her a Modification.  It was a surprise to her.[3]

BAC later merged with BOA.[4]    In or about May 2014, BOA sent a Notice of Default to plaintiff and claimed Federal National Mortgage Association (Fannie Mae) to be the Note owner and Bank of America to be the servicer.  [Renfroe Decl. **Exh. E**, p. 5]  It said that if plaintiff did not cure the alleged default, then a Notice of Sale would give further notice of 150 days before her home would be sold at public auction.  [Ibid, p. 3]  On or about August 17, 2015, BOA appointed Quality Loan Service Corporation of Washington (QLS) as successor trustee under the Deed of Trust.  [Renfroe Decl. as **Exh. G**]  At some time after December 21, 2016, QLS sent a Notice of Sale[5] stating that NRZ Pass-Through Trust VI (NRZ Trust) would auction Renfroe's Home and sell it on April 28, 2017 – 127 days from the date the Notice of Sale was signed.  [Renfroe Decl. **Exh. I**, p. 6]

---

2 A note at the bottom of page two states, "NOTE: Failure to return all documents correctly signed, dated and notarized and the first payment as requested will result in processing delays."  It does not say errors would result in rejection.
3 She was further surprised to learn that BOA was a debt collector.  On the second page of her loan modification cover letter, it states, " Bank of America, N.A. is required by law to inform you that this communication is from a debt collector."

4 See FDIC merger decisions for 2011 at page 3. https://www.fdic.gov/bank/individual/merger/2011/2011.pdf
5 The deed of trust recorded November 22, 2005 identifies MERS is the beneficiary under this Security Instrument."

---

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 6

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

## II.   THIS COURT MAY RESTRAIN A SALE BY TRUSTEE

The Deed of Trust Act standards to enjoin a foreclosure sale are less rigorous than those found in a typical restraining order or injunction. RCW §61.24.130. In this foreclosure case, the Court may restrain the trustee sale "on any proper legal or equitable ground." Id. The grounds for relief follow below.

Even if this Court were to consider whether to apply the analysis required under RCW §7.40.020, plaintiff can meet the burden for obtaining relief in that fashion. That statute states, in part, as follows:

> When it appears by the complaint that the plaintiff is entitled to the relief demanded and the relief... consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce great injury to the plaintiff. .. an injunction may be granted to restrain such act or proceedings until the further order of the court, which may afterwards be dissolved or modified upon motion.

RCW §7.40.020.

"[T]he object and purpose [of a preliminary injunction] is to preserve and keep the status quo until otherwise ordered and to restrain an act which, if done, would be contrary to equity and good conscience." Blanchard v. Golden Age Brewing Co., 188 Wn. 396,415 (1936). Further clarification came in Isthmian Steamship Co. v. National Marine Engineers' Beneficial Assoc., 41 Wn.2d 106, 117 (1952), holding that the moving party must show a "clear legal or equitable right and a well-grounded fear of immediate invasion of that right." Thus, to obtain an injunction in matters other than to restrain a foreclosure, a plaintiff typically must show that: (1) they have a clear legal or equitable right; (2) that they have a well- grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 7

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

will result in actual and substantial injury to them.  Kucera v. State Dept. of Transportation, 140 Wn.2d 200, 209, 995 P.2d 63 (2000).  Such criteria is evaluated by balancing the relative interests of the parties, and if appropriate, the interests of the public.  Id.  Ultimately, the decision to grant a temporary restraining order and/or a preliminary injunction is within the sound discretion of the trial court, with such discretion to be exercised according to the circumstances of each particular case.  Washington Fed'n of State Employees v. State, 99 Wn.2d 878, 887 (1983).

A.   Plaintiff has a Well-Grounded Fear of Immediate Invasion of Losing Her Home, a Substantial Injury

It is important to stop the foreclosure sale so that plaintiff can preserve all of her claims.  While the Deed of Trust Act as amended in 2009 now allows for certain claims to be brought even after a foreclosure sale, those claims may only be for money damages arising under fraud or misrepresentation, RCW 19, and for improprieties in the foreclosure sale process.  RCW §61.24.127.  One example of an impropriety concerns plaintiff's payments made towards a HAMP modification.  After Ms. Renfroe successfully made the three preliminary payments under the modification, the servicer said her HAMP application was denied. [Renfroe Decl. ¶¶15&16]  There was no explanation, no return of payments, and no apology.  If the foreclosure occurs, Ms. Renfroe will lose her home and the equity in it.  If the foreclosure is stayed, Ms. Renfroe may be able to negotiate a way to keep her home, such as applying the former HAMP terms.

B.   Plaintiff is Likely To Prevail on The Merits and Thus  Has Established a Clear Legal Right to Such  Relief.

To determine whether a party has a clear legal or equitable right, the Court must

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 8

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

analyze the moving party's likelihood of prevailing on the merits. <u>Washington Fed'n of State Employees</u>, 99 Wn.2d at 888 (*citing* <u>Tyler Pipe Indus. v. Department of Revenue</u>, 96 Wn.2d 785, 793 (1982)).   For the deficiencies discussed below, plaintiff is likely to prevail on her claims in this action.   Such deficiencies include the beneficiary's failure to timely seek foreclosure, defects in the statutorily required notices,  and an unlawful party pursuing foreclosure.[6]  With any of these deficiencies proven, plaintiff establishes a clear legal right to relief.

Ms. Renfroe is entitled to receive an order temporarily restraining the completion of the foreclosure sale commenced by the purported foreclosing trustee because the trustee lacks authority to conduct the sale.

## III.    STATUTE OF LIMITATIONS PRECLUDES THE SALE

"The record owner of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations, and, upon proof sufficient to satisfy the court, may have judgment quieting title against such a lien." RCW 7.28.300 (Quieting title against outlawed mortgage or deed of trust.)

In <u>Wash. Fed. v. Azure Chelan LLC</u>, 195 Wn.App. 644 (2016), the lender failed to sue on the Note within six years, even though it made demands.   The Note at bar is an installment note. For installment notes, the statute of limitations runs against each installment from the time it becomes due. <u>Herzog v. Herzog</u>, 23 Wn.2d 382, 387-88, 161 P.2d 142 (1945).   Yet, if the debt is accelerated, the limitation period begins to run from the date of acceleration.

6 Fannie Mae has always been identified as the Note owner. See Renfroe declaration with Notice of Default and Notice of Sale.

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 9

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

The Azure court pointed out that Azure's notice of default given in 2007 stated the consequence of default was that "principal amount of $5,500,000, plus all accrued interest and all other amounts that may be owing thereunder are immediately due and payable." This language indicated the balance of the loan had been accelerated in 2007 and enforcement was barred under RCW 7.28.300 in 2014, more than six years from the date of the acceleration. We compare this language to accelerate with the language found in a Notice of Intent to Accelerate (NOIA) sent to Ms. Renfroe from Bank of America, dated June 16, 2009. [Renfroe Decl., **Exh. C**]

The notices say "If the default is not cured on or before July 16, 2009, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, . . ." (emphasis in the original) Ms. Renfroe did not pay at that time and this language indicates the balance of the loan had been accelerated in 2009. Therefore, enforcement was barred under RCW 7.28.300 on June 17 2015, more than six years from the date of the acceleration.

## IV. MERS AS UNLAWFUL BENEFICIARY CANNOT ASSIGN INTERESTS OR APPOINT TRUSTEE

MERS is the beneficiary named in the Deed of Trust. [Renfroe Decl. **Exh. B ¶E**] MERS is an unlawful beneficiary if it did not hold the Note. Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 89, 285 P.3d 34 (2012). We know that MERS does not hold the Note, because "MERS does not hold the promissory notes given to and generally resold by its members." Merry v. Nw. Tr. Servs., Inc., 188 Wn. App. 174, 188, 352 P.3d 830, 836 (Div 3, 2015). We also know MERS does not hold the Note even as an agent for Eagle, because Eagle endorsed the Note over to

---

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 10

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

Countrywide Bank, N.A. [Renfroe Decl., **Exh. A**, p. 3]  The Note states, "Pay to the Order of

Countrywide Bank, N.A. without recourse."  This type of endorsement has now converted the

Note from being a bearer (in blank) Note to a "special endorsement."  UCC §3-109(b)  With a

bearer note, anyone holding the note can simply endorse the Note to make it negotiable.  In

this case, however, to negotiate (transfer) the note, Countrywide must sign the note and so

must the transferee.  There is no record that Countrywide ever negotiated the Note back to

Eagle.  This is important, because it is Eagle who is identified in the Notice of Trustee Sale as

being the principal for MERS – not Countrywide Bank.

As for the Deed of Trust, Washington courts now recognize that "MERS is an ineligible

beneficiary under the law."  Bavand v. OneWest Bank, FSB, 196 Wn. App. 813, 841, 385 P.3d

233 (2016).  Without being a lawful beneficiary, it was unable to appoint a trustee or assign

any beneficial interest which it did not have to another.  Merry, 188 Wn. App. at 188.  Yet,

MERS attempted to assign its ostensible interests to BAC in 2011.  [Renfroe Decl. **Exh. D**]  To

do so is presumptively deceptive Bavand, 196 Wn. App. at 841.

In the past, MERS argued that it was merely acting as nominee for some entity that

claimed to hold the note.  MERS cannot hide behind its principal to avoid fault any longer,

however.  "Agency is immaterial for this purpose [of recording assignment].  MERS executed

the document that is presumptively deceptive.  The fact that it may have done so as [lender's]

agent does not relieve MERS of responsibility of making the representation and recording the

document."  Id.

Since MERS deceptively transferred nothing by way of its assignment in 2011, the

assignment to BAC was invalid and BAC took no interests under the Deed of Trust.  Without

---

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 11

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

any interests, BAC did not bring beneficial interests with it when it merged with BOA.  Thus, BOA did not acquire those interests and its actions assigning non-existent interests to a new beneficiary in 2016 was likewise invalid and presumptively deceptive.  This time the new beneficiary is identified as NRZ Trust, a securitized trust, with Citibank, we are told, serving as its trustee.[7]

Similarly, BOA's action to appoint QLS as successor trustee was not lawful.  Id.;  The Merry court said:

> The Bain decision has presented problems for foreclosure of deeds of trust . . .,
> in which lenders designated MERS as a nominee or mortgagee of record.
> Because MERS does not hold the underlying promissory notes, banks that are
> assigned a "beneficial interest" in a deed of trust by MERS do not thereby
> acquire a beneficial interest within the meaning of the DTA, nor are they able,
> legally, to appoint a successor trustee.

Id.  Additionally, The 2005 Deed of Trust at Paragraph 25 says that only the lender may appoint a successor trustee.  BOA was not the lender.  Eagle endorsed the Note to Countrywide Bank, N.A.  Accordingly, the purported new trustee, QLS does not have power to sell the Renfroe home.  Nonetheless, QLS, recorded a Notice of Sale on or about December 23, 2016.  [Renfroe Decl. **Exh. I**]  Without power of sale, QLS recorded and served an invalid Notice of Sale.

Defendant QLS has a duty to adhere to the statute and it breached that duty to Ms. Renfroe by seeking a foreclosure sale on behalf of NRZ Trust.  The trustee is required to establish NRZ was an entity that held beneficiary interests.  As described above, NRZ could not have those interests.

Washington courts have held that when a trustee has breached its fiduciary duty to

---

7 "Oh! What a tangled web we weave, when first we practice to deceive" Sir Walter Scott (*Marmion*, 1808).

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 12

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

the grantor, the subsequent trustee's sale is void. <u>Cox v. Helenius</u>, 103 Wn.2d 383, 388-89

(1985). The same result may be achieved if the entity initiating the foreclosure provided the

foreclosing trustee with false and misleading information to support its request to conduct a

foreclosure sale and the same is evident to the trustee, as it should be to Defendant QLS. The

Deed of Trust Act requirement to act "in good faith" is still consistent with the standard

articulated in <u>Cox</u> and its progeny.

## V.     INSUFFICIENT OR INCORRECT INFORMATION GIVEN IN NOTICES

Putting aside the statutory notices are invalid because beneficial interests were never

transferred, other deficiencies are found in the notices.

### A.     Notice of Default Defects

Defendant BOA sent a Notice of Default in or about May 2014. [Renfroe Decl. **Exh. E**]

At page 4 the notice identifies the Note owner to be Federal National Mortgage Association

(Fannie Mae). At this time, BAC was said to be the beneficiary under the Deed of Trust. [See

Assignment at **Exh. D** of Renfroe Decl.] However, the Deed of Trust and Note are to be

inseparable. "[A] beneficiary must either actually possess the promissory note or be the

payee." <u>Bain</u>, 175 Wn.2d at 104. The Trustee must explain how it is that Fannie Mae is

holding the Note in Washington D.C. while BAC has the beneficial interests under the Deed of

Trust in Herndon, Virginia. It seems then that the trustee should be aware of this deficiency

evident on the face of the notice it drafted.

The Notice of Default states "To reinstate or payoff you must contact the trustee" Yet,

no trustee is identified in the notice. [Renfroe Decl **Exh. E**] While a law firm is identified, the

firm does not state what party, if any, it represents.

---

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 13

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

The statute requires the Notice of Default to provide information about defaults other than monthly payments that come due. Instead of informing the borrower on whether other defaults occurred, the notice merely states that if any taxes or assessments are due, then they must be paid. [Renfroe Decl **Exh. E**] Plaintiff submits that the statute intended that such information must be itemized.

A trustee may not schedule a sale before confirming that the beneficiary of the obligation holds the note and thus has authority to enforce the obligation. McAfee v. Select Portfolio Servicing, Inc., 193 Wn. App. 220, 228, 370 P.3d 25, 30 (Div. 1, 2016). While the legislature states the Notice of Default must identify the Note owner, the Wasghington Supreme Court further requires identification of the Note holder. RCW §6.24.030(8)(i); Bain v. Metro. Mortg. Grp., 175 Wn.2d 83, 107, 285 P.3d 34 (2012).. "Because defendant failed to identify the entities that controlled its actions, defendant did not establish that it was an agent for a lawful principal that was a holder of a note; therefore, its agency theory failed under this section." Id. There are no notices that signify NRZ Trust holds the note. Instead, the Notice of Default merely identifies Fannie Mae as the Note owner. NRZ Trust should not be allowed to sell the Home even if has been handed the Note. To do so would allow it to circumvent its duties to disclose of the Note holder in the Notice of Default.[8]

We must presume that the purpose for identifying the Note holder would be to allow the borrower to contact the holder. Ms. Renfroe made extensive attempts to contact BOA to determine who held the Note and obtain the holder's contact information. BOA

---

8 The note holder enforces the Note, not the owner. See Article, The "Person Entitled to Enforce": Lessons Learned from BAC Home Loans Servicing v. Kolenich, Whitman. http://www.americanbar.org/content/dam/aba/publishing/rpte_ereport/2012/6_december/rp_whitman.authcheckda m.pdf

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 14

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

representatives denied her requests and said, "we cannot give out that information." She

remained unsuccessful in her attempts even with help of legal counsel. [Renfroe Decl. ¶¶8 &

14] In December 2016 she received the Notice of Sale, but even that notice does not disclose

the holder. Instead it states that a never before identified trust will sell her Home. An

unknown securitized trust should not be allowed to surface as the Note owner in the last

stages of foreclosure proceedings in an effort to defeat the purpose of RCW §61.24.030(8)(i)

and Washington case law.

These deficiencies indicate that Ms. Renfroe did not receive a valid Notice of Default

before receiving the Notice of Trustee Sale.

B.    Notice of Sale Defects

The Notice of Sale gives insufficient notice of the sale. The Notice of Default said that

the Notice of Sale would provide Ms. Renfroe with 150 days of notice time, but instead it only

gave her 127 days. [Renfroe Decl **Exhs. E ¶5.a. & I**] The Deed of Trust Act requires 150 days

notice.

> A statement that failure to cure the alleged default within thirty days of
> the date of mailing of the notice, or if personally served, within thirty days
> of the date of personal service thereof, may lead to recordation,
> transmittal, and publication of a notice of sale, and that the property
> described in (a) of this subsection may be sold at public auction at a date
> no less than one hundred twenty days in the future, or no less than **one**
> **hundred fifty** days in the future if the borrower received a letter
> under RCW 61.24.031;

RCW 61.24.030(8)(g) (emphasis added). This alone is sufficient reason to restrain the sale

given the need for strict compliance with the Deed of Trust Act.

**VI.    THE DEED OF TRUST ACT IS STRICTLY CONSTRUED IN FAVOR OF BORROWER**

---

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 15

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

Because a nonjudicial foreclosure under the Deed of Trust Act (DTA) "dispenses with many protections commonly enjoyed by borrowers under judicial foreclosures, lenders must strictly comply with the statutes and courts must strictly construe the statutes in the borrower's favor. Udall v. T.D. Escrow Servs., Inc., 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007); Koegel v. Prudential Mut. Sav. Bank, 51 Wn. App. 108, 111-12, 752 P.2d 385 (1988). The procedural requirements for conducting a trustee sale are extensively spelled out in RCW 61.24.030 and RCW 61.24.040. Procedural irregularities, such as those divesting a trustee of its statutory authority to sell the property, can invalidate the sale. Udall, 159 Wn.2d at 911.

## VII.    THE DEFENDANTS HAVE HARMED MS. RENFROE

To have denied plaintiff's HAMP application would mean that the outstanding balance would eventually grow to an amount to be out of plaintiff's reach to repay. Today's increased rates also prevent plaintiff from gaining a loan that would have allowed her to increase her equity with each payment.    She has also paid substantial sums in an effort to obtain a modification [Renfroe Decl. ¶26]  It is unclear whether plaintiff's past payment to forbear or modify were ever applied to the loan balance.  Defendant has never answered plaintiff's inquiries to account for those payments.

## VIII.    NO BOND OR PAYMENTS ARE WARRANTED

Plaintiff requests this Court to enter a Temporary Restraining Order staying the sheriff's sale set for April 28, 2017. She also requests that this Court set a hearing for a preliminary injunction, pending the final disposition of this case.

The Deed of Trust Act does not require her to post a bond. If the Legislature had intended courts to look at other statutes in connection with enjoining a foreclosure sale, it

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 16

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

would have said so.  Instead, the legislature gave court's broad discretion to enjoin a sale on any equitable ground. For equity sake, plaintiff should not be required to make monthly payments to the Court Registry in the amount of the regular mortgage payment owing each month.  Equity demands defendants to not gain from their unlawful conduct.  Defendants should have known that:

- they were pursuing a stale claim;

- their notices offered a conflicting timeline;

- the Notice of Default did not disclose the trustee's identity;

- the Notice of Default did not disclose the Note holder's identity;

- they ignored plaintiff's pleas even though she successfully followed through with HAMP requirements;

- they declined to inform her whether her payments were applied to the loan;

- they failed to take modest steps to ascertain whether NRZ Trust is indeed the Note holder;

- They failed to honor the Note's special endorsement requirement; and

- they failed to trace the beneficial interest, if any, under the Deed of Trust.

Such conduct warrants sale restraint without bond and without further monthly payments.

Plaintiff has made a claim in the Complaint for Declaratory Relief.  In its discretion and upon such conditions and with or without such bond or other security as it deems necessary and proper, may stay any ruling, order, or any other court proceedings and may restrain all parties involved in order to secure the benefits and preserve and protect the rights of all

parties to the court proceedings. RCW §7.24.190.

CONCLUSION

A temporary restraining order is needed to prevent the wrongful transfer of possession and title of plaintiff's Home to Defendant NRZ Trust. Defendants' violations of the Deed of Trust Act will affect Plaintiff's rights and legal status as it pertains to her Home. For these reasons, the Court should grant the request for a temporary restraining order and set the matter for hearing on the motion for preliminary injunction.

Plaintiff requests this Court to enjoin defendants from any further efforts to acquire plaintiffs' Home, and that this Court further enjoin all proceedings incident to the deficient notices, wrongful assignments and unlawful appointment of successor trustee.

DATED March April 3 , 2017.    By: _____

Robert K. Hunter, Jr., WSBA #28909
THE HUNTER LAW FIRM, PLLC
Attorney for Plaintiff

---

PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE &
OBTAIN RESTRAINING ORDER; WITH MEMO OF LAW
Page 18

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

E-Filed

FILED

2017 APR 03 PM 03:36

CHARLEEN GROOMES

OKANOGAN COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF OKANOGAN

JAN M. RENFROE,

               Plaintiff,

v.

QUALITY LOAN SERVICE CORP. OF
WASHINGTON; BANK OF AMERICA, N.A.,
successor by merger to BAC Home Loans
Servicing, LP, f/k/a Countrywide Home Loans
Servicing, LP; CITIBANK, N.A. as trustee of NRZ
PASS-THROUGH TRUST VI; and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,

               Defendants.

THE BANK OF NEW YORK MELLON as trustee on
behalf of the CERTIFICATEHOLDERS OF THE
CWHEQ, INC., CWHEQ Revolving Home Equity
Loan Trust, Series 2006-C,

               Nominal Defendants.

No. 17-2-00156-4

**CLERK'S ACTION REQUIRED: Set this
motion for hearing**

**NOTE FOR LAW AND MOTION
CALENDAR**

**TO:**    QUALITY LOAN SERVICE CORP. OF WASHINGTON; BANK OF AMERICA, N.A., successor
          by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing,
          LP; CITIBANK, N.A. as trustee of NRZ PASS-THROUGH TRUST VI; and MORTGAGE
          ELECTRONIC REGISTRATION SYSTEMS, INC.; THE BANK OF NEW YORK MELLON as
          trustee on behalf of the CERTIFICATEHOLDERS OF THE CWHEQ, INC., CWHEQ Revolving
          Home Equity Loan Trust, Series 2006-C

NOTE FOR LAW AND MOTION CALENDAR
Page 1

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

Please note that this matter has been specially set before the Honorable Henry Rawson, as a second setting on **April 13th, 2017** or, alternatively, on the **April 20th 2017 at 10:45 a.m.** or as soon thereafter as counsel may be heard.

PLACE: Civil department of the above-named court, located at <u>149 3rd Ave. N, Okanogan, Washington</u>.

NATURE OF HEARING:  Plaintiff will move the Court to Restrain Sheriff's Sale and Obtain Restraining Order.

DATED this 3rd day of April, 2017.    By:    _____

Robert K. Hunter, Jr., WSBA #28909
THE HUNTER LAW FIRM, PLLC.
Attorneys for Plaintiff

NOTE FOR LAW AND MOTION CALENDAR
Page 2



Record Certification: I certify that the electronic copy is a true and correct copy of the original on file and/or state file in this office, and was taken under the Clerk's direction and control.
Okanogan County Clerk,
by CO\kdescoteaux Deputy - # pages 2 - 4/10/2017 4:44:30 PM



FILED

2017 APR 10 AM 11: 27

CHARLEEN GROOMES
OKANOGAN COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF OKANOGAN

| | |
|---|---|
| JAN M. RENFROE,<br><br>             Plaintiff,<br><br>v.<br><br>QUALITY LOAN SERVICE CORP. OF WASHINGTON; BANK OF AMERICA, N.A., successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP; CITIBANK, N.A. as trustee of NRZ PASS-THROUGH TRUST VI; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,<br><br>             Defendants.<br><br>THE BANK OF NEW YORK MELLON as trustee on behalf of the CERTIFICATEHOLDERS OF THE CWHEQ, INC., CWHEQ Revolving Home Equity Loan Trust, Series 2006-C,<br><br>             Nominal Defendants. | No. 17-2-00156-4<br><br>**CLERK'S ACTION REQUIRED: Set this motion for hearing**<br><br>**Amended NOTE FOR LAW AND MOTION CALENDAR** |

**TO:**     QUALITY LOAN SERVICE CORP. OF WASHINGTON; BANK OF AMERICA, N.A., successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP; CITIBANK, N.A. as trustee of NRZ PASS-THROUGH TRUST VI; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; THE BANK OF NEW YORK MELLON as trustee on behalf of the CERTIFICATEHOLDERS OF THE CWHEQ, INC., CWHEQ Revolving Home Equity Loan Trust, Series 2006-C

Amended **NOTE FOR LAW AND MOTION**
**CALENDAR**
Page 1

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

Please note that this matter has been specially set before the Honorable Henry Rawson on **April 20, 2017 at 10:45 a.m.** or as soon thereafter as counsel may be heard.

PLACE: Civil department of the above-named court, located at 149 3rd Ave. N, Okanogan, Washington.

NATURE OF HEARING:   Plaintiff will move the Court to Restrain Sheriff's Sale and Obtain Restraining Order.

DATED this 5 day of April, 2017.  By:  _____

Robert K. Hunter, Jr. WSBA #28909
THE HUNTER LAW FIRM, PLLC
Attorneys for Plaintiff

Amended **NOTE FOR LAW AND MOTION CALENDAR**
Page 2

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

Record Certification: I certify that the electronic copy is a [illegible] of the [illegible] dated [illegible] and was taken under the Clerk's direction and control. Okanogan County Clerk, by CO\kdescoteaux Deputy - # pages 1 - 4/19/2017 9:43:01 AM

FILED

2017 APR 17 PM 1:30

CHARLEEN GROOMES
OKANOGAN COUNTY CLERK

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF OKANOGAN

| | |
|---|---|
| JAN M. RENFROE, | Case No.: 17-2-00156-4 |
| Plaintiff, | |
| v. | |
| | CERTIFICATE OF SERVICE |
| QUALITY LOAN SERVICE CORP. OF WASHINGTON, et. al., | |
| Defendants. | |

I certify that on April 13, 2017, I caused a copy of NOTICE OF APPEARANCE to be served by first class mail on the following specified below:

Robert K. Hunter, Jr.
The Hunter Law Firm, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802

I declare under penalty of perjury under the laws of the United States of America and the State of Washington that the foregoing Certificate of Service is true and correct and that this Declaration was executed in Seattle, Washington.

Dated: April 13, 2017

Walter Babst

Walter Babst
Legal Assistant

Certificate of Service
Page -1-
MH # WA-17-768519-CV

McCarthy & Holthus LLP
108 1st Ave S., Suite 300
Seattle, WA 98104
PH: (206) 319-9100
FAX: (206) 780-6862

FILED
2017 MAY 25 AM 08:16
CHARLEEN GROOMES
OKANOGAN COUNTY CLERK
E-Filed

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE COUNTY OF OKANAGON

Jan M. Renfore

    VS.      Plaintiff(s),

Quality Loan Service Corp. of Washington, et al.

        Defendant(s),

Case No.:17-2-00156-4

DECLARATION OF SERVICE



STATE OF WASHINGTON
COUNTY OF KING ss.

    The undersigned, being first duly sworn on oath deposes and says: That he/she is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen years, not a party to or interested in the above entitled action and competent to be a witness therein.

    That on 4/3/2017 at 4:40 PM at the address of 108 1st Avenue South, #202, Seattle, within King County, WA, the undersigned duly served the following document(s): Summons; Complaint for Declaratory Relief, Injuction, violation of the Consumer Protection Act and Quiet Title; Note for Law and Motion Calendar; Plaintiff's Motion to Restrain Sheriff's Sale and Obtain Restraining Order; with Memorandum of Law;Declaration of Jan M. Renfroe in Support of Motion to Restrain Sheriff's Sale and Obtain Restraining Order in the above entitled action upon Quality Loan Service Corp. of Washington, by then and there personally delivering 1 true and correct set(s) of the above documents into the hands of and leaving same with Robert McDonald, Governor for Quality Loan Service Corporation of Washington, who is authorized to accept service on behalf of the above.

Physical description of person served: Gender: Male | Race: White | Age: 32 | Height: 5' 11" | Weight: Medium Build | Hair: Brown

I declare under penalty of perjury under the laws of the state of WASHINGTON that the foregoing is true and correct.

DATE: 4/6/2017
TOTAL: $ 105.46



I. Olson
Registered Process Server
License#: 1619819 - Expiration Date: 9/7/2017
Seattle Legal Messengers
4201 Aurora Avenue N, #200
Seattle, WA 98103
(206) 443-0885

DECLARATION OF SERVICE        233015  PAGE 1



I certify/declare under penalty of perjury that this is a
correct copy of the original, on the date filed in this office,
and was taken under the Clerk's direction and control.
Okanogan County Clerk,
by CO'kdescoteaux Deputy - # pages 2 - 4/20/2017 1:09:07 PM

FILED

2017 APR 20 AM 11: 33

CHARLEEN GROOMES
OKANOGAN COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF OKANOGAN

JAN M. RENFROE,

    Plaintiff,

v.

QUALITY LOAN SERVICE CORP. OF
WASHINGTON; BANK OF AMERICA, N.A.,
successor by merger to BAC Home Loans
Servicing, LP, f/k/a Countrywide Home Loans
Servicing, LP; CITIBANK, N.A. as trustee of NRZ
PASS-THROUGH TRUST VI; and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,

    Defendants.

THE BANK OF NEW YORK MELLON as trustee on
behalf of the CERTIFICATEHOLDERS OF THE
CWHEQ, INC., CWHEQ Revolving Home Equity
Loan Trust, Series 2006-C,

    Nominal Defendants.

No. 17-2-00156-4

**CLERK'S ACTION REQUIRED: Set this
motion for hearing**

**Second Amended NOTE FOR LAW AND
MOTION CALENDAR**

TO:    QUALITY LOAN SERVICE CORP. OF WASHINGTON; BANK OF AMERICA, N.A., successor
by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing,
LP; CITIBANK, N.A. as trustee of NRZ PASS-THROUGH TRUST VI; and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.; THE BANK OF NEW YORK MELLON as
trustee on behalf of the CERTIFICATEHOLDERS OF THE CWHEQ, INC., CWHEQ Revolving
Home Equity Loan Trust, Series 2006-C

**Second Amended NOTE FOR LAW AND MOTION
CALENDAR**
Page 1

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

Please note that this matter has been specially set before the Honorable Christopher E. Culp on **May 25, 2017 at 10:45 a.m.** or as soon thereafter as counsel may be heard.

PLACE: Civil department of the above-named court, located at <u>149 3rd Ave. N, Okanogan, Washington</u>.

NATURE OF HEARING:  Plaintiff will move the Court to Restrain Sheriff's Sale and Obtain Restraining Order.

DATED this _18_ day of April, 2017.  By:

Robert K. Hunter, Jr. WSBA #28909
THE HUNTER LAW FIRM, PLLC
Attorneys for Plaintiff

**Second Amended NOTE FOR LAW AND MOTION CALENDAR**
Page 2

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

Record certification - I certify that the electronic copy is a
correct copy of the original, on the date filed in this office,
and was taken under the Clerk's direction and control.
Okanogan County Clerk,
by CO'kdescoteaux Deputy - # pages 3 - 5/1/2017 11:37:38 AM

FILED

2017 APR 26  PM 1: 12

CHARLEEN GROOMES
OKANOGAN COUNTY CLERK

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR OKANOGAN COUNTY

JAN M. RENFROE,

           Plaintiff,

vs.

QUALITY LOAN SERVICE
CORPORATION OF
WASHINGTON, et. al.,

           Defendants.

Case No.: 17-2-00156-4

**STIPULATION OF
NONPARTICIPATION AS TO
QUALITY LOAN SERVICE
CORPORATION OF
WASHINGTON**

COMES NOW JAN M. RENFROE ("Plaintiff") and Defendant Quality Loan

Service Corporation of Washington, ("Quality") by and through their respective

counsels of record, entering into the following Stipulation:

1.     As of the date of this Stipulation, a Complaint has been filed by Plaintiff in the

above-entitled Court (the "Action"), naming Quality as a defendant.  Quality is the

purported successor trustee under a Deed of Trust recorded under OKANOGAN

County Recorder's No. 3202196 (the "Deed of Trust") encumbering real property

commonly known as 193 GOLDEN ROAD, OROVILLE, WA 98844-0000 (the

"Property").

2.     Plaintiff agrees that Quality has been named in the above-entitled action solely

in its capacity as Trustee under the Deed of Trust.  Plaintiff is not and shall not be

seeking any monetary damages against Quality at this time and therefore will revise

the complaint in this matter to name Quality as a "Nominal Defendant" instead of as

Stipulation of Nonparticipation
Page 1
MH # WA-15-673663-SW

QUALITY LOAN SERVICE CORP. OF WASHINGTON
108 1st Ave S. Suite 202
Seattle  WA 98104
PH: (206) 319-9054
FAX: (206) 257-3163

1   a Defendant and revise the causes of actions plead against the Trustee so as to not
2   make any claim for any violations of the Deed of Trust Act and the Washington
3   Consumer Protection Act. Plaintiff agrees that Quality shall not be required to
4   participate in the litigation proceedings in any manner, except as provided below.
5   Accordingly, Quality shall not be required to file any responses, attend any hearings,
6   mediations, trial, or settlement conferences, or respond in any other way to the
7   litigation except as set forth below. The amendments to the complaint will occur
8   within the next four months so as to allow plaintiff sufficient time to ascertain the
9   true names and identities of other parties to this action.
10  3.      Plaintiff and Quality acknowledge and agree that Quality shall be bound by
11  whatever order or judgment is issued in the Action by the Court regarding the
12  Property and Deed of Trust, provided that such order or judgment is for nonmonetary
13  relief only. Further, Quality shall respond to any reasonable discovery requests of
14  the parties.
15  4.      Quality agrees to take no position as to the Plaintiff's attempt to seek restraint
16  of the sale pursuant to RCW 61.24.130 so long as the basis for the injunction sought
17  is not based on the actions of the Trustee.
18  5.      Should Plaintiff desire to amend her complaint, Quality hereby stipulates that
19  Plaintiff may do so without leave of court, so long as the amended complaint does
20  not state any affirmative relief from Quality.
21  6.      Plaintiff agrees to serve Quality, through its undersigned counsel, with any
22  orders or judgments relative to the Action.
23  ///
24  ///
25  ///
26  ///
27
28

Stipulation of Nonparticipation
Page 2
MH # WA-15-673663-SW

QUALITY LOAN SERVICE CORP. OF WASHINGTON
108 1st Ave S. Suite 202
Seattle  WA  98104
PH: (206) 319-9054
FAX: (206) 257-3163

7.    It is also agreed, by and between Plaintiff and Quality that this Stipulation may be signed in counterparts and any signature signed in counterpart sent via electronic transmission shall be deemed an original signature.

**IT IS SO STIPULATED.**

Dated: *April 17, 2017*

By _____
Robert K. Hunter, WSBA #28909
Attorney for Jan M. Renfroe

Dated: *APRIL 17 2017*

By _____
Robert W. McDonald, WSBA #43842
Attorney for Quality Loan Service Corporation of Washington

**IT IS SO ORDERED.**

Dated: *4/26/17*

_____
Judge/Commissioner

Stipulation of Nonparticipation
Page 3
MH # WA-15-673663-SW

QUALITY LOAN SERVICE CORP. OF WASHINGTON
108 1st Ave S. Suite 202
Seattle WA 98104
PH: (206) 319-9054
FAX: (206) 257-3163



Record Certification: I certify that the electronic copy is a
correct copy of the original, on the date filed in this office,
and was taken under the Clerk's direction and control.
Okanogan County Clerk,
by CO'kdescoteaux Deputy - # pages 3 - 5/3/2017 4:46:53 PM

1

2

FILED

3

2017 MAY -2  PM 3: 54

4

CHARLEEN GROOMES
OKANOGAN COUNTY CLERK

5

6

7

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR OKANOGAN COUNTY

8

9   JAN M. RENFROE,                          Case No.: 17-2-00156-4

10                    Plaintiff,             **STIPULATION OF
                                             NONPARTICIPATION AS TO**
11   vs.                                     **QUALITY LOAN SERVICE
                                             CORPORATION OF**
12   QUALITY LOAN SERVICE                    **WASHINGTON**
     CORPORATION OF
     WASHINGTON, et. al.,

13

14                    Defendants.

15

16        COMES NOW JAN M. RENFROE ("Plaintiff") and Defendant Quality Loan

17   Service Corporation of Washington, ("Quality") by and through their respective

     counsels of record, entering into the following Stipulation:

18

19   1.    As of the date of this Stipulation, a Complaint has been filed by Plaintiff in the

     above-entitled Court (the "Action"), naming Quality as a defendant.  Quality is the

20

21   purported successor trustee under a Deed of Trust recorded under OKANOGAN

     County Recorder's No. 3202196 (the "Deed of Trust") encumbering real property

22

23   commonly known as 193 GOLDEN ROAD, OROVILLE, WA 98844-0000 (the

     "Property").

24

25   2.    Plaintiff agrees that Quality has been named in the above-entitled action solely

     in its capacity as Trustee under the Deed of Trust.  Plaintiff is not and shall not be

26

27   seeking any monetary damages against Quality at this time and therefore will revise

     the complaint in this matter to name Quality as a "Nominal Defendant" instead of as

28

QUALITY LOAN SERVICE CORP. OF WASHINGTON
108 1st Ave S. Suite 202
Seattle  WA 98104
PH: (206) 319-9054
FAX: (206) 257-3163

a Defendant and revise the causes of actions plead against the Trustee so as to not make any claim for any violations of the Deed of Trust Act and the Washington Consumer Protection Act. Plaintiff agrees that Quality shall not be required to participate in the litigation proceedings in any manner, except as provided below. Accordingly, Quality shall not be required to file any responses, attend any hearings, mediations, trial, or settlement conferences, or respond in any other way to the litigation except as set forth below. The amendments to the complaint will occur within the next four months so as to allow plaintiff sufficient time to ascertain the true names and identities of other parties to this action.

3.     Plaintiff and Quality acknowledge and agree that Quality shall be bound by whatever order or judgment is issued in the Action by the Court regarding the Property and Deed of Trust, provided that such order or judgment is for nonmonetary relief only. Further, Quality shall respond to any reasonable discovery requests of the parties.

4.     Quality agrees to take no position as to the Plaintiff's attempt to seek restraint of the sale pursuant to RCW 61.24.130 so long as the basis for the injunction sought is not based on the actions of the Trustee.

5.     Should Plaintiff desire to amend her complaint, Quality hereby stipulates that Plaintiff may do so without leave of court, so long as the amended complaint does not state any affirmative relief from Quality.

6.     Plaintiff agrees to serve Quality, through its undersigned counsel, with any orders or judgments relative to the Action.

///

///

///

///

Stipulation of Nonparticipation
Page 2
MH # WA-15-673663-SW

QUALITY LOAN SERVICE CORP. OF WASHINGTON
108 1st Ave S. Suite 202
Seattle  WA  98104
PH: (206) 319-9054
FAX: (206) 257-3163

7.    It is also agreed, by and between Plaintiff and Quality that this Stipulation may be signed in counterparts and any signature signed in counterpart sent via electronic transmission shall be deemed an original signature.

**IT IS SO STIPULATED.**

Dated: *April 17, 2017*

By _____

Robert K. Hunter, WSBA #28909

Attorney for Jan M. Renfroe

Dated: *APRIL 19 2017*

By _____

Robert W. McDonald, WSBA #43842

Attorney for Quality Loan Service Corporation of Washington

**IT IS SO ORDERED.**

Dated: *5-2-2017*

_____

Judge/Commissioner

Stipulation of Nonparticipation
Page 3
MH # WA-15-673663-SW

QUALITY LOAN SERVICE CORP. OF WASHINGTON
108 1st Ave S. Suite 202
Seattle WA  98104
PH: (206) 319-9054
FAX: (206) 257-3163

FILED
2017 MAY 25 AM 08:17
CHARLEEN GROOMES
OKANOGAN COUNTY CLERK
E-Filed

Record Certification: I certify that the electronic copy is a
correct copy of the original, on file or filed in this office,
and was taken under the Clerk's division and control.
Okanogan County Clerk,
By CCreporter Deputy #pages 1 - 5/25/2017 9:14:27 AM

OKANOGAN COUNTY SUPERIOR COURT IN AND FOR THE STATE OF WASHINGTON

Jan M. Renfore

VS.                    Plaintiff(s),                    Case No.:17-2-00156-4

Quality Loan Service Corp. of Washington, et al.                    DECLARATION OF SERVICE
                    Defendant(s),



STATE OF WASHINGTON
COUNTY OF KING ss.

　　The undersigned, being first duly sworn on oath deposes and says: That he/she is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen years, not a party to or interested in the above entitled action and competent to be a witness therein.

　　That on 5/2/2017 at 2:14 PM at the address of 505 Union Avenue SE, #120, Olympia, within Thurston County, WA, the undersigned duly served the following document(s): Summons; Complaint for Declaratory Relief, Injunction, Violation of the Consumer Protection Act and Quite Title; Second Amended Note for Law and Motion Calendar; Plaintiff's Motion to Restrain Sheriff's Sale and Obtain Restraining Order; with Memorandum of Law; Declaration of Jan M. Renfroe in Support of Motion to Restrain Sheriff's and Obtain Restraining Order in the above entitled action upon Citibank, N.A. as trustee of NRZ Pass-Through Trust VI, by then and there personally delivering 1 true and correct set(s) of the above documents into the hands of and leaving same with James Roberts FCOE Fulfillment Specialist, for CT Corporation, Registered Agent for Citifinancial, Servicing, LLC, who is authorized to accept service on behalf of the above.

Physical description of person served: Gender: Male | Race: White | Age: 33 | Height: 5' 10" | Weight: 220 | Hair: Brown

I declare under penalty of perjury under the laws of the state of WASHINGTON that the foregoing is true and correct.

DATE: 5/3/2017
TOTAL: $ 110.73



SL

D. Brady
Registered Process Server
License#: 1418480 - Expiration Date: 6/9/2017
Seattle Legal Messengers
4201 Aurora Avenue N, #200
Seattle, WA 98103
(206) 443-0885

| Attorney or Party without Attorney: THE HUNTER LAW FIRM, PLLC 645 VALLEY MALL PARKWAY STE 200 EAST WENATCHEE, WA 98802 Telephone No: 509-663-2966 | | | | For Court Use Only |
|---|---|---|---|---|
| Attorney for: Plaintiff | Ref. No. or File No.: RENFROE V. QLS | | | FILED 2017 MAY 25 AM 08:19 CHARLEEN GROOMES OKANOGAN COUNTY CLERK E-Filed |
| Insert name of Court, and Judicial District and Branch Court: In The Superior Court Of The State Of Washington In An For The County Of Okanogan | | | | |
| Plaintiff: JAN M. RENFROE | | | | |
| Defendant: QUALITY LOAN SERVICE CORP. OF WASHINGTON | | | | |

| AFFIDAVIT OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: 17-2-00156-4 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION, VIOLATION OF THE CONSUMER PROTECTION ACT AND QUIET TITLE; DECLARATION OF JAN M. RENFROE IN SUPPORT OF MOTION TO RESTRAIN SHERIFF'S SALE AND OBTAIN RESTRAINING ORDER; SECOND AMENDED NOTE FOR LAW AND MOTION CALENDAR; PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE AND OBTAIN RESTRAINING ORDER; WITH MEMORANDUM OF LAW

3. a. *Party served:*        BANK OF AMERICA  N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, F/K/A COUNTRYWIDE HOME LOANS HOME LOANS SERVICING, LP

    b. *Person served:*       GABRIELA SANCHEZ, AUTHORIZED AGENT TO ACCEPT SERVICE OF PROCESS

4. *Address where the party was served:*       818 WEST 7TH STREET STE 930 LOS ANGELES, CA  90017

5. *I served the party:*

    a. **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Tue., May. 16, 2017 (2) at: 11:23AM

7. *Person Who Served Papers:*                 Fee for Service:       $148.50

    a. C. JONES

    b. **LSS LEGAL SERVICES, INC.**
      dba LEGAL SUPPORT SERVICES
      1262 1/2 WEST 2ND STREET
      LOS ANGELES, CA  90026
    c. (213) 250-0228, FAX (213) 250-1921

8. *I declare under penalty of perjury under the laws of the State of WASHINGTON and under the laws of the United States Of America that the foregoing is true and correct.*

                        **AFFIDAVIT OF SERVICE**                 (C. JONES) *103002* *.6632966.35505*

THE STATE OF NEW YORK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE COUNTY OF ...............

**Index No.: 17-2-00156-4**

**Filed On: 4/20/2017**

**JAN M. RENFROE, Plaintiff,**

-against-

**QUALITY LOAN SERVICE CORP. OF WASHINGTON, ET AL., Defendants**

**AFFIDAVIT OF SERVICE**
FILED

2017 MAY 25 AM 08:20
17-2-00156-4 AFFIDAVI
OKANOGAN COUNTY CLERK

STATE OF NEW YORK, COUNTY OF NEW YORK: Tyiem Pinder, being duly sworn, deposes and says that deponent is not party to this action, is over 18 years of age and resides in the State of New York.    E-Filed

That on 5/11/2017 at 4:20 PM at 225 LIBERTY STREET , NEW YORK, NY  10286, your deponent served the SECOND AMENDED NOTE FOR LAW AND MOTION CALENDAR, SUMMONS, COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION , VIOLATION OF THE CONSUMER PROTECTION ACT AND QUIET TITLE, PLAINTIFFS MOTION TO RESTRAIN SHERIFFS SALE AND OBTAIN RESTRAINING ORDER; WITH MEMORANDUM OF LAW, DECLARATION OF JAN M. RENFROE IN SUPPORT OF MOTION TO RESTRAIN SHERIFFS SALE AND OBTAIN RESTRAINING ORDER bearing index # 17-2-00156-4 and filed date 4/20/2017 upon THE BANK OF NEW YORK MELLON .

**[ ] INDIVIDUAL**
By personally delivering a true copy thereof to said recipient, known by deponent to be said person named therein.

**[ X ] AGENCY / BUSINESS**
A Banking Agency.  By delivering thereat a true copy of each to TOM M. (LAST NAME REFUSED) .  Your deponent knew the person so served to be an agent authorized to accept on behalf of the entity to be served.

**[ ] SUITABLE AGE PERSON**
By delivering a true copy of each to a person of suitable age and discretion, to wit: TOM M. (LAST NAME REFUSED) , who verified that the intended recipient actually is employed at this location.

**[ ] AFFIXING TO DOOR**
By affixing a true copy of each to the door of the address at 225 LIBERTY STREET , NEW YORK, NY  10286, that being the intended recipient's dwelling place or usual place of abode since with due diligence, the intended recipient could not be found nor a person of suitable age and discretion who would receive same.

**[ ] MAILING COPY**
That on , your deponent mailed a true copy of same by First Class Mail properly enclosed and sealed in a postpaid wrapper addressed to the recipient at: 225 LIBERTY STREET , NEW YORK, NY  10286 in an envelope bearing the legend "Personal and Confidential". Said envelope was deposited in an official depository under exclusive care and custody of the U.S. Postal Service.

**[ X ] DESCRIPTION**
Gender: Male;  Skin: White;  Hair: Black;  Age: 43-53;  Height: 5ft 9in - 6ft 1in;  Weight: 185-205;

**[ ] WITNESS FEE**

**[ ] MILITARY SERVICE**
Deponent asked the person spoken to whether the recipient or intended recipient, where applicable, was presently on active duty or dependent on someone who was on active duty in the military service of the United States and was informed that he/she was not

Sworn to before me on 5/15/2017:

PATRICK NELSON
Notary Public, State of New York
No. 01NE6256549
Qualified in NEW YORK County
Commission Expires 2/27/2020

Tyiem Pinder
NYC License # -  2026027

The Hunter Law Firm
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
Phone: 509-663-2966
File No. RENFROE

RETURN TO: Nationwide Court Services, Inc.
20 VESEY ST REAR LOBBY
NEW YORK, NY 10007
DCA Lic#: 1037536 Ph: 212-349-3776
(NCS552158)JA 721327

| Attorney or Party without Attorney: THE HUNTER LAW FIRM, PLLC 645 VALLEY MALL PARKWAY STE 200 EAST WENATCHEE, WA 98802 Telephone No: 509-663-2966 | | | | For Court Use Only |
|---|---|---|---|---|
| | | | | FILED |
| Attorney for: Plaintiff | Ref. No. or File No.: RENFROE V. QLS | | | 2017 MAY 25 AM 08:19 |
| Insert name of Court, and Judicial District and Branch Court: In The Superior Court Of The State Of Washington In An For The County Of Okanogan | | | | CHARLEEN GROOMES OKANOGAN COUNTY CLERK |
| Plaintiff: JAN M. RENFROE | | | | E-Filed |
| Defendant: QUALITY LOAN SERVICE CORP. OF WASHINGTON | | | | |

| AFFIDAVIT OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number: 17-2-00156-4 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION, VIOLATION OF THE CONSUMER PROTECTION ACT AND QUIET TITLE; DECLARATION OF JAN M. RENFROE IN SUPPORT OF MOTION TO RESTRAIN SHERIFF'S SALE AND OBTAIN RESTRAINING ORDER; SECOND AMENDED NOTE FOR LAW AND MOTION CALENDAR; PLAINTIFF'S MOTION TO RESTRAIN SHERIFF'S SALE AND OBTAIN RESTRAINING ORDER; WITH MEMORANDUM OF LAW

*3. a. Party served:*  BANK OF AMERICA N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, F/K/A COUNTRYWIDE HOME LOANS HOME LOANS SERVICING, LP

*b. Person served:*  GABRIELA SANCHEZ, AUTHORIZED AGENT TO ACCEPT SERVICE OF PROCESS

*4. Address where the party was served:*  818 WEST 7TH STREET STE 930 LOS ANGELES, CA 90017

*5. I served the party:*

a. **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Tue., May. 16, 2017 (2) at: 11:23AM

**7. Person Who Served Papers:**   Fee for Service:   $148.50
a. C. JONES
b. **LSS LEGAL SERVICES, INC.**
   dba LEGAL SUPPORT SERVICES
   1262 1/2 WEST 2ND STREET
   LOS ANGELES, CA 90026
c. (213) 250-0228, FAX (213) 250-1921

*8. I declare under penalty of perjury under the laws of the State of WASHINGTON and under the laws of the United States Of America that the foregoing is true and correct.*

**AFFIDAVIT OF SERVICE**   **(C. JONES)** 103002   .6632966.35505

THE STATE OF NEW YORK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE COUNTY OF .............

Index No.: 17-2-00156-4
Filed On: 4/20/2017

Case 2:17-cv-00194-SMJ    ECF No. 9    filed 06/19/17    PageID.346    Page 131 of 135

**JAN M. RENFROE, Plaintiff,**

-against-

**QUALITY LOAN SERVICE CORP. OF WASHINGTON, ET AL., Defendants**

**AFFIDAVIT OF SERVICE**
FILED

2017 MAY 25 AM 08:20
17-2-00156-4 AFFIDAVI
OKANOGAN COUNTY CLERK

E-Filed

STATE OF NEW YORK, COUNTY OF NEW YORK: Tyiem Pinder, being duly sworn, deposes and says that deponent is not party to this action, is over 18 years of age and resides in the State of New York.

That on 5/11/2017 at 4:20 PM at 225 LIBERTY STREET , NEW YORK, NY  10286, your deponent served the SECOND AMENDED NOTE FOR LAW AND MOTION CALENDAR, SUMMONS, COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION , VIOLATION OF THE CONSUMER PROTECTION ACT AND QUIET TITLE, PLAINTIFFS MOTION TO RESTRAIN SHERIFFS SALE AND OBTAIN RESTRAINING ORDER; WITH MEMORANDUM OF LAW, DECLARATION OF JAN M. RENFROE IN SUPPORT OF MOTION TO RESTRAIN SHERIFFS SALE AND OBTAIN RESTRAINING ORDER bearing index # 17-2-00156-4 and filed date 4/20/2017 upon THE BANK OF NEW YORK MELLON .

[ ] INDIVIDUAL
By personally delivering a true copy thereof to said recipient, known by deponent to be said person named therein.

[ X ] AGENCY / BUSINESS
A Banking Agency.  By delivering thereat a true copy of each to TOM M. (LAST NAME REFUSED) .  Your deponent knew the person so served to be an agent authorized to accept on behalf of the entity to be served.

[ ] SUITABLE AGE PERSON
By delivering a true copy of each to a person of suitable age and discretion, to wit: TOM M. (LAST NAME REFUSED) , who verified that the intended recipient actually is employed at this location.

[ ] AFFIXING TO DOOR
By affixing a true copy of each to the door of the address at 225 LIBERTY STREET , NEW YORK, NY  10286, that being the intended recipient's dwelling place or usual place of abode since with due diligence, the intended recipient could not be found nor a person of suitable age and discretion who would receive same.

[ ] MAILING COPY
That on , your deponent mailed a true copy of same by First Class Mail properly enclosed and sealed in a postpaid wrapper addressed to the recipient at: 225 LIBERTY STREET , NEW YORK, NY  10286 in an envelope bearing the legend "Personal and Confidential". Said envelope was deposited in an official depository under exclusive care and custody of the U.S. Postal Service.

[ X ] DESCRIPTION
Gender: Male;  Skin: White;  Hair: Black;  Age: 43-53;  Height: 5ft 9in - 6ft 1in;  Weight: 185-205;

[ ] WITNESS FEE

[ ] MILITARY SERVICE
Deponent asked the person spoken to whether the recipient or intended recipient, where applicable, was presently on active duty or dependent on someone who was on active duty in the military service of the United States and was informed that he/she was not

Sworn to before me on 5/15/2017:

PATRICK NELSON
Notary Public, State of New York
No. 01NE6256549
Qualified in NEW YORK County
Commission Expires 2/27/2020

Tyiem Pinder

NYC License # -  2026027

The Hunter Law Firm
645 Valley Mall Parkway, Suite 200
East Wenatchee,WA 98802
Phone: 509-663-2986
File No. RENFROE

RETURN TO: Nationwide Court Services, Inc.
20 VESEY ST REAR LOBBY
NEW YORK, NY 10007
DCA Lic#: 1037536 Ph: 212-349-3776
(NCS552158)JA 721327

**JAN M. RENFROE, Plaintiff,**

-against-

**QUALITY LOAN SERVICE CORP. OF WASHINGTON, ET AL., Defendants**

E-Filed

**AFFIDAVIT OF SERVICE**
FILED

2017 MAY 25 AM 08:31
CHARLEEN GROOMES
OKANOGAN COUNTY CLERK

STATE OF NEW YORK, COUNTY OF NEW YORK: Michael Cohen, being duly sworn, deposes and says that deponent is not party to this action, is over 18 years of age and resides in the State of New York.

That on 5/16/2017 at 2:15 PM at 111 EIGHTH AVENUE , NEW YORK, NY  10011, your deponent served the SECOND AMENDED NOTE FOR LAW AND MOTION CALENDAR, SUMMONS, COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION , VIOLATION OF THE CONSUMER PROTECTION ACT AND QUIET TITLE, PLAINTIFFS MOTION TO RESTRAIN SHERIFFS SALE AND OBTAIN RESTRAINING ORDER; WITH MEMORANDUM OF LAW, DECLARATION OF JAN M. RENFROE IN SUPPORT OF MOTION TO RESTRAIN SHERIFFS SALE AND OBTAIN RESTRAINING ORDER bearing Index # 17-2-00156-4 and filed date 4/20/2017 upon MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. c/o CT CORPORATION SYSTEMS.

**] INDIVIDUAL**
By personally delivering a true copy thereof to said recipient, known by deponent to be said person named therein.

**X ] AGENCY / BUSINESS**
A Domestic Corporation.  By delivering thereat a true copy of each to NORA DINDYAL .  Your deponent knew the person so served to be an agent authorized to accept on behalf of the entity to be served.

**] SUITABLE AGE PERSON**
By delivering a true copy of each to a person of suitable age and discretion, to wit: NORA DINDYAL , who verified that the intended recipient actually is employed at this location.

**] AFFIXING TO DOOR**
By affixing a true copy of each to the door of the address at 111 EIGHTH AVENUE , NEW YORK, NY  10011, that being the intended recipient's dwelling place or usual place of abode since with due diligence, the intended recipient could not be found nor a person of suitable age and discretion who would receive same.

**] MAILING COPY**
That on , your deponent mailed a true copy of same by First Class Mail properly enclosed and sealed in a postpaid wrapper addressed to the recipient at: 111 EIGHTH AVENUE , NEW YORK, NY  10011 in an envelope bearing the legend "Personal and Confidential". Said envelope was deposited in an official depository under exclusive care and custody of the U.S. Postal Service.

**X ] DESCRIPTION**
Gender: Female;  Skin: Brown;  Hair: BLACK ;  Age: 40-50;  Height: 5ft 3in - 5ft 7in;  Weight: 130-150;

**] WITNESS FEE**

**] MILITARY SERVICE**
Deponent asked the person spoken to whether the recipient or intended recipient, where applicable, was presently on active duty or dependant on someone who was on active duty in the military service of the United States and was informed that he/she was not

Sworn to before me on 5/18/2017

LAURANCE KNOX
Notary Public, State of New York
No. 01KN6309229
Qualified in QUEENS County
Commission Expires 08/04/2018

Michael Cohen
NYC License # - 2026656

The Hunter Law Firm
645 Valley Mall Parkway, Suite 200
East Wenatchee,WA 98802
Phone: 509-663-2966
File No. RENFROE

RETURN TO: Nationwide Court Services, Inc.
20 VESEY ST REAR LOBBY
NEW YORK, NY 10007
DCA Lic#: 1037536 Ph: 212-349-3776
(NCS552158)JA 722451

FILED

2017 MAY 25  AM 8:26

CHARLEEN GROOMES
OKANOGAN COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF OKANOGAN

| | |
|---|---|
| JAN M. RENFROE, | Case No. 17-2-00156-4 |
| Plaintiffs, | NOTICE OF APPEARANCE |
| vs. | |
| QUALITY LOAN SERVICE CORP. OF WASHINGTON; BANK OF AMERICA, N.A., successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, CITIBANK, N.A. as trustee of NRZ PASS-THROUGH TRUST VI; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. | |
| Defendants. | |

TO:  THE CLERK OF THE COURT

AND TO:  ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that Daniel J. Gibbons of Witherspoon · Kelley enters

his appearance in the above cause on behalf of Bank of America, N.A. without waiving

NOTICE OF APPEARANCE FOR BANK OF
AMERICA, N.A. - 1
Case No. 17-2-00156-4

{S1548730; 1 }

**WK** WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

1  any or all claims or defenses that may exist pursuant to CR 8, 12 or otherwise, and

2  request that all further pleadings and papers herein, except process, be served upon the

3  undersigned, at the address stated below.

4

5       Dated this 22[th] day of May, 2017.

6                                              WITHERSPOON • KELLEY

7

8                                              _____

9                                              Daniel J. Gibbons, WSBA No. 33036
                                               422 West Riverside Ave, Suite 1100

10                                             Spokane, WA 99201
                                               Telephone: (509) 624-5265

11                                             *Attorneys for Bank of America, N.A.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF APPEARANCE FOR BANK OF
AMERICA, N.A. - 2
Case No. 17-2-00156-4

 WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

{S1548730; 1 }

1

## CERTIFICATE OF SERVICE

2

3     On the 22nd day of May, 2017, I caused to be served the foregoing NOTICE OF APPEARANCE on all interested parties below in the manner indicated:

4

5     Robert K. Hunter, Jr.                  X   U.S. Mail
      THE HUNTER LAW FIRM, PLLC          _____ By Hand
6     645 Valley Mall Parkway, Suite 200  _____ Overnight Delivery
      East Wenatchee, WA 98802            _____ Facsimile Transmission

7

8     *Attorney for Plaintiff*

9     Robert W. McDonald                    X   U.S. Mail
      QUALITY LOAN SERVICE CORP. OF      _____ By Hand
10    WASHINGTON                          _____ Overnight Delivery
11    108 1st Ave. S., Suite 202          _____ Facsimile Transmission
      Seattle, WA  98104-2538

12

13    *Attorney for Quality Loan Service Corp. of*
      *Washington*

14

15

16                              _Lee Reams_____

17                              Lee Reams
                                *Legal Assistant to Daniel J. Gibbons*
18

19

20

21

22

23

24

25

26

27

28

NOTICE OF APPEARANCE FOR BANK OF
AMERICA, N.A. - 3
Case No. 17-2-00156-4

**WK** WITHERSPOON·KELLEY
Attorneys & Counselors

422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300         Fax: 509.458.2728

{S1548730; 1 }