FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 29, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAN M. RENFROE,<br><br>                Plaintiff,<br><br>      v.<br><br>QUALITY LOAN SERVICE CORP. OF WASHINGTON; BANK OF AMERICA, N.A., successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP; CITIBANK, N.A., as trustee of NRZ Pass-Through Trust VI; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and BANK OF NEW YORK MELLON, as trustee on behalf of the Certificateholders of the CWHEQ Inc., CWHEQ, Revolving Home Equity Loan trust Series 2006-C.<br><br>                Defendants. | No.   2:17-CV-00194-SMJ<br><br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter arises from a non-judicial foreclosure commenced against Plaintiff Jan Renfroe's Oroville, Washington home under Washington's Deed of Trust Act (DTA), Wash. Rev. Code (RCW) § 62.A. Renfroe seeks declaratory and injunctive relief, quiet title in her favor, and damages under Washington's Consumer Protection Act. Renfroe argues that the foreclosure was commenced by

ORDER - 1

an invalid beneficiary, that the foreclosure documents provided incorrect information, and that the foreclosure was barred by the statute of limitations. Mortgage Electronic Registration Systems, Inc. (MERS) and Citibank, N.A. (Citibank) (collectively, Defendants), brought this motion for summary judgment on all claims. They argue that the foreclosure proceedings complied with the DTA, and that Renfroe has failed to identify any deceptive acts or practices in which Citibank or MERS engaged.

The Court heard oral argument on Defendants' motion on December 20, 2017. After reviewing the file, the briefing, and the arguments presented at the hearing, the Court is fully informed and grants Defendants' motion. The undisputed facts show that the foreclosure was advanced and continued on proper authority and proceeded in compliance with the DTA. Accordingly, summary judgment for Defendants is appropriate on all claims.

## UNDISPUTED FACTS

In 2005, Jan and her then-husband Rand Renfroe obtained a $154,3500.00 loan evidenced by a note (the Note), ECF No. 5-1, and secured by a deed of trust (the Deed of Trust) against their residential property in Oroville, Washington, ECF No. 5-2. The Deed of Trust identified MERS as the beneficiary "solely as nominee for Lender and Lender's successors and assigns." ECF No. 5-2 at 3.

The loan requires monthly payments over thirty years and matures in the year 2035. *Id.*

The Note and Deed of Trust changed hands several times after origination. Sometime after its origination, Federal National Mortgage Association (Fannie Mae) bought the loan. *See* ECF No. 5-3 at 5. Bank of America acted as Fannie Mae's servicing agent and held the Note for Fannie Mae. ECF No. 5-5. In August 2010, Bank of America appointed Quality Loan Service Corp. of Washington (Quality Loan) as the successor trustee under the Deed of Trust. ECF No. 5-4. In May 2011, MERS, the original beneficiary, assigned the Note to BAC Home Loans. ECF No. 36-4. BAC Home Loans later merged with Bank of America. Bank of America provided Quality Loan with a beneficiary declaration confirming under penalty of perjury that Bank of America held the Note. ECF No. 5-5. It also provided Quality Loan with a copy of the Note. ECF Nos. 5-1, 5-5. In April 2016, Fannie Mae sold the loan to Citibank. ECF No. 5-7. Citibank took possession of the Note and provided Quality Loan with a beneficiary declaration confirming it held the Note. ECF No. 5-6.

Meanwhile, the Renfroes fell behind in their monthly payments. As a result of the 2008 recession, Jan Renfroe began to experience financial hardship. ECF No. 36 at 2. In 2011, she stopped making monthly payments on the loan. ECF No. 1-1 at 4.

On May 9, 2014, Bank of America, through its attorneys at Bishop, Marshall & Weibel, P.S., issued a notice of default. ECF No. 5-3. At that time, Bank of America held the Note.[1] The Notice identified Fannie Mae as the Note owner and Bank of America as the acting servicer. *Id.* On December 21, 2016, Quality Loan issued a notice of sale. ECF No. 5-7. The notice of sale identified Quality Loan as the trustee and Citibank as the beneficiary. ECF No. 5-7 at 1, 4. The notice of sale set the original auction date for April 28, 2017. *Id.* at 2. Before the auction date, Renfroe filed a "wrongful foreclosure" action in the Superior Court of Okanogan County. ECF No. 9.

## LEGAL STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

---

[1] Although Renfroe initially disputed this fact, her counsel, Mr. Hunter, conceded the fact at the December 20, 2017 hearing. Defense Counsel, Mr. McIntosh, asserted that the 2015 beneficiary declaration provided proof that Bank of America held the Note in 2014 when it issued the Notice of Default. The Court then asked Mr. Hunter, "Are you conceding that Bank of America did in fact hold the Note when [the Notice of Default] was issued in 2014?" Mr. Hunter responded, "I will concede that the Bank of America declaration is sufficient for—for the Bank of America to move forward."

If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id*. at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

## DISCUSSION

**A.  Renfroe's Deed of Trust Act claims lack merit.**

Renfroe seeks declaratory and injunctive relief regarding nonjudicial foreclosure proceedings initiated against the Oroville Property, damages under the Consumer Protection Act, and quiet title in her favor. The foundation for each of these claims is Defendants' alleged violation of Washington's DTA. Renfroe's theory of the case is as follows: (1) the Note is not endorsed in blank; (2) Bank of America obtained beneficiary status through an assignment by the original

beneficiary, MERS; (3) because MERS is not a valid beneficiary, it cannot assign beneficiary status; and (4) any beneficiary interest Bank of America purported to have as the result of an assignment from MERS is invalid.

While Renfroe's argument is logically sound, it is ultimately unavailing because the evidence in the record shows that the Note was endorsed in blank, making the note holder the deed of trust beneficiary. Bank of America asserts that it held the Note when it initiated foreclosure and Renfroe cannot generate a genuine issue of fact to dispute this assertion. Ultimately, the undisputed facts in the record show that—while the Note and Deed of Trust changed hands several times—Defendants acted with proper authority and in compliance with the DTA.

### 1. Washington's Deed of Trust Act

To understand Renfroe's argument, it is first necessary to briefly review Washington's DTA. The DTA establishes a "three party system for mortgages where an independent trustee acts as the impartial party between a lender and a borrower instead of the court." *Lyons v. U.S. Bank Nat. Ass'n*, 336 P.3d 1142, 1148 (Wash. 2014). A statutory deed of trust operates as an "equitable mortgage" by conveying title to the trustee to secure the home loan. RCW § 61.24.005. The DTA allows parties to engage in non-judicial foreclosures upon an event triggering default and prescribes procedures governing the foreclosure process. *Id.* § 61.24.

Only a lawful beneficiary has the power to instruct the trustee to initiate non-judicial foreclosure proceedings. The DTA defines a beneficiary as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." *Id.* § 61.24.005(2). Under Washington's Uniform Commercial Code, RCW § 62A, a "holder" is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id.* § 62A 1-201(a)(21). If endorsed in blank, the note is payable to bearer and may be negotiated by transferring possession alone. *Id.* § 62A.3-205(b). A "blank endorsement" is an endorsement that does not identify a person to whom the instruction is payable. *Id.* § 62A.3-205(a)–(b). Thus, the beneficiary is the person or entity who holds the underlying obligation or to whom the obligation is payable.

Foreclosure proceedings initiated by an invalid beneficiary or invalidly appointed trustee violate the DTA. *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34, 50 (Wash. 2012). In *Bain*, the Washington State Supreme Court considered whether MERS could act as a beneficiary if it was neither the payee nor the note holder. *Id.* at 34. The Court concluded it could not. *Id.* at 47. The Court went on to explain that purported assignments from MERS to successor beneficiaries were invalid. *Id.* at 47–48. Therefore, foreclosure proceedings initiated by MERS through assigning the deed of trust or appointing a successor trustee are invalid under the DTA.

Where a non-judicial foreclosure is carried out by the note holder, the issues in *Bain* are inapplicable, even where MERS was named a nominee under the deed of trust being enforced. *See id.* at 43–44. The *Bain* decision arose under the unique circumstance in which the beneficiary's status derived solely from MERS's assignment. *Id.* at 37. Where a beneficiary is also the note holder, the beneficiary's status derives from its standing as a note holder, regardless of the validity of any assignment. *Id.* at 105–06.

## 2. The Oroville property foreclosure was advanced and continued on proper authority.

Renfroe seeks to bring this case within the holding of *Bain* by arguing that Bank of America's beneficiary status derived solely from an invalid beneficiary assignment by MERS. Renfroe argues strenuously that the Note is not endorsed in blank. As discussed above, the holder of a note endorsed in blank is the deed of trust beneficiary, regardless of how it came into possession of the note. But when the note is specially endorsed, beneficiary status must derive from a valid assignment. If Renfroe were correct that the Note was not endorsed in blank, Bank of America would be forced to demonstrate a valid chain of assignments resulting in its beneficiary status. However, despite Renfroe's contrary assertions, the Note is endorsed in blank. Accordingly, Bank of America had the power to initiate foreclosure and Citibank had the power to direct issuance of the notice of sale because each held the Note at the relevant times.

### a.     The Note is endorsed in blank.

An endorsement is valid if it appears on the face of the note itself or on an allonge[2] affixed to the note. Here, the Note contains two endorsements. The first, executed by Eagle Home Mortgage, Inc., reads, "Pay to the Order of Countrywide Bank, N.A. Without Recourse." ECF No. 5-1 at 5. This endorsement is located beneath Jan and Rand Renfroe's signatures, on the last page of the Note. *See id.* (designating the signature page as "page 3 of 3"). The second endorsement, executed by Countrywide, reads, "Pay to the Order of _____." *Id.* at 6. Countrywide's endorsement in blank is located on the back of the Note. Renfroe argues that the second endorsement appears "suspect." ECF No. 73 at 6. However, this contention is without merit. Citibank presented the Note at the hearing for the Court's inspection. The Note contained the endorsements and presented no facial indicia of tampering or forgery. Accordingly, Renfroe's arguments that the Note was not properly endorsed are unsubstantiated by the record.

### b.     The notices of default and sale were issued on proper authority.

To initiate foreclosure on residential real property, Washington's DTA requires two statutory notices: a notice of default and a notice of sale. RCW § 61.24.030. Either the beneficiary or the trustee may transmit the notice of default.

---

[2] An allonge is a paper attached to a negotiable instrument for purposes of receiving further endorsements. Black's Law Dictionary 88 (9th ed. 2009).

*Id.* § 61.24.030(8); *see also McAfee v. Select Portfolio Servicing, Inc.,* 370 P.3d 25, 28 (Wash. Ct. App. 2016) (recognizing notice is valid when sent by beneficiary's "duly authorized agent"). If the notice of default is issued by the trustee, the trustee may not initiate a nonjudicial foreclosure without "proof that the beneficiary is the owner of any promissory note . . . secured by the deed of trust." RCW § 61.24.030(7)(a). The notice of sale must be issued by a trustee.

Bank of America issued the notice of default in 2014 through its attorneys, Bishop, Marshall & Weibell. *See McAfee*, 370 P.3d at 28 (noting valid notice of default issued by beneficiary's agent). Renfroe asserts that Bank of America did not have authority to transmit the notice of default because it was neither a valid beneficiary nor a valid trustee. However, as the holder of the Note in 2014, Bank of America was the deed of trust beneficiary with authority to commence foreclosure proceedings.

The Notice of Sale was also proper. Quality Loan issued the notice of sale in 2016 in its capacity as trustee for the beneficiary at that time, Citibank. Citibank held the Note and provided Quality Loan a beneficiary declaration certifying that it held the Note. RCW § 61.24.030(7)(a) authorizes a trustee to rely on a beneficiary declaration as proof that the declarant has authority to direct foreclosure on the note. However, the beneficiary declaration must clearly identify the declarant as the holder of the note. *Trujillo v. Northwest Trustee Servs., Inc.*, 355 P.3d 1100 (Wash.

2015). A foreclosure premised on an invalid beneficiary declaration violates the Deed of Trust Act. *Id.* at 1107.

Renfroe asserts that the notice of sale was unlawful because Quality Loan improperly relied on a defective beneficiary declaration from Citibank. She likens the beneficiary declaration executed by Citibank to the declaration at issue in *Trujillo v. Northwest Trustee Services, Inc.* In that case, the Washington State Supreme Court held that a beneficiary declaration was ambiguous, and therefore ineffective, because the declaration stated that the beneficiary either held the note or had the ability to enforce it. *Id.* at 1106. The Court reasoned that the language was ambiguous because a non-holder may enforce the note. *Id.* However, the declaration executed by Citibank does not suffer from the same defect identified in *Trujillo*. Citibank's declaration states that the beneficiary is the "actual holder of the promissory note or other obligation evidencing the above-referenced loan." ECF No. 5-6. This language is unambiguous as to Citibank's status as the note holder and directly mirrors the language of RCW § 61.24.030(7)(a).

Moreover, Renfroe's objection is largely moot because Citibank has established its holder status by presenting the original Note at the December 20, 2017 hearing. Presentation of the original note for inspection by the court at summary judgment is sufficient to prove the bank's status as holder of the note. *Deutsche Bank Nat. Trust Co. v. Slotke*, 367 P.3d 600, 605 (Wash. Ct. App. 2016).

### 3. The notices of default and sale complied with the DTA requirements.

The DTA prescribes certain statutory requirements for the notice of default and notice of sale. RCW § 61.24.030. Renfroe argues that both the notice of default and the notice of sale were deficient and in violation of the DTA. With respect to the notice of default, Renfroe alleges that the notice failed to properly identify the beneficiary and trustee. Regarding the notice of sale, Renfroe asserts that it did not provide the full statutory notice required before the auction date. However, the evidence in the record shows that both the notice of default and notice of sale complied with the DTA, and Renfroe is unable to raise a genuine issue of material fact to the contrary.

#### a. *Notice of default*

The DTA requires that the beneficiary or trustee must transmit the notice of default to the borrower at least thirty days before recording the notice of sale. *Id.* § 61.24.030(8). When the property secured by the deed of trust is owner-occupied residential real property, the notice of default must include (1) "the name and address of the owner of any promissory notes or other obligations secured by the deed of trust," (2) "the name, address, and telephone number of a party acting as a servicer of the obligations secured by the deed of trust," and (3) a statement that "the beneficiary has complied with RCW 61.24.021 and, if applicable, 61.24.163." *Id.* § 61.24.030(8)(k).

Here, the notice of default complied with the statutory form outlined in RCW § 61.24.030(8)(k). It clearly identified the name and address of the owner of the promissory note, Fannie Mae, and provided information for Bank of America, the party acting as servicer of the obligation. The notice of default also identified Bishop, Marshall & Weibel, P.S. as the firm sending the notice and acting on Bank of America's behalf.

Renfroe's objection to the notice of default essentially boils down to the fact that she found the notice confusing. On the third page of the notice, it states in bold, capitalized lettering, "**TO REINSTATE OR PAYOFF YOU MUST CONTACT THE TRUSTEE**." ECF No. 5-3 at 3. Renfroe asserts that this is confusing because the notice does not clearly identify which of the named parties—Fannie Mae, Bank of America, or Bishop, Marshall & Weibel—was the trustee. However, on pages two and three, notice also states in bold, capitalized lettering "**TO BRING YOUR LOAN CURRENT OR PAY IT OFF, YOU MUST CONTACT** Bishop, Marshall & Weibel, P.S.," and provides the firm's contact information. *Id.* at 2, 3. Under the heading "**Reinstate**," the notice again identifies Bishop, Marshall & Weibel, P.S. as the party to whom all payments should be tendered. *Id.* at 4.

Taken together, the statement directing Renfroe to contact the trustee to reinstate payments, and the subsequent statements identifying Bishop, Marshall & Weibel as the contact for payments could lead a reasonable individual to believe

Bishop, Marshall & Weibel was the trustee. However, Renfroe has advanced no legal authority to support her contention that this renders the notice defective. The DTA requires the notice of default to identify the note owner, and the loan servicer, and the notice here clearly provided this information. Accordingly, it appears that Renfroe's argument has no legal import.

### b.  Notice of sale

Renfroe argues that the notice of sale was defective because it failed to give Renfroe 150 days' notice of the auction date. This argument is based on an erroneous understanding of the law. The notice of default and notice of sale, *combined*, must provide 150 days notice. RCW § 61.23.030(8)(g) (the notice of default must be transmitted 30 days before the notice of sale); *id.* § 61.23.040(1) (the notice of sale must provide 120 days' notice of the auction date). The notice of sale need not provide 150 days' notice itself. Quality Loan's notice of sale was recorded on December 23, 2006, 128 days before the April 28, 2017 notice of sale date.

**B.  Foreclosure is not time-barred because Bank of America timely initiated foreclosure when it sent the 2014 notice of default.**

A borrower can maintain a quiet title action against a deed of trust beneficiary only if the debt that the deed of trust secures is discharged. *See Hummel v. Nw. Tr. Servs.*, 180 F. Supp. 3d 789, 809 (W.D. Wash. 2016) (citing *Evans v. BAC Home Loans Servicing LP*, No. C10-0656-RSM, 2010 WL 5138394, at *4 (W.D. Wash.

Dec. 10, 2010)). Renfroe does not allege that the debt is discharged and admits that she has not made payments since 2011. Instead, Renfroe alleges that the statute of limitations has run and therefore bars future enforcement of the rights provided in the deed of trust securing the Note. Renfroe argues that the statutory period to enforce the contract began on July 16, 2009, when the entire amount due under the Note was accelerated. ECF No. 36-3. The Washington statute of limitations for negotiable instruments provides that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after . . . the accelerated due date. RCW § 62.A.3-118(a). Assuming the debt was accelerated on July 16, 2009, the statutory window to commence an enforcement action closed on July 16, 2015.

Renfroe's statute of limitations defense fails because Bank of America initiated foreclosure proceedings within the statutory window.[3] Issuing a notice of default is the first step toward non-judicial foreclosure and constitutes the commencement of an action to enforce the obligation under RCW § 62.A.3-118(a). A foreclosure is timely if the notice of default is issued within six years of the expired statute of limitations. *Edmundson v. Bank of Am*., 378 P.3d 272, 277 (Wash.

---

[3] Bank of America asserted an alternative theory for why the foreclosure was timely based on an alleged affirmation Ms. Renfroe made in connection with a proposed loan modification. The Court need not address this alternative argument, however, because the foreclosure was timely.

Ct. App. 2016) (holding that, when notice of default precedes the running of the six-year statute of limitations, "[t]hat is all that is required"). Accordingly, Bank of America's May 9, 2014 issuance of the notice of default renders the non-judicial foreclosure timely. Renfroe's quiet title claim therefore fails as a matter of law, and summary judgment in Citibank and MERS's favor is appropriate on this claim.

**C.      Summary judgment is appropriate on Renfroe's CPA claims.**

To establish a private claim under the CPA, a plaintiff must establish: (1) an unfair or deceptive act or practice; (2) that occurs in trade or commerce; (3) an impact on the public interest; (4) injury to the plaintiff in his or her business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*, 719 P.2d 531, 535 (Wash. 1986). The failure to establish even one of these elements is fatal to a plaintiff's claim. *Id*. at 539. Whether a defendant's conduct is an unfair or deceptive act or practice is a question of law. *Svendsen v. Stock*, 23 P.3d 455 (Wash. 2001). An unfair or deceptive act or practice requires the plaintiff to prove that the act "had the capacity to deceive a substantial portion of the public." *Burns v. McClinton*, 143 P.3d 630, 632 (Wash. Ct. App. 2006).

Renfroe alleges Citibank violated the CPA by misrepresenting the true holder of the Note in violation of the DTA. ECF No. 1-1 at 9. Renfroe does not allege facts sufficient to resist Citibank's motion for summary judgment on this claim.

Citibank's involvement in the foreclosure communications is limited to only the Notice of Trustee's Sale. As discussed above, the recorded assignments support Defendants' assertion that the notice of sale correctly states the identity of all statutorily required parties. Renfroe has submitted no contrary evidence and her complaint provides only the naked assertion that Citibank failed to identify the proper parties in the foreclosure documents. ECF No. 1-1 at 7. Accordingly, Renfroe has failed to establish a prima facie case to support her allegations that Citibank violated the CPA.

Renfroe's CPA claims are similarly unsupported with respect to MERS. Renfroe's complaint is nearly silent regarding MERS. Beyond the allegation that it incorrectly identified parties to the foreclosure proceeding, Renfroe alleges only that MERS was not the note holder, "never had a beneficial interest under the Deed of Trust," and "has never been entitled to receive any monies from Renfroe under the Deed of Trust or Note." *Id.* at 4. Although the *Baine* Court acknowledged listing MERS as a beneficiary on the Deed of Trust may constitute an unfair or deceptive act under the CPA, it was "unwilling to say it is per se deceptive . . . ." *Baine*, 285 P.3d at 34; *see also Barkley v. GreenPoint Mortg. Funding, Inc.*, 358 P.3d 1204, 1211 (Wash. Ct. App. 2015) ("The mere fact that the deed of trust identified MERS as beneficiary will not support a claim."). Because Renfroe fails to point to any facts suggesting that she was actually deceived or otherwise harmed in any respect by

MERS's purported beneficiary status on the Note, her CPA claim fails as a matter of law.

Because Renfroe fails to allege facts sufficient to establish a prima facie case for a private CPA violation against either Citibank or MERS, summary judgment in favor of Defendants is appropriate.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1.   Defendants' Motion for Summary Judgment, **ECF No. 4**, is **GRANTED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 29th day of December 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER - 18