THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
Telephone: (509) 663-2966
Attorney for Plaintiff

HONORABLE SALVADOR MENDOZA, JR.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON STATE

| | |
|---|---|
| JAN M. RENFROE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>QUALITY LOAN SERVICE CORP. OF WASHINGTON; BANK OF AMERICA, N.A., successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP; CITIBANK, N.A. as trustee of NRZ PASS-THROUGH TRUST VI; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,<br><br>　　　　Defendants.<br>THE BANK OF NEW YORK MELLON as trustee on behalf of the CERTIFICATEHOLDERS OF THE CWHEQ, INC., CWHEQ Revolving Home Equity Loan Trust, Series 2006-C,<br><br>　　　　Nominal Defendants. | No. 2:17-cv-00194<br><br>**PLAINTIFF'S RESPONSE TO CITIBANK, N.A.'S MOTION FOR SUMMARRY JUDGMENT**<br><br>**ORAL ARGUMENT IS HEREBY REQUESTED** |

Plaintiff Jan Renfroe submits this response to oppose the motion for summary judgment of Defendants Citibank, N.A. as Trustee of NRZ Pass-Through Trust VI ("Citibank" or "Defendant"). Her declaration and the Declaration of Robert Hunter accompany this response.

**BACKGROUND FACTS**

Citibank's predecessor, Bank of America (BANA), had various remedies available to it under the Deed of Trust recorded on November 22, 2005. [ECF 123 p. 12] It chose the remedy of non-judicial foreclosure which required it to use certain statutory notices; to wit, a Notice

PLAINTIFF'S RESPONSE TO CITIBANK, N.A.'S MOTION
FOR SUMMARRY JUDGMENT; STATEMENT OF
CONTROVERTING FACTS　　　Page 1

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

of Default (RCW 61.24.030(8) (2012)) and Notice of Sale (RCW 61.24.030 (2012))  BANA issued a Notice of Default on May 9, 2014 [ECF 123 p.83]  Years later, BANA assigned the debt to Citibank.  [ECF 123 p. 31 (Assignment of Deed of Trust dated May 3, 2016)]

Citibank pressed ahead and recorded its Notice of Sale on December 23, 2016. [ECF 123 p. 91]  This tolled the statute of limitations for 120 days.  <u>Bingham v. Lechner</u>, 111 Wash. App. 118, 131, 45 P.3d 562 (2002).  "After the 120-day period expires, a new trustee's sale must be scheduled and a new notice of trustee's sale recorded . . ."  <u>Cedar West</u>, 434 P.3d at 562; 7 Wash. App. 2d at 488.

On April 3, 2017, Plaintiff filed her civil complaint [ECF 1-1] in Washington State's Okanogan County Superior Court and moved to restrain the sale of her home.  On May 25, 2017, the state court restrained the trustee sale "until further order of [that superior court]."  The order was entered on June 14, 2017. [ECF 13-1 p. 2 (Request for Judicial Notice)]

On June 1, 2017, the defendant Citibank filed its Notice of Removal based on its allegation that plaintiff's case had complete diversity.  [ECF No. 1]  Citibank and MERS filed their motion for summary judgment on June 17, 2017. [ECF No. 4]   This Court ruled in favor of Citibank's motion for summary judgment on December 29, 2017.  [ECF 78]  Plaintiff appealed and the appellate court agreed with this court except it vacated the court's order granting summary judgment to the defendants on Renfroe's quiet title claim, and remanded for further consideration in light of the cases of *Merceri v. Bank of New York Mellon*, 434 P.3d 84 (Wash. Ct. App. 2018), *Cedar West OWashers Ass'n v. Nationstar Mortgage, LLC*, 434 P.3d 554, 562 (Wash Ct. App. 2019) *Review denied* 193 Wash.2d 1016 (2019), and any other relevant developments in Washington case law.

## DISPUTED FACTS

Plaintiff offers the following facts to dispute certain facts offered by Defendant.

| # | Fact Statement | Blunt Decl. | Controverting Fact per Renfroe Declaration |
|---|---|---|---|
| 8 | BANA applied Ms. Renfroe's most recent payments to the monthly payment of June 1, 2011 | Nationstar Decl. ¶12 & Ex. 5) | Renfroe's last paid towards the Note installment due on December 1, 2010 |
| 12 | The $29,364.26 amount set forth in BANA's June 21, 2016 letter represents the past-due amounts only, i.e., the monthly payments due from July 11 through the date of the letter. | Id. | The amount listed is incorrect unless it includes the numerous reversed charges listed in the Blunt ledgers |

## ISSUE PRESENTED

Whether a genuine issue of material fact remains to allow Renfroe to quiet title against Citibank's deed of trust lien.

## MEMORANDUM OF LAW

### I. RENFROE'S QUIET TITLE CLAIM IS PROPER

Statute of limitations is a proper defense in mortgage foreclosure proceeding and allows the record oWasher to quiet title as Ms. Renfroe has pled. [ECF No. 1-1 ¶54] RCW 7.28.300.

> "The record oWasher of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of limitations, and, upon proof sufficient to satisfy the court, may have judgment quieting title against such a lien."

Id. In Washington, a promissory note and a deed of trust are written contracts subject to the six-year statute of limitations under RCW 4.16.040 (1). The six-year statute of limitations on a deed of trust accrues "when the party is entitled to enforce the obligations of the

note." Wash. Fed., Nat'l Ass'n v. Azure Chelan LLC, 195 Wash. App. 644, 382 P.3d 20, 30 (Wash. Ct. App. 2016).

The deed of trust in this case secures an installment note dated November 15, 2005 (Note). [ECF 123 p. 7] For installment notes, the statute of limitations runs against each installment from the time it becomes due. Cedar W. OWashers Ass'n v. Nationstar Mortg. LLC, 434 P.3d 554, 560, 7 Wash. App. 2d 473, 484 (2019) *review denied* 193 Wash.2d 1016 (2019)); Herzog v. Herzog, 23 Wash.2d 382, 387-88, 161 P.2d 142 (1945). Payments towards the Note were due on the first of each month. [ECF 123 p. 7 (Note ¶3)]

## II. AN ISSUE OF FACT EXISTS ON WHAT DEBT AMOUNT IS CORRECT

### A. WOEFULLY INSUFFICIENT LEDGERS DO NOT SUPPORT THE DEBT AMOUNT

To support the amount it claims due, Citibank offers two ledgers [ECF 123 pp. 35 & 49] One appears to display postings that occurred in date range from September 1, 2006 to October 23, 2015 that falls under a heading entitled "TRNTYP." The ledger is without a legend and so plaintiff is at a loss on how to decipher the meaning of the various headings, 21 in total. [Renfroe Decl. **Exh. A**] Some of the exhibit is missing the typed words at the top of the ledger pages. The other ledger appears to display postings that occurred from July 17, 2011 to November 28, 2017. It mostly consists of "ADJ" postings, supposedly meaning accounting adjustments. Of that ledger's ten pages there are six pages of postings that display only ADJ postings. As with the Notice of Default, these ledgers do not adequately itemize the debt amount or the payments made. Rather, the ledgers create more questions, like: why are the adjustments only being applied now?

Before these newly produced ledgers came along, BANA produced its working ledger.

PLAINTIFF'S RESPONSE TO CITIBANK, N.A.'S MOTION
FOR SUMMARRY JUDGMENT; STATEMENT OF
CONTROVERTING FACTS         Page 4

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

Renfroe, a retired bookkeeper, took that jumbled ledger to apply her understanding of the posts to make it more understandable. (Renfroe Decl. **Exh. A**) She found that her payments were not wholly applied to her existing Loan. (Ibid) Thus, the statutory notices were erroneous by not seeking the correct amount due. The debt amount, then, is an issue of fact.

Ms. Renfroe offers her own accounting. (Renfroe Decl. Exh. 1) On June 30, 2010, she paid $11,300.45 to bring her Note current. (Renfroe Dec. **Exh. A**) She also paid $2,838.33 to cover taxes and insurance that the lender had paid. It is unclear how the lender applied those funds.

B.     **RENFROE DISPUTES THE DEBT AMOUNT**

Contrary to Citibank's contention, Ms. Renfroe made her last installment payment towards the Note on April 5, 2011 for a payment that came due on December 1, 2010. (Renfroe Decl. **Exh. A**) The six year limitation period began to accrue from December 1, 2010 when the last installment came due but was not paid. Terhune, 9 Wash. App. 2d 708, 718, 446 P.3d 683 (2019). The lender had six years from that time (until November 30, 2016, excluding the end date) in which to perfect (i.e., record) its Deed of Trust remedies.

Assuming there was no acceleration of the Note debt, Citibank had until November 30, 2016[1] to commence its foreclosure proceeding, claiming the amount due to "be the then principal amount owing." Cedar West, 434 P.3d 554, 560, 7 Wash. App. 2d 473, 485 *citing* 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 20.10, at 61 (2d ed. Supp. 2018).

C.     The Debt Amount is a Material Fact

---

[1] Applying https://www.timeanddate.com/

Summary judgment is proper only if there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The amount due is a material fact. See for example, Laxmi Jewel Inc. v. C&C Jewelry Mfg., Inc. (In re C&C Jewelry Mfg., Inc.), 2009 Bankr. There, an accounts receivable table did not match an aging report, leading the Court to say that "there is a genuine issue of material fact as to how much [a debtor] owes." LEXIS 4517, *25-26. To seek the wrong amount on the statutory notice is material because an erroneous notice does not meet the strict standard imposed under Washington law.

### III. THE CONDUCT OF THE LENDERS AND TRUSTEE WAS IMPROPER

#### A. WOEFULLY INSUFFICIENT NOTICE OF DEFAULT DID NOT GIVE PROPER NOTICE

Washington Deed of Trust Act RCW 61.24 *et seq*. (the Act) requires the notice of default to provide an itemization of payments that are due. RCW 61.24.130(8)(d). The Notice of Default did not accurately itemize the debt amount. [ECF 123 p. 83] It states that the last unpaid payment was due on May 1, 2014 and the amount in arrears is $42,606.03. That is wrong.[2] What Citibank refers to as an itemization is three entries with varying payment amounts. (Ibid) None of these amounts reflect the Note payment amount of $925.41. Nor does the notice indicate how that monthly amount was increased by more than $250.

---

2 See Discussion Supra II. A

**PLAINTIFF'S RESPONSE TO CITIBANK, N.A.'S MOTION FOR SUMMARRY JUDGMENT; STATEMENT OF CONTROVERTING FACTS**   Page 6

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

Without the requisite "itemized account," the default notice says she was in arrears on the loan by $42,606.03. This is wrong. Renfroe testifies that on June 30, 2010 she had brought her Note account current and paid more towards taxes and insurance that the lender had paid. (Renfroe Decl. ¶6) From that point forward she remained current up to May 1, 2011 when she entered into the TPP. (Ibid) During the TPP she made four timely payments in the amount of $1,148. (Ibid) She then sent in her HAMP paperwork for a modification as instructed by the servicer. (Ibid) At that time, she also paid another $1,095. So, there was simply no way that the Notice of Default is even close to accurate in its accounting. At most, even if Renfroe had not been current as she testifies when she began making TPP payments, she could only have been in arrears in the amount of $33,037.12 on May 1, 2014 (calculated at $925.41 monthly payment amount x 34 months = $31,463.94 plus $46.27 late fee amount x 34 months = $1,573.18).

Renfroe further testifies that she sent TPP payments and the first loan modification payment[3] to the servicer, amounting to $5,687.00. These payments are not listed on the default notice. (Renfroe ¶6)

"Because the Act 'dispenses with many protections commonly enjoyed by borrowers under judicial foreclosures, lenders must strictly comply with the statutes . . ." Cedar West, 434 P.3d at 560-561, 7 Wash. App. 2d at 485-486 *citing* Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wash.2d 560, 567, 276 P.3d 1277 (2012). The strictly interpreted statute requires "an itemized account."

A court's objective in construing a statute is to determine the legislature's

---

3 After which the lender declined to enter into the modification. (Renfroe Decl. ¶__)

intent. [I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent. Plain meaning is "discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.

Udall v. T.D. Escrow Servs., Inc., 159 Wash.2d 903, 909, 154 P.3d 882, 886 (2007) (citations omitted). Surely, "an itemized account" means more than listing three amounts without stating why there is a wide disparity between the Note installment amounts and the amounts being sought.

The Notice of Sale (following 77 months after bringing her account current) does less than the default notice. It simply states that the amount in arrears on December 23, 2016 is $85,091.80. The most that could be due, however, was $74,819.36 (calculated as $925.41 x 77 months = $71,256.57 plus $46.27 x77 months = $3,562.79). The sale notice thus fails for the same reason that the default notice fails, it attempted to pursue time-barred payments that were not even due.

These deficiencies indicate that Ms. Renfroe did not receive valid statutory notices. Essentially, the notice of default asked her to again pay money without assurance that it would be applied to the loan. The law does not require one to do vain or useless things. Sanford v. Royal Ins. Co., 11 Wash. 653, 40 P. 609. The law should also not require a party to pay money to one who repeatedly fails to account for payments.

> This court has frequently emphasized that the deed of trust act "must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales. We have invalidated trustee sales that do not comply with the act. *See Albice*, 174 Wn.2d at 575.

Klem v. Wash. Mut. Bank, 176 Wash.2d 771, 789, 295 P.3d 1179, 1188 (2013) (citations

---

**PLAINTIFF'S RESPONSE TO CITIBANK, N.A.'S MOTION FOR SUMMARRY JUDGMENT; STATEMENT OF CONTROVERTING FACTS**    Page 8

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
(509) 663-2966

omitted).  Accordingly, Renfroe sought and acquired a motion to restrain the sale to further one of the Act's objectives – to have an "opportunity to prevent wrongful foreclosure." Cedar West, 434 P.3d at 560.  Had Ms. Renfroe been given the opportunity to pay the correct amount, she may have been able to do so.  Until the lender took her TPP payments and the first modification loan, she had struggled to keep the loan current.  Afterwards, she could not gain any information from the lender.  (Renfroe ¶7)

### B. THE LENDER MISAPPLIED TPP PAYMENTS TO THE LOAN AMOUNT INSTEAD OF APPLYING THEM TO A NEW MODIFIED LOAN.

The accounting confusion increases when we consider that Renfroe paid funds after May 1, 2011, some of which the BANA's ledger shows were applied to the debt.  (Renfroe Decl. __)  Immediately after bringing her home loan current, Renfroe made later payments towards the Trial Period Plan (TPP) payments under the Home Affordable Modification Program.  12 U.S. Code § 5219a. (HAMP).  The TPP is an agreement separate from the original loan.

> The trial period is three months in duration (or longer if necessary to comply with applicable contractual obligations) and governed by terms set forth in the TPP Notice. Borrowers who make all trial period payments timely and who satisfy all other trial period requirements will be offered a permanent modification.

Making Home Affordable Program, *Handbook for Servicers of Non-GSE Mortgages Versions 1. (Aug. 19, 2010 to 3.0*, at 41 (Dec. 2, 2010). *See, e.g.*,

https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_10.pdf,

at 17.  Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 780, 2013 U.S. App. (2013) n. 6.

So, if the borrower pays the TPP payments as offered by the lender, only then is the loan

modified by making a permanent modification to the original loan, but not necessarily at the same installment amounts as paid under the TPP. Id.

Renfroe did not intend for her TPP payments to serve as payments under the existing loan, but rather understood them to be payments to prove her good faith and ability to perform under a settled amount. (Renfroe Decl. ¶8) Citibank applied those payments to the Note. [ECF 123 p.4 (Blunt Decl. ¶12)] Nothing in the Deed of Trust allows the lender to misapply the payments. [Renfroe Dec. ¶_; Citi Decl. ¶__ Exh. ]

      C.      **CITIBANK APPLIED HAZARD INSURANCE PROCEEDS TO THE LOAN AMOUNT INSTEAD OF PAYING THESE FUNDS TO FIX THE HOME.**

Citibank carries on the tradition of misapplying payments. Last year the home that is more than 100 years old suffered from wind damage. (Renfroe Decl. ¶9) The lender chose to pay for hazard insurance instead of letting Renfroe pay it. When the damage occurred Citibank refused to cooperate with letting Renfroe fix her roof. (Hunter Decl. **Exh. 1**) It also refused to endorse the check from the insurer intended for the repairs. (Ibid) Upon the promise to cooperate to aid with repairs, Renfroe sent the check to Citibank who cashed the check, but never applied it to pay for repairs. (Renfroe Decl. ¶9) The home still suffers from a leaky roof, damaging the home. (Ibid)

This is the conduct that the lenders have committed against Ms. Renfroe over the years. She fell into hard times during the Recession, but worked towards saving her home. She inquired what she needed to do to get government subsidies and the lender told her to simply stop paying to trigger the subsidy. [ECF 36 pp. 2-3 (Renfroe Decl. ¶8) When she did stop paying, she found herself too far behind to catch up. This problem worsened when the

lender locked her out of the online payment portal. [ECF 36 p. 5 (Renfroe Decl. ¶18)] She made repeated requests to learn whether her payments were applied to the original loan, but to no avail. [ECF 36 p. 7 (Renfroe Decl. ¶27)] An issue of fact exists on whether the debt amount sought is correct. Renfroe retained counsel, but still was unable to get a clear understanding of who she was to pay.

Eventually, she brought her home current with the understanding that the lender would allow her to reduce her payment in a settled arrangement. [ECF 36 p. 4 (Renfroe Decl. ¶15)] She knew that some of the payments she had were missing, but she chose to get the mess behind her and enter into the TPP arrangement. After she made all the TPP payments, the lender denied her participation in the program and kept her money without a clear accounting of what happened to her money. (Renfroe Decl. ¶7). According to the BANA accounting, it looks as though that those payments went to an escrow, but not to the Note.

**IV.    PAYMENTS THAT CAME DUE MORE THAN SIX YEARS AGO ARE TIME BARRED.**

The Cedar West court held that after filing a notice of default, the lender must act diligently to pursue and perfect nonjudicial foreclosure remedies under the Act. The lender in Cedar West waited to record its notice of sale for over a year from when it issued the default notice. Cedar West, 434 P.3d at 562, 7 Wash. App. 2d at 489. In the instant case, the Citibank waited more than two and one half years after the notice of default issuance to record its notice of sale. [ER 136, 152; Dkt. 18, p. 16]

Where there has been no explicit acceleration of the note, the statute of limitations does not run on the entire amount due and non-judicial foreclosure can start within six years of any particular installment default and the amount due can be the then principal amount

PLAINTIFF'S RESPONSE TO CITIBANK, N.A.'S MOTION
FOR SUMMARRY JUDGMENT; STATEMENT OF
CONTROVERTING FACTS         Page 11

THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA  98802
(509) 663-2966

owing. Cedar West, 434 P.3d at 556, 7 Wash. App. 2d at 476. Assuming that the debt was never accelerated, any payment that comes due more than six years after its due date is time barred. Edmundson v. Bank of Am., NA, 194 Wash. App. 920, 931, 378 P.3d 272, 277 (2016).

Even though the prior lender did not want apply TPP payments to the loan, thereby, causing Renfroe to incur late fees needlessly, Citibank now chooses to do so. Perhaps this is what some of the many adjustments are doing on Citibank's ledgers, but this remains unclear.

## V. THE COURT SHOULD INVALIDATE THE DEFECTIVE STATUTORY NOTICES

Citibank incorrectly specifies the wrong date to commence its six-year countdown. [ECF 123 p. 4 (Blunt Decl. ¶12] This is no wonder given the accounting upon which it relies. [ECF 123 pp. 35 & 49 (Blunt Decl. Exh. 5] Ms. Renfroe supplies her own accounting that is overlays a ledger produced by Bank of America over two years ago. She informs the Court that she last made a Note payment for the installment due on November 1, 2010. This information alone places the debt amount in error, because Citibank thinks that her later payments were for the Note and not for the TPP. This means that some of the payments owing under the Note are older than six years and are no longer enforceable.

Citibank's accounting says very little that is comprehendible. It is riddled with adjustments that were never disclosed to Renfroe until now after the appeal. (Renfroe ¶3) The BANA accounting likewise lacks clarity. [Renfroe ¶4] Oddly, two national banks cannot prepare a simple ledger. Without a meaningful accounting or statutory notices, Renfroe is left without an opportunity to defend against a wrongful foreclosure.

## VI. THE LACKING NOTICES ARE IRREGULARITIES THAT THIS COURT SHOULD STRIKE.

Procedural irregularities can invalidate a sale. For example, such irregularities include

an improper appointment of a trustee. Bavand v. OneWest Bank, FSB, 176 Wash. App. 475, 309 P.3d 636 (2013). MERS never holds the Note and, therefore, cannot properly appoint a trustee as it did with the trustee in this case. Bavand, 175 Wash. App. at 490 ("This is a material procedural defect and not a mere technicality.")

Another example occurred in Udall and can divest a trustee of its statutory authority to sell the property. Udall, 159 Wash.2d at 911. As discussed above, the non-judicial foreclosure notices are governed by Washington's strictly construed Deed of Trust Act. Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wash. 2d 560, 567 (2012). In Albice, the Washington Supreme Court affirmed an invalidated sale that was continued past 120 days from original sale date). 174 Wash. 2d at 567. The original Notice of Sale, dated December 23, 2016, was valid for 120 days until April 22, 2017.

Mr. Blunt testifies that ongoing litigation prevents Citibank from completing the foreclosure. [ECF 123 p. 4 (Blunt Decl. ¶15)] This nonetheless does not prohibit Citibank from sending out occasional notices of sale. The last known notice was sent out on our about January 31, 2018 to sell the home on June 8, 2018. This is more than a year and one month beyond the 120 day time limit imposed by the Act. "If a trustee fails to strictly comply with the DTA, the trustee lacks statutory authority to conduct a trustee's sale and any such sale is invalid." Terhune v. N. Cascade Tr. Servs., Inc., 9 Wash. App. 2d 708, 718, 446 P.3d 683 (2019). Terhune lets us know that this Court can rule that a sale is invalid due to a lacking notice. It should follow that this Court can also rule that the lacking notice is invalid. Renfroe encourages the Court to strike the statutory notices as invalid.

///

## VII. THE LAW FAVORS DENIAL OF DEFENDANT'S SUMMARY JUDGMENT

The Court must strictly construe the Act to favor the borrower, Jan Renfroe. Cedar West, 434 P.3d at 561, 7 Wash. App. 2d at 485-486 citing Albice, 174 Wash.2d at 567. The Court should find that the Act requires a much more meaningful itemization, than that found in the Notice of Default. The civil rule requires the court to favor the nonmoving party in resolving issues regarding controverted facts or justifiable inferences to be drawn therefrom. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The debt amount is a material issue of fact that warrants the court to deny Citibank's motion for summary judgment.

## CONCLUSION

Plaintiff disputes the debt amount claimed and the date when she last made a payment towards the Note. Plaintiff requests the Court to deny defendant's summary judgment motion for want of adequate support to validate the debt amount. Even if the motion is granted, plaintiff requests that Citibank be ordered to supply the Court with a detailed ledger to support new notices with a detailed, itemized accounting.

DATED September 9, 2020.  By:  s/ Robert K. Hunter, Jr.
Robert K. Hunter, Jr., WSBA #28909
Attorney for the Plaintiff
THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
Telephone: (509) 663-2966
Email: robert@hunter4law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Daniel J. Gibbons, Taylor Haywood, Justin Balser and Robert William McDonald.

DATED this 9 day of September, 2020.

    s/ Robert K. Hunter, Jr.
ROBERT K. HUNTER, JR. WSBA #28909
Attorney for Plaintiff
THE HUNTER LAW FIRM, PLLC
645 Valley Mall Parkway, Suite 200
East Wenatchee, WA 98802
Telephone: (509) 663-2966
Email: robert@hunter4law.com